

## SEVERANCE AGREEMENT AND GENERAL RELEASE

This Severance Agreement and General Release (hereafter, the "Agreement") is made by **RELIAQUEST, LLC**, its affiliated companies, and each of its officers, directors, managers, employees, agents, and successors (hereafter referred to collectively as "ReliaQuest") and **AARON ALLEN** and all of his or her agents, heirs, and successors (hereafter referred to as "Employee"). The effective date of this agreement is **March 21, 2022.**

### INTRODUCTION

- Employee began employment with ReliaQuest on **November 1, 2021**. Employee signed an Employment Agreement dated **October 12, 2021.**

- Employee's separation date is **March 21, 2022.**

**NOW, THEREFORE**, in consideration of the mutual promises and covenants herein contained, the parties hereto agree to amicably end Employee's employment with ReliaQuest as follows:

### AGREEMENT

1. **WAGES & HEALTH INSURANCE.** For the pay period ending **March 26, 2022**, ReliaQuest will pay Employee the gross amount of **$2,076.92**, less any applicable withholdings, deductions, and taxes. That payment will be made via direct deposit on **March 30, 2022**. Employee's health insurance coverage under any of ReliaQuest's benefit plans will expire at 11:59 p.m. on **April 30, 2022.**

2. **SEVERANCE.** In exchange for Employee signing this Severance Agreement, ReliaQuest will pay a severance payment in the gross amount of **$6,923.10**, less any applicable withholdings, deductions, and taxes, which will be broken up and paid out over two (2) payroll periods in accordance with ReliaQuest's standard payroll process (the "Severance Payment"). Employee acknowledges that Employee is not already entitled to this Severance Payment. Employee further acknowledges that the Severance Payment will not be made to Employee until ReliaQuest has received this fully executed Agreement from Employee and all company property described in Paragraph 3 below has been received by ReliaQuest from Employee.

3. **RETURN OF COMPANY PROPERTY.** Employee agrees to return to ReliaQuest property of ReliaQuest such as credit cards, keys, cell phones, Laptops, Bags, computer disks, computer programs, files, and any documents in any format prepared or received by Employee that Employee has in his or her possession or control relating in any way to the ReliaQuest's business operations.

4. **CONFIDENTIALITY, NON-SOLICITATION & NON-COMPETITION.** Employee acknowledges and agrees that Employee remains bound by the terms of his or her Employment Agreement related to confidentiality, non-solicitation and non-competition. Employee understands that if Employee has questions regarding those obligations, Employee should consult the Employment Agreement or contact ReliaQuest or an appropriate representative as described in item (b) below. Employee also agrees to hold the existence of this Agreement and its provisions in strictest confidence and Employee will not publicize or disclose the terms in any manner whatsoever; provided, however, that Employee may disclose the terms of this Agreement in confidence: (a) to a spouse or partner; (b) to an attorney, accountant, auditor, tax preparer, and financial advisor, provided that such individuals first agree that they will treat such information as strictly confidential and that Employee agrees to be responsible for any disclosure by any such individual as if Employee had made the disclosure; and (c) as necessary to enforce its terms or as otherwise required by law. **Employee agrees not to disclose the terms of this Agreement to any current or former ReliaQuest employees.**

5. **NON-DISPARAGEMENT.** Employee agrees not to disparage ReliaQuest and its officers, directors, employees, or agents, in any manner likely to be harmful to them or their business, business reputation, or personal reputation; provided, however, that statements which are made in good faith in response to any question, inquiry, or request for information required by legal process shall not violate this paragraph. Nothing in this restriction is intended to limit Employee from giving honest statements before an administrative agency investigating an alleged violation of federal, state or local laws, including the Equal Employment Opportunity Commission, the National Labor Relations Board, and the Security & Exchange Commission.

6. **RELEASE.** In exchange for the consideration referred to in this Agreement, Employee hereby releases and forever discharges ReliaQuest from any and all claims, actions, demands, and causes of action in law or in equity which Employee may have had, or may now have against ReliaQuest, including but not limited to any and all claims which are based on or in any way related to his or her employment with ReliaQuest or the termination of that employment. This waiver and release specifically excludes matter that may not be released by law, including Employee's right to pursue certain claims and relief with the Equal Employment Opportunity Commission, the National Labor Relations Board, and the Security & Exchange Commission.

7. **ACKNOWLEDGMENT.** Employee expressly acknowledges that Employee has relied on, or had the opportunity to rely upon, advice of counsel of Employee's choosing or has been given an opportunity to review it with counsel and have chosen not to do so. Employee further declares and acknowledges that no representations made by any agent or attorney of ReliaQuest, if any, concerning any legal advice or other information related to this Agreement, and that Employee is acting upon Employee's own best judgment, belief, and knowledge regarding execution of this Agreement.

- Signature Block on Next Page –



YOU UNDERSTAND YOU ARE GIVING UP ALL RIGHTS YOU MAY HAVE TO RECOVER DAMAGES FROM THE COMPANY OR REINSTATEMENT BASED ON ANYTHING THAT HAPPENED BEFORE YOU SIGNED THIS AGREEMENT. YOU ACKNOWLEDGE THAT YOU SIGN THIS AGREEMENT KNOWINGLY AND VOLUNTARILY.

RELIAQUEST, LLC

SIGN: _____

NAME: Greg Farrell

TITLE: Chief Financial Officer

DATE: _____

**EMPLOYEE: AARON ALLEN**

SIGN: _____

DATE: _____



**AARON ALLEN:** This document provides you with a summary of the information presented to you concerning your separation from employment with ReliaQuest, LLC. Please carefully review the Severance Agreement and General Release (the "Severance Agreement"). If you have any questions, please contact ReliaQuest at RQbenefits@reliaquest.com or legal@reliaquest.com.

1. <u>Separation Date</u>: **March 21, 2022.**

2. <u>Final Pay Date</u>. You will be paid for all wages earned in the current pay period through the separation date listed above, less applicable withholdings, deductions and taxes, on **March 30, 2022,** in the gross amount of **$2,076.92**.

3. <u>Severance Calculation</u>. If you sign the Severance Agreement by 5:00 pm on **March 28, 2022,** ReliaQuest will pay you severance pay in the amount of **$6,923.10** less applicable withholdings, deductions and taxes, which will be broken up and paid out over two (2) payroll periods in accordance with ReliaQuest's standard payroll process. If you decide not to sign the Severance Agreement, you will forgo any right to the above severance payment and be required to reimburse ReliaQuest for the full amount of any relocation or other expenses you may owe. In such instance, ReliaQuest will contact you to setup an appropriate payment arrangement and ReliaQuest reserves the right to pursue any lawful means to recoup the full amount of any relocation costs.

4. <u>Health Benefits</u>. If you are currently enrolled in health benefits, your coverage expires at 11:59 p.m. on **March 31, 2022, however if you sign the Severance Agreement it will expire at 11:59 p.m. on April 30, 2022**. You may then choose to continue coverage at your cost through COBRA. You will receive information regarding COBRA from our third-party vendor.

5. <u>401(k)</u>. If you participate in 401(k), you will have three options following your separation, subject to plan rules:
    a) Rollover the 401(k) account into an IRA or another employer's 401(k) plan;
    b) Cash out the account; or
    c) Leave in current 401(k) account just as any other active participant.

    For more information, go to www.401k.com or call (800) 835-5097.

6. <u>Unemployment</u>. ReliaQuest will not oppose any application you make for unemployment compensation benefits but will provide truthful information about you and your separation as may be requested or required by any unemployment agency. ReliaQuest cannot guarantee eligibility for those benefits.

7. <u>Expenses</u>. If you have any outstanding expenses, a final expense report should be turned in by the end of the pay period and the normal approval and reimbursement process will be followed, subject to any setoff of amounts owed by you to ReliaQuest.

8. <u>Forwarding Information</u>: Please make sure to maintain your home address and contact information for future company communications (e.g., W-2 mailing, etc.).

9. <u>Confidentiality, Non-Solicitation, and Non-Competition</u>. You remain bound by the terms of your Employment Agreement dated **October 12, 2021**. If you have any questions regarding your obligations, please consult independent legal counsel to advise you of your rights.

10. <u>Severance Agreement:</u> You will receive the Severance Agreement through Adobe Sign. Please carefully read and review its terms prior to signing.

777 S. Harbour Island Blvd | Suite 500 | Tampa, FL 33602