## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

|  |  |  |
|---|---|---|
| AARON ALLEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 8:23-cv-806 |
| | ) | |
| RELIAQUEST, LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## RELIAQUEST, LLC'S MOTION FOR
## SANCTIONS AND MEMORANDUM OF LAW IN SUPPORT

Pursuant to Federal Rule of Civil Procedure 11(c)(2), 28 U.S.C. § 1927, Fla. Stat. § 57.105, and this Court's inherent authority, Defendant and Counter-Plaintiff, ReliaQuest, LLC ("ReliaQuest"), hereby moves for sanctions jointly and severally against counsel for Plaintiff Aaron Allen ("Plaintiff"), Ian Tygar and Neil Bryan Tygar, and counsels' law firm, Neil Bryan Tygar P.A., for violating Rule 11(b) by filing and maintaining the above-captioned action (the "Action"), and requests reasonable attorneys' fees and costs associated with defending Plaintiff's Action and the preparation of this motion (the "Motion").[1]

---

[1] In accordance with the safe harbor provision of Federal Rule of Civil Procedure 11(c)(2) and Florida Statute § 57.105(4), ReliaQuest served this Motion on Plaintiff and his counsel, via email, on May 22, 2023.

# I. INTRODUCTION

Plaintiff's counsel knowingly filed and continues to prosecute a baseless action for employment-related claims that his client validly released in a written and signed severance and release agreement in consideration for a generous severance payment.[2]  Plaintiff's counsel knew about the severance agreement and the release before filing the Action.  Plaintiff's counsel knew before the filing of this Motion that his sole purported theory for invalidating the release and pursing this Action— the supposed lack of a review by counsel prior to execution—runs directly contrary to long-established Eleventh Circuit precedent and Florida law.  Plaintiff and his counsel knew, or should have known, that Florida law does not require a former employee to have an attorney review a severance agreement and general release for it to be valid and enforceable; instead, courts look to the totality of the circumstances to determine whether the release was knowing and voluntary.  Plaintiff signed the severance and release agreement two weeks after he originally received it.  During this time, Plaintiff had ample opportunity to review it and receive legal advice, was encouraged to seek such advice, successfully requested and negotiated changes to the severance and release agreement, received generous consideration, and explicitly

---

[2] Ian Tygar is the signatory on the Complaint. Without explanation, another member of Neil Bryan Tygar, P.A.—Neil Bryan Tygar—has replaced Ian Tygar in the latest communications with ReliaQuest's local counsel. As such, ReliaQuest moves for sanctions jointly and severally against both and their law firm, Neil Bryan Tygar, P.A.

acknowledged that absence of legal representation and/or review would be due to his own choosing.  Plaintiff's counsel has not, and cannot, point to a single fact suggesting that the severance agreement is unenforceable under applicable law. Therefore, Plaintiff's counsel had no good faith factual or legal basis for filing and proceeding with this frivolous Action.

ReliaQuest has tried to resolve this dispute without court intervention, including by conferring with Plaintiff's counsel over the phone and sending a letter explaining and citing the applicable law, to no avail.  Despite several warnings by counsel for ReliaQuest that Plaintiff released the claims under the severance and release agreement and that they are frivolous as a matter of law and fact, Plaintiff and his counsel have ignored such warnings and have not responded with nor identified any good faith basis to continue to prosecute this Action.  Notably, given the foregoing, Plaintiff's counsel's conduct in filing and continuing to press this Action is also sanctionable.  In accordance with Rule 11(c)(2) and Florida Statute § 57.105(4), ReliaQuest served a copy of this Motion on Plaintiff's counsel providing yet another opportunity for counsel to voluntarily dismiss the Action.  Plaintiff's counsel, again, chose to ignore the facts and the law, and forced ReliaQuest to incur significant time and legal expense, as well as this Court's time, to address the matter. Thus, ReliaQuest respectfully asks the Court to sanction Plaintiff's counsel Ian Tygar and Neil Bryan Tygar and their law firm, jointly and severally, and award it

its attorneys' fees and costs in defending this Action, bringing this Motion, and any other sanctions the Court deems appropriate.

## II. BACKGROUND

### A.    Plaintiff's Short-Lived Employment at ReliaQuest

ReliaQuest employed Plaintiff as a Detection Architect for a mere five months, from November 1, 2021, to March 21, 2022.  Complaint at ¶¶16-17; Noonan Declaration, at 11.[3]  Pursuant to the employment agreement that Plaintiff signed on October 21, 2021, Plaintiff was an at-will employee of ReliaQuest.   Noonan Declaration, at 12.  ReliaQuest and its counsel ("ReliaQuest Counsel") were alerted to Plaintiff's complaint filed in this Action as part of ReliaQuest Counsel's standard docket monitoring process on behalf of its clients; neither Plaintiff nor his counsel had given ReliaQuest advance notice that they were filing a public complaint. Noonan Declaration, at 33; Pacini Declaration, at 4

### B.    The Severance Agreement and General Release

Less than five months into his employment, ReliaQuest terminated Plaintiff because of Plaintiff's significant and unremedied underperformance, including his inability to perform basic job duties with the requisite skill and knowledge, which

---

[3] ReliaQuest submits herewith the Declaration of Steven J. Pacini in Support of ReliaQuest, LLC's Motion for Sanctions (the "Pacini Declaration") attached hereto as **Exhibit A**, the Declaration of Scott Noonan in Support of ReliaQuest, LLC's Motion for Sanctions (the "Noonan Declaration"), attached hereto as **Exhibit B**, as well as the exhibits to Exhibit B, as well as the other exhibits hereto, all of which are incorporated by reference in this Motion.

4

jeopardized ReliaQuest's client relations and business.  Noonan Declaration, at 13-19.  In connection with Plaintiff's termination, ReliaQuest proposed and the Parties negotiated a severance and release agreement.  As part of the negotiations, Plaintiff asked ReliaQuest to make certain changes to the proposed agreement, to which ReliaQuest consented.  Noonan Declaration, at 25.

Plaintiff entered into and signed the Severance Agreement and General Release on April 4, 2022, (the "Severance Agreement").  Noonan Declaration, at 29.  A true and accurate copy of the Severance Agreement that Plaintiff signed is attached to the Noonan Declaration as **Exhibit A**.

The Severance Agreement provided to Plaintiff the payment of money and other benefits; consideration to which he was not otherwise entitled for entering into the Severance Agreement.  Specifically, Section 2 provides that:

> SEVERANCE. In exchange for Employee signing this Severance Agreement, ReliaQuest will pay a severance payment in the gross amount of $[ *redacted* ],[4] less any applicable withholdings, deductions, and taxes, which will be broken up and paid out over two (2) payroll periods in accordance with ReliaQuest's standard payroll process (the "Severance Payment").  Employee acknowledges that Employee is not already entitled to this Severance Payment. Employee further acknowledges that the Severance Payment will not be made to Employee until ReliaQuest has received this fully executed Agreement from Employee and all company property described in Paragraph 3 below has been received by ReliaQuest from Employee.

---

[4] This Motion omits references to the amount paid to Plaintiff by ReliaQuest pursuant to the Severance Agreement to protect sensitive salary and payment information.  Accordingly, the Severance Agreement and extracts therefrom as well as Exhibit C have been redacted in relevant parts.

In consideration for ReliaQuest's payment equivalent to four weeks of salary, Plaintiff agreed to a broad release of claims in Section 6, which reads as follow:

> RELEASE. In exchange for the consideration referred to in this Agreement, Employee hereby releases and forever discharges ReliaQuest from any and all claims, actions, demands, and causes of action in law or in equity which Employee may have had, or may now have against ReliaQuest, including but not limited to any and all claims which are based on or in any way related to his or her employment with ReliaQuest or the termination of that employment. This waiver and release specifically excludes matter that may not be released by law, including Employee's right to pursue certain claims and relief with the Equal Employment Opportunity Commission, the National Labor Relations Board, and the Security & Exchange Commission.

By signing the Severance Agreement, which contained Section 6 above, Plaintiff accordingly agreed to release and forever discharge ReliaQuest from actions, demands, and causes of action in law or in equity of any kind or nature, including any claims related to his employment with ReliaQuest or his termination (the "Release"). ReliaQuest promptly complied with its obligations under the Severance Agreement by making payment and granting the other specified benefits, and Plaintiff has never alleged any facts to the contrary. Noonan Declaration, at 30-31.

## C.   Plaintiff's Complaint

Despite the Release, on April 12, 2023, Plaintiff's counsel, Ian Tygar (the "Plaintiff Counsel") filed this Action against ReliaQuest in Florida federal court, alleging that ReliaQuest had taken adverse employment actions against Plaintiff

during his employment at ReliaQuest. *See* Plaintiff's Complaint (Dkt. No. 1) (the "Complaint").

Importantly, the allegations set forth in the Complaint are directly contrary to ReliaQuest's internal policies and procedures. ReliaQuest takes its commitment to diversity very seriously. Noonan Declaration, at 4. ReliaQuest, as a growing Tampa technology company, has set up internal structures and policies—from in-house counsel, a dedicated Human Resources team, to a strict anti-harassment policy and associated training—to ensure that it upholds its stated commitment to being an equal employment provider. ReliaQuest's diverse workforce and customer base reflects this commitment, as do its diversity and inclusion initiatives, such as the ReliaQuest Women's Network and making significant investments in community organizations like Think Big for Kids, Junior Achievement and 3DE to help provide cyber security awareness and education in to elementary, middle, and high school kids. Noonan Declaration, at 3, 5-6.

In the Complaint, Plaintiff makes several vague and unsubstantiated allegations against ReliaQuest. Contrary to his allegations, however, Plaintiff never reported a single incident of allegedly discriminatory actions during his employment at ReliaQuest nor did he identify any issues before signing the Severance Agreement

and Release.[5]  Noonan Declaration, at 34-35.  Moreover, Plaintiff plainly did not submit any request for an accommodation of Plaintiff's religion, alleged to have occurred a year in advance, that ReliaQuest purportedly denied.[6]   Noonan Declaration, at 37.  Contrary to those allegations, Plaintiff was terminated without consideration of race, religion or any other protected class because his performance as an employee was unacceptable and jeopardized ReliaQuest's business and customer relations, particularly for a state of the art cyber security company such as ReliaQuest.  Noonan Declaration, at 13, 17, 19.

**D.     ReliaQuest Counsel's Numerous Attempts at an Out-of-Court Resolution**

On April 14, 2023, during a telephone conference with Plaintiff Counsel, ReliaQuest Counsel explained to Plaintiff Counsel that Plaintiff had released the claims in the Complaint as part of the Severance Agreement and requested that Plaintiff Counsel withdraw the Complaint immediately.  Pacini Declaration, at 5-7.

---

[5] Plaintiff's Complaint mentions the posting of a "racially charged" meme in a group chat during a team meeting as an example of discriminatory action.  Complaint, at ¶25.  Assuming that such a meme was posted, ReliaQuest's managerial employees or legal team were not made aware of the comment; nor does Plaintiff allege otherwise.  Noonan Declaration, at 36.  Plaintiff's allegation that he allegedly merely replied in the group chat, asking "Is this what this company is about?" does not qualify as a written report (Complaint, at ¶58).  Plaintiff's Complaint also alleges that he was "Refused compensation for any of his referrals despite being promised on multiple occasions that submissions were worth $5,000.00 for each successful referral."  In fact, consistent with its policy and treatment of all of its employees regardless of race, religion, or any other protected class, ReliaQuest informed Plaintiff that its referral bonuses were not intended for employees to submit "referrals" for people identified through LinkedIn whom the employee does not know personally, and that employees should not spend working hours scouring LinkedIn for "referrals."

[6] Moreover, Plaintiff's allegations are wrong on the facts: Plaintiff worked at ReliaQuest for a mere five months.  He could not have possibly submitted a leave request a year in advance.  Complaint, at ¶69.

Plaintiff Counsel acknowledged that he was aware of the Severance Agreement and had even physically reviewed the Severance Agreement. Pacini Declaration, at 8.[7] During a subsequent telephone conference, Plaintiff Counsel informed ReliaQuest Counsel of his theory that Plaintiff had not knowingly and intentionally signed the Severance Agreement because Plaintiff allegedly did not have an attorney review the Severance Agreement before he executed it. Pacini Declaration, at 11. ReliaQuest Counsel explained on this call that the lack of a review by an attorney is not a valid basis under applicable law for nullifying a severance agreement, and that in fact the law generally upholds releases in severance agreements so long as the employee had an opportunity to review it with counsel, regardless of whether he availed himself of that opportunity. Pacini Declaration, at 12. Plaintiff Counsel did not dispute that this statement reflects existing law, nor did he in any way deny that Plaintiff had ample opportunity to have an attorney review the Severance Agreement prior to execution. Pacini Declaration, at 13. ReliaQuest Counsel demanded, yet again, that Plaintiff Counsel immediately withdraw the Action, which he explained was harming ReliaQuest with false and baseless allegations that had been released

---

[7] When asked by ReliaQuest Counsel to explain the legal basis for Plaintiff's Complaint in light of the Severance Agreement, Plaintiff Counsel refused an answer but promised a follow-up call. Pacini Declaration, at 9. Plaintiff Counsel did not contact ReliaQuest Counsel as promised, so ReliaQuest Counsel called Plaintiff Counsel again on April 18, 2023. Pacini Declaration, at 10. Plaintiff Counsel's email provided in the filings (itygar@me.com ) was not working. Plaintiff Counsel's informed ReliaQuest Counsel that his new email address was itygar@icloud.com. Plaintiff Counsel's firm does not have a webpage for Ian Tygar. *See* http://www.myfloridarealestatelawyer.com/contact_us.php.

and which were requiring time and legal resources to address.  Pacini Declaration, at 14.  ReliaQuest Counsel also warned Plaintiff Counsel that ReliaQuest would file a motion pursuant to Fed. R. Civ. P.  11 (the "Rule 11") if Plaintiff Counsel did not immediately dismiss the Action.  Pacini Declaration, at 15.

On April 21, 2023, ReliaQuest Counsel furthermore sent Plaintiff Counsel a letter explaining again that the claims alleged were not only frivolous but also barred by Plaintiff's release of such claims as part of the Severance Agreement.  Pacini Declaration, at 16.  *See* April 21, 2023 Letter from Latham & Watkins to I. Tygar, which is attached hereto as **Exhibit C**.  The letter cited and quoted controlling Eleventh Circuit and Florida law.  *Id.*  For the fourth time, ReliaQuest Counsel requested that Plaintiff Counsel immediately withdraw the Action and warned Plaintiff Counsel that he was violating Rule 11.  Pacini Declaration, at 16-17.  To date, Plaintiff Counsel has not voluntarily dismissed the Action.

## III. LEGAL STANDARD

"The purpose of Rule 11 is to deter baseless filings in district court and thus streamline the administration and procedure of federal courts."  *Peer v. Lewis*, 606 F.3d 1306, 1311 (11th Cir. 2010).  To that end, Federal Rule of Civil Procedure 11(b) requires attorneys to certify "to the best of [their] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances" that their filings have adequate foundation in fact and law.  Fed. R. Civ. P. 11(b).

Thus, Rule 11 sanctions are warranted "(1) when a party files a pleading that has no reasonable factual basis; (2) when the party files a pleading that is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; or (3) when the party files a pleading in bad faith for an improper purpose." *Cook-Benjamin v. MHM Corr. Servs.,* 571 Fed. Appx. 944, 948 (11th Cir. 2014).  In the Eleventh Circuit, when considering a motion for Rule 11 sanctions, courts must first determine whether the party's claims are objectively frivolous and then, if they are, whether the person who signed the pleadings should have been aware that they were frivolous.  *Cook-Benjamin,* 571 Fed. Appx. at 948.  A claim is objectively frivolous when "it lacks an arguable basis either in law or fact." *Buckler v. MacGregor*, 634 Fed. Appx. 694, 697 (11th Cir. 2015) (citations omitted).

Rule 11 accordingly incorporates an "objective standard" of reasonableness under the circumstances. *Vient v. Highlands News-Sun,* 829 Fed. Appx. 407, 409 (11th Cir. 2020).  Courts determine "whether a reasonable attorney in like circumstances could believe his actions were factually and legally justified." *Kaplan v. Daimler Chrysler, A.G.*, 331 F.3d 1251, 1255 (11th Cir. 2003) (citation omitted). This objective standard is intended to eliminate any "empty-head pure-heart" justification for frivolous arguments. *Amlong & Amlong, P.A. v. Denny's, Inc.,* 457 F.3d 1180, 1210 (11th Cir. 2006).  Thus, to comply with the standards of Rule 11,

"an attorney must make a reasonable inquiry into both the legal and factual basis of a claim prior to filing suit." *Worldwide Primates v. McGreal, 87 F.3d 1252,* 1255 (11th Cir. 1996).

## IV. ARGUMENT

### A.   Plaintiff's Claims Are Objectively Frivolous Because Plaintiff Validly Released ReliaQuest from those Claims

Plaintiff released ReliaQuest from all claims related to his employment with ReliaQuest or his termination when he entered into the Severance Agreement. Severance Agreement, Section 6.  Every claim in Plaintiff's Complaint in this Action arises from Plaintiff's employment with ReliaQuest and the termination of that employment.  As it is precisely those types of claims that Plaintiff released by entering into the Severance Agreement, Plaintiff's claims in this Action all fail as a matter of law.

Plaintiff Counsel's theory that a severance agreement is valid only if reviewed by counsel in advance does not survive basic scrutiny.  Florida law does not condition the validity of a release on whether an attorney reviewed the agreement. Instead, in determining whether a release was knowingly and voluntarily executed, courts look to the totality of the circumstances, including "(1) the plaintiff's education and business experience; (2) the amount of time the plaintiff considered the agreement before signing it; (3) the clarity of the agreement; (4) the plaintiff's opportunity to consult with an attorney; (5) the employer's encouragement or

discouragement of consultation with an attorney; and (6) the consideration given in exchange for the waiver when compared with the benefits to which the employee was already entitled." *Gonzalez v. Fla. Dep't of Highway Safety & Motor Vehicles,* 237 F. Supp. 2d 1338, 1359 (S.D. Fla. 2022) *(citing Puentes,* 86 F.3d at 198). In other words, while Florida courts may consider whether Plaintiff consulted with an attorney in signing a release, it is merely one of many factors courts consider in determining whether the release was knowing and voluntary.

Based on the six factors set forth above, the facts at issue in this case weigh heavily in favor of finding a voluntary, intelligent waiver. Plaintiff only signed the Severance Agreement two weeks after initial receipt and even requested changes to it, which ReliaQuest conceded. It is established law in Florida that "fourteen days to consider [a] release is sufficient to conclude [that] release was knowing and voluntary." *Bacon v. Stiefel Labs., Inc*., No. 09-21871-CV-KING, 2011 WL 4944122, at *5 (S.D. Fla. Oct. 17, 2011) (citing *Puentes v. United Parcel Serv. Inc*., 86 F.3d 196 (11th Cir. 1996)). *See also Jones v. A&T Umbrella Benefit Plan No. 1*, 2018 WL 748870, at *6–7 (M.D. Fla. Jan. 10, 2018). On March 21, 2022, ReliaQuest sent Plaintiff the Severance Agreement to review and to consult with an attorney if he so wished. Noonan Declaration, at 21. On March 25, 2022, Plaintiff responded requesting changes to the Severance Agreement. Noonan Declaration, at 25. Plaintiff did not sign the Severance Agreement until April 4, 2022, two full

weeks later after he was initially presented with the Severance Agreement.  Noonan Declaration, at 29.

During those two weeks, Plaintiff had more than enough time to review and consult with an attorney if he wished to do so.  Indeed, Section 7 of the Severance Agreement includes an acknowledgment that Plaintiff "has relied on, or had the opportunity to rely upon advice of counsel of Employee's choosing or has been given an opportunity to review it with counsel and [has] chosen not to do so."  Exhibit A to the Noonan Declaration.  Plaintiff was therefore on notice that he should consult an attorney the very first day he received the draft Severance Agreement.  Not only did ReliaQuest give Plaintiff ample opportunity to consult with an attorney, but it specifically encouraged Plaintiff to do so.  And Plaintiff, in fact, reviewed the Severance Agreement during those two weeks and requested certain changes, to which ReliaQuest agreed.  Noonan Declaration, at 25-27.

Furthermore, the "clarity of the agreement" is self-evident.  Specifically, the Severance Agreement clearly and unequivocally warned Plaintiff of the consequences of signing the Severance Agreement: his signature page states in bold capital letters that "**YOU ARE GIVING UP ALL RIGHTS YOU MAY HAVE TO RECOVER DAMAGES**" and concludes that, by signing, the party acknowledges that it is signing the agreement "**KNOWINGLY AND VOLUNTARILY**."  Exhibit A to the Noonan Declaration, at page 3.  As such,

ReliaQuest made Plaintiff aware, in clear, bolded, and all capitalized words, of the consequences of signing the Severance Agreement.

With respect to consideration, ReliaQuest's offer of severance was generous: Plaintiff received the equivalent of four weeks of salary in exchange for agreeing to the release, despite having worked for ReliaQuest for a mere five months with significantly subpar performance.  The payment of money and other benefits provided to Plaintiff in the Severance Agreement are benefits to which he was otherwise not entitled.  Noonan Declaration, at 23.

Additionally, Plaintiff has a degree from Clemson University and worked for an investment consultancy firm before joining ReliaQuest.  He competently negotiated the Severance Agreement with ReliaQuest, requesting and receiving revisions to it.  Noonan Declaration, at 20, 25-26.  Thus, all factors weigh strongly in favor of enforcement of the Severance Agreement.  Plaintiff Counsel has not and cannot cite any facts to support that any of the factors weigh in favor of invalidation of the Severance Agreement.

There can therefore be no doubt that Plaintiff entered into the Severance Agreement knowingly and voluntarily.  Plaintiff Counsel's argument that the absence of review by an attorney was in itself sufficient to invalidate the Severance Agreement finds no support in the law.  Lacking any legitimate basis in law, the Action has no reasonable chance of success and is thus frivolous.

**B.      Plaintiff Counsel Knew that the Action is Frivolous**

As detailed above, Plaintiff Counsel was made aware and actually knew about the terms of the Severance Agreement and the Release before he filed the Action.  If Plaintiff Counsel had conducted even a cursory research into the law on the validity of contractual releases, as he was required to by Rule 11 and/or Fla. Stat. § 57.105, Plaintiff Counsel would have known that the Complaint was patently frivolous when he filed it on April 12, 2023.  Regardless, by April 14, 2023, at the latest, when ReliaQuest Counsel explained the above legal landscape to Plaintiff Counsel with regard to releases, Plaintiff Counsel had actual knowledge of the prevailing law on this topic and was put on notice to take diligent action in the matter to avoid the imposition of sanctions.  Yet Plaintiff Counsel chose to continue to prosecute the Action.

**C.      Plaintiff Counsel's Violation of Rule 11 Warrants Sanctions**

The Court should therefore exercise its discretion to impose sanctions on Plaintiff Counsel and apparent co-counsel Neil Bryan Tygar[8] ("Plaintiff Co-Counsel", together with Plaintiff Counsel, the "Plaintiff Counsels") for failing to fulfill their obligations under Rule 11.  "The 'central goal' of Rule 11 is to deter vexatious and frivolous litigation[,] . . . and to achieve that goal[,] a court may impose sanctions that compensate those injured by unreasonable litigation practices,

---

[8] *See supra* at n.2.

or punish those who engage in such practices, or both." *Fox v. Acadia State Bank*,

937 F.2d 1566, 1571 (11th Cir. 1991) (quoting *Cooter & Gell v. Hartmarx Corp*.,

496 U.S. 384, 393 (1990)).   The amount of sanctions imposed should "deter

repetition of the conduct or comparable conduct by others similarly situated." Fed.

R. Civ. P. 11(c)(4).

   Sanctions are appropriate here.  Florida law on the enforceability of severance

agreement releases and associated factors to allow enforcement is clear.  Plaintiff

Counsels failed to investigate, or ignored, this clearly delineated law, in violation of

Rule 11.  Plaintiff Counsels' decision to continue with the Action in the face of

contrary law and discussions with ReliaQuest Counsel suggests an intent to file bad-

faith litigation in disregard of the law and facts.[9]  Even if the factual and legal errors

in the Complaint could be construed as good faith mistakes—which they cannot—

Rule 11 sanctions are still appropriate because Plaintiff Counsels failed to make a

reasonable pre-filing inquiry, and that despite Plaintiff Counsel's knowledge and

review of the Severance Agreement.  *See Worldwide Primates*, 87 F.3d at 1254 ("If

---

[9] First, Plaintiff Counsel omitted any mention of the Severance Agreement in the Complaint despite Plaintiff Counsel himself admitting to being aware of the Severance Agreement before filing the Complaint.  Pacini Declaration, at 8.  Plaintiff Counsel also filed the action without giving prior warning to ReliaQuest, did not inform ReliaQuest Counsel of service of the Complaint (despite a specific request), and did not respond to ReliaQuest Counsel's inquiries about return of service and the response deadline.  Pacini Declaration, at 4, 20. Nor did Plaintiff Counsel provide a courtesy copy or notice of service to ReliaQuest Counsel, despite ReliaQuest Counsel's written request for the same.  Pacini Declaration, at 19.  Similarly, Plaintiff Counsel filed the proof of service on May 18, 2023, without notifying ReliaQuest Counsel.  Pacini Declaration, at 21.

the attorney failed to make a reasonable inquiry, then the court must impose sanctions despite the attorney's good faith belief that the claims were sound.").[10]  By "stop[ping], think[ing] and investigat[ing] more carefully before filing papers"—the very point of Rule 11—Plaintiff Counsels could have saved not only Plaintiff's and ReliaQuest's time and resources but also the time and resources of this Court.  *Pierce v. Commercial Warehouse*, 142 F.R.D. 687, 693 (M.D. Fla. 1992) (citation omitted). For these reasons, the facts here leave no doubt that Plaintiff Counsels' conduct has fallen woefully short of the standard required by Rule 11.

In fact, district courts in Florida have regularly imposed sanctions in situations with frivolous claims much like the present one.  In *Huff v. Regions Bank*, No. 5:13–cv–63–Oc–22PRL, 2013 WL 5651807 (M.D. Fla. Oct. 15, 2013), the court found that counsel had violated Rule 11 by continuing to pursue frivolous claims which "had no reasonable factual or legal basis," despite having "repeatedly" been advised that the claims were frivolous.  *Id*. at *6.  The court accordingly found that sanctions in the form of reasonable attorneys' fees and costs were warranted.  *Id.* at *7-8. Similarly, in *Eisenberg Dev. Corp. v. City of Miami Beach*, the court awarded sanctions equal to the fees and costs incurred in defense of what the court concluded was a frivolous suit when all of "plaintiffs' claims lacked merit or foundation."  95

---

[10] *See also Gulisano v. Burlington*, 34 F.4th 935, 942 (11th Cir. 2022) ("Rule 11 imposes an affirmative duty on an attorney to conduct a reasonable inquiry into both the facts and the law before filing a pleading or motion.").

F. Supp. 3d 1376, 1382 (S.D. Fla. 2015).  In granting the motion for sanctions, the court emphasized that defendants "repeatedly placed Plaintiffs on notice of the groundless and frivolous claims they were advancing . . . ." *Id*.  As in *Huff* and *Eisenberg*, Plaintiff Counsel failed to conduct even a cursory review of the controlling law and repeatedly ignored ReliaQuest Counsel's explanations that Plaintiff had validly released the alleged claims by entering into the Severance Agreement.

Plaintiff Counsels' knowing and continued pursuit of this frivolous Action has, to date, caused ReliaQuest to incur substantial legal fees and costs in defense of this Action, including preparing and filing its Answer, Affirmative Defenses, and Counterclaims (Dkt. No 13), this Motion, and a motion to enter judgment on the pleadings.  Noonan Declaration, at 38-39.

In addition to the Court's inherent powers and Rule 11, 28 U.S.C. § 1927 ("Section 1927") provides for the imposition of fees and costs against an attorney who knowingly or recklessly pursues a frivolous claim.  *Schwartz v. Millon Air, Inc., 341 F.3d 1220, 1225 (11th Cir. 2003)*; *Torres v. City of Orlando*, 264 F. Supp. 2d 1046, 1053 (M.D. Fla. 2003) (imposing fees under § 1927 and stating, "Plaintiff's counsel's [sic] had no reasonable basis to pursue this litigation, and from the record, the court may infer that [counsel] intentionally—although perhaps without malice—filed and prosecuted claims that lacked any plausible legal or factual support.").

Furthermore, pursuant to Florida Statute § 57.105(1) ("Section 57.105"), the court may award to the prevailing party a "reasonable attorney's fee, including prejudgment interest," to be paid by losing party and its counsel when the court finds that they "knew or should have known" that a claim was not supported by the necessary material facts or would not find support in the then-existing law.  *See, for example, Davenport v. Thor Motor Coach, Inc.*, 661 Fed.Appx. 997, 1000 (11th Cir. 2016) (noting that Section 57.105 "requir[es] the court to award attorneys' fees to the prevailing party upon finding the losing party filed a frivolous claim."  While these sanctions arise from state law, the Eleventh Circuit has ruled that "[a]ttorney's fees pursuant to Florida Statute § 57.105 may be awarded to the prevailing party in a suit brought in federal court."  S*chalamar Creek Mobile Homeowner's Ass'n, Inc. v. Adler*, No. 8:19-CV-291-TPB-AEP, 2022 WL 3942245, at *4 (M.D. Fla. Aug. 11, 2022) (quoting *BankAtlantic v. Blythe Eastman Paine Webber*. Inc., 955 F.2d 1467, 1478 n. 11 (11th Cir. 1992)).  For the reasons stated in this memorandum, an award of fees and costs under Rule 11, Section 1927, Section 57.105, and the Court's inherent powers is appropriate.

## V. CONCLUSION

For these reasons, ReliaQuest respectfully requests that the Court order Plaintiff Counsels, and their law firm, jointly and severally, to reimburse ReliaQuest for reasonable attorneys' fees and costs associated with (1) preparing its Answer,

Affirmative Defenses, and Counterclaims, (2) the 12(c) motion seeking judgment on the pleadings, and (3) this Motion, and any other relief the Court considers just and equitable.

### CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 3.01(g)

As set forth above, the undersigned counsel for ReliaQuest certifies, pursuant to Local Rule 3.01(g), that counsel for ReliaQuest conferred with Plaintiff Counsels in a good-faith effort to resolve the issues raised by this Motion.   Counsel for Plaintiff has refused to withdraw the frivolous Complaint.

Dated: June 14, 2023     Respectfully submitted,

/s/ Dean A. Kent
DEAN A.  KENT
Florida Bar No.  307040
**TRENAM LAW**
101 East Kennedy Blvd., Suite 2700
Tampa, Florida 33602-5150
Tel: (813) 223-7474
Fax: (813) 229-6553
Email: dkent@trenam.com; ac@trenam.com

*-and-*

Steven J. Pacini *(pro hac vice)*
**Latham & Watkins LLP**
200 Clarendon Street, 27th Floor
Boston, Massachusetts 02116
Telephone: (617) 948-6000
Facsimile: (617) 948-6001
Email: steven.pacini@lw.com

*Attorneys for ReliaQuest, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 14, 2023, a true and correct copy of the foregoing

ReliaQuest, LLC's Motion for Sanctions and Memorandum of Law in Support was

electronically filed with the Clerk of the Court by using the CM/ECF system, which

will send electronic notification to all counsel of record and that this Motion was

previously served, but not filed, on Plaintiff and his counsel, via email, on May 22,

2023 and sent via overnight mail to Plaintiff's counsel's firm on May 22, 2023.


<u>*/s/ Dean A. Kent*</u>
Attorney