# Exhibit B

NOONAN DECLARATION

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| Aaron Allen, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 8:23-cv-805 |
| | ) |
| ReliaQuest, LLC, | ) |
| | ) |
| Defendant. | ) |

**DECLARATION OF SCOTT NOONAN IN SUPPORT OF
RELIAQUEST, LLC'S MOTION FOR SANCTIONS**

I, Scott Noonan, hereby declare as follows:

1. I am Vice President of People Business Partners. I am responsible for supporting ReliaQuest and its employees for all employee related matters including hiring, training, benefits, compliance, and employee relations for Security Operations. I oversee and advise other People Business Partners at ReliaQuest. I submit this declaration in support of ReliaQuest's Motion for Sanctions and Memorandum of Law in Support (the "Motion").

**A. ReliaQuest**

2. ReliaQuest is a cybersecurity company, providing information technology security services to national and international customers that are counted among the most trusted enterprise brands in the world.

1

3. ReliaQuest was founded in Tampa, Florida, and maintains its global headquarters and main office there to this date.

4. ReliaQuest is committed to providing equal employment opportunities to all its employees and applicants, and takes its commitment to diversity very seriously.

5. In line with its commitment, ReliaQuest is built on robust internal structures and policies—from in-house counsel, a dedicated Human Resources team, a strict harassment policy, to formal employee trainings on harassment—to ensure that ReliaQuest's commitment to being an equal employment provider is upheld.

6. ReliaQuest's diverse workforce and customer base reflects this commitment, as do its diversity and inclusion initiatives, such as the ReliaQuest Women's Network and making significant investments in community organizations like Think Big for Kids, Junior Achievement and 3DE to help provide cyber security awareness and education in to elementary, middle, and high school kids.

7. As part of its commitment, ReliaQuest, has and, at all times relevant hereto, had specific policies against unlawful discrimination in the work place, including its Equal Opportunity and Harassment policies (the "Policies").

8. To ensure that complaints are handled expeditiously and adequately, ReliaQuest's employee handbook (the "Handbook"), requires that employees bring

any violation of ReliaQuest's Policies to the immediate attention of their supervisor or ReliaQuest's senior management team, which must then report the violation to ReliaQuest's in-house legal team (the "Legal Team").

9.  Should an employee feel more comfortable to reach out to a familiar supervisor, the Handbook also accommodates alternative methods of raising complaints.

10. ReliaQuest takes any reports of violations of its Policies very seriously.

## B. Plaintiff's Employment at ReliaQuest

11. ReliaQuest employed Plaintiff Aaron Allen ("Plaintiff") in the above-captioned action (the "Action") as a Detection Architect from November 1, 2021, to March 21, 2022.

12. As stated in the employment agreement that Plaintiff signed on October 21, 2022 that I reviewed, Plaintiff was at all times an at-will employee.

13. Five months into his employment, ReliaQuest terminated Plaintiff's employment. I prepared the Involuntary Termination Form in connection with Plaintiff's termination, which describes his subpar performance. ReliaQuest was compelled to take this action after Plaintiff's consistently subpar performance and failure to improve after he was told, repeatedly, that he needed to improve and was provided ample support and opportunity to do so.

14. I was informed from Plaintiff's supervisor that Plaintiff failed to perform his job duties in accordance with ReliaQuest's reasonable expectations as outlined below.

15. Plaintiff lacked the technical knowledge required for his position.

16. In fact, as I learned through these reports, customers even reached out to ReliaQuest about Plaintiff's poor performance and conveyed that they felt uncomfortable working with him because he was unable to answer their questions and give them the requisite level of confidence that he could handle the significant work involved in ReliaQuest's data security business.

17. As a cybersecurity company, it is critical that our Detection Architects, such as Plaintiff, perform at a high level of competence and accuracy. Failure to do so can cause significant harm to ReliaQuest and its customers. For example, a malware or ransomware attack, which have the potential to cause significant negative consequences for our clients, may succeed if ReliaQuest's employees are not performing their jobs with the necessary skills. For that reason, if a Detection Architect, like Plaintiff, is unable to perform his job duties, ReliaQuest must terminate him or her.

18. Similarly, I learned that Plaintiff's fellow employees and managers also reported that his performance was seriously lacking. The reported incidents included:

    a. Plaintiff's supervisor met with Plaintiff, gave feedback, and outlined ReliaQuest's expectations for his role several times.

    b. Plaintiff's job performance continued to fall below ReliaQuest's expectations.

    c. Plaintiff also failed to communicate with clients in a manner which aligned with ReliaQuest's reasonable expectations of professionalism.

    d. Plaintiff failed to present his portion of a presentation in an important meeting with a client. The client commented on Plaintiff's silence during this meeting.

19. Plaintiff's significant and unremedied underperformance, including his inability to perform basic job duties with the requisite skill and knowledge needed in our business, jeopardized ReliaQuest's business and the relationship with its clients. ReliaQuest was therefore left with no choice but to terminate Plaintiff's employment.

**C. The Severance Agreement and General Release**

20. In connection with Plaintiff's termination, the Parties negotiated a Severance Agreement and General Release, which Plaintiff signed on April 4, 2022 (the "Severance Agreement"). I was involved in Plaintiff's termination process, including the preparation of the Severance Agreement. A true and accurate copy of the Severance Agreement is attached hereto as **Exhibit A**.

21. ReliaQuest sent the Severance Agreement to Plaintiff to review on March 21, 2022.

22. In the Severance Agreement, ReliaQuest offered to pay Plaintiff the equivalent of four-weeks' of his salary (the "Severance Payment") in consideration for a standard general release.[1]

23. The Severance Agreement, together with the extension of health benefits, are benefits to which Plaintiff was not entitled to otherwise.

24. ReliaQuest considered the Severance Agreement generous in light of Plaintiff's substantial performance deficiencies and short tenure at ReliaQuest.

25. Plaintiff reviewed the Severance Agreement and requested that ReliaQuest make certain changes before he would sign it. Plaintiff was clear and appeared knowledgeable in his negotiation of the terms.

26. He even seemed familiar with the concept of a "covenant" as he specifically objected to the use of the term in his email to Kathy Morales-Jorgensen, Benefits Coordinator at ReliaQuest on March 25, 2022. A true and accurate copy of the email is attached hereto as **Exhibit B**.

---

[1] The Sanctions Motion and its supporting materials omit references to the amount paid by ReliaQuest to Plaintiff pursuant to the Severance Agreement to protect sensitive salary and payment information. Accordingly, the Severance Agreement has been redacted in relevant parts.

27. ReliaQuest agreed to his requests and sent a revised draft to Plaintiff. ReliaQuest asked Plaintiff to sign the Severance Agreement by April 6, 2022, should he decide to want to enter it.

28. ReliaQuest's Severance Agreement contains express language asking the employee to acknowledge that the employee had the opportunity to seek advice from counsel.

29. Subsequently, Plaintiff signed the Severance Agreement on April 4, 2022, two weeks after ReliaQuest had originally sent him a proposed draft.

30. Based on my review of the pay slips, ReliaQuest paid the Severance Agreement to Plaintiff's designated bank account in two installments on April 13, 2023, and April 27, 2023, in accordance with ReliaQuest's standard payroll process.

31. ReliaQuest received no notification or complaint that Plaintiff had not received the Severance Agreement.

**D. The Complaint**

32. In light of the Severance Agreement, I was surprised to learn that Plaintiff had filed a complaint against ReliaQuest in the above-captioned matter (Dkt. No. 1, the "Complaint").

33. I learned from ReliaQuest's Legal Team that neither Plaintiff nor his counsel had given ReliaQuest advance notice that they were filing a public complaint.

34. Plaintiff, during his employment, had never reported a single incident of allegedly discriminatory conduct to me; nor did I receive reports of such conduct from another employee or manager. In my role as Vice President of People Business Partners I would have learned of any reports about allegedly discriminatory conduct.

35. He also did not report any such claims or incidents at his termination meeting and when negotiating and discussing the Severance Agreement with ReliaQuest.

36. I was not aware of any "racially charged" meme that Plaintiff alleges was posted in a group chat during a team meeting until Plaintiff filed his complaint with the Equal Employment Opportunity Commission. Plaintiff did not report this incident to me, nor did I hear about it from a third party.

37. Nor did Plaintiff submit any request for accommodation of his religion a year in advance that ReliaQuest denied. ReliaQuest employed Plaintiff for only five months so that, contrary to Plaintiff's complaint with the Equal Employment Opportunity Commission, Plaintiff could not have submitted a request one year in advance.

**E. Damages caused to ReliaQuest by the Action**

38. As a result of Plaintiff filing, and continuing to litigate, the Action, ReliaQuest has incurred substantial legal fees and costs in defense of this claim,

including preparing and filing its Answer, Affirmative Defenses, and Counterclaims, this Motion, and a motion to enter judgment on the pleadings.

39. In addition to its legal fees and costs, ReliaQuest has been and will continue to face other significant damage. Not only is ReliaQuest's commitment to diversity and inclusion one of ethics and morality, but this commitment is critical to ReliaQuest's ability to hire and retain employees, attract and retain customers and investors. Plaintiff has falsely attacked this commitment in a filing that is available to the public, which investors and others are certain to find in diligence, causing ReliaQuest additional and ongoing economic harm.

I declare under the penalty of perjury that the foregoing is true and correct.

Executed on May 19, 2023, in Tampa, Florida.

*[signature]* *

Scott Noonan, Vice President of People Business Partners
ReliaQuest, LLC
777 S. Harbor Island Blvd.
Suite 500, Tampa, FL

# Exhibit A to Noonan Declaration

SEVERANCE AGREEMENT AND GENERAL RELEASE



**SEVERANCE AGREEMENT AND
GENERAL RELEASE**

This Severance Agreement and General Release (hereafter, the "Agreement") is made by **RELIAQUEST, LLC**, its affiliated companies, and each of its officers, directors, managers, employees, agents, and successors (hereafter referred to collectively as "ReliaQuest") and **AARON ALLEN** and all of his or her agents, heirs, and successors (hereafter referred to as "Employee"). The effective date of this agreement is **March 21, 2022.**

**INTRODUCTION**

- Employee began employment with ReliaQuest on **November 1, 2021**. Employee signed an Employment Agreement dated **October 12, 2021.**

- Employee's separation date is **March 21, 2022.**

**NOW, THEREFORE**, in consideration of the mutual promises, including future promises, herein contained, the parties hereto agree to amicably end Employee's employment with ReliaQuest as follows:

AGREEMENT

1. **WAGES & HEALTH INSURANCE.** For the pay period ending **March 26, 2022**, ReliaQuest will pay Employee the gross amount of $REDACTED, less any applicable withholdings, deductions, and taxes. That payment will be made via direct deposit on **March 30, 2022**. Employee's health insurance coverage under any of ReliaQuest's benefit plans will expire at 11:59 p.m. on **April 30, 2022.**

2. **SEVERANCE.** In exchange for Employee signing this Severance Agreement, ReliaQuest will pay a severance payment in the gross amount of $REDACTED, less any applicable withholdings, deductions, and taxes, which will be broken up and paid out over two (2) payroll periods in accordance with ReliaQuest's standard payroll process (the "Severance Payment"). Employee acknowledges that Employee is not already entitled to this Severance Payment. Employee further acknowledges that the Severance Payment will not be made to Employee until ReliaQuest has received this fully executed Agreement from Employee and all company property described in Paragraph 3 below has been received by ReliaQuest from Employee.

3. **RETURN OF COMPANY PROPERTY.** Employee agrees to return to ReliaQuest property of ReliaQuest such as credit cards, keys, cell phones, Laptops, Bags, computer disks, computer programs, files, and any documents in any format prepared or received by Employee that Employee has in his or her possession or control relating in any way to the ReliaQuest's business operations.

4. **CONFIDENTIALITY, NON-SOLICITATION & NON-COMPETITION.** Employee acknowledges and agrees that Employee remains bound by the terms of his or her Employment Agreement related to confidentiality, non-solicitation and non-competition. Employee understands that if Employee has questions regarding those obligations, Employee should consult the Employment Agreement or contact ReliaQuest or an appropriate representative as described in item (b) below. Employee also agrees to hold the existence of this Agreement and its provisions in strictest confidence and Employee will not publicize or disclose the terms in any manner whatsoever; provided, however, that Employee may disclose the terms of this Agreement in confidence: (a) to a spouse or partner; (b) to an attorney, accountant, auditor, tax preparer, and financial advisor, provided that such individuals first agree that they will treat such information as strictly confidential and that Employee agrees to be responsible for any disclosure by any such individual as if Employee had made the disclosure; and (c) as necessary to enforce its terms or as otherwise required by law. **Employee agrees not to disclose the terms of this Agreement to any current or former ReliaQuest employees**.

5. **NON-DISPARAGEMENT.** Employee agrees not to disparage ReliaQuest and its officers, directors, employees, or agents, in any manner likely to be harmful to them or their business, business reputation, or personal reputation; provided, however, that statements which are made in good faith in response to any question, inquiry, or request for information required by legal process shall not violate this paragraph. Nothing in this restriction is intended to limit Employee from giving honest statements before an administrative agency investigating an alleged violation of federal, state or local laws, including the Equal Employment Opportunity Commission, the National Labor Relations Board, and the Security & Exchange Commission.

6. **RELEASE.** In exchange for the consideration referred to in this Agreement, Employee hereby releases and forever discharges ReliaQuest from any and all claims, actions, demands, and causes of action in law or in equity which Employee may have had, or may now have against ReliaQuest, including but not limited to any and all claims which are based on or in any way related to his or her employment with ReliaQuest or the termination of that employment. This waiver and release specifically excludes matter that may not be released by law, including Employee's right to pursue certain claims and relief with the Equal Employment Opportunity Commission, the National Labor Relations Board, and the Security & Exchange Commission.

7. **ACKNOWLEDGMENT.** Employee expressly acknowledges that Employee has relied on, or had the opportunity to rely upon, advice of counsel of Employee's choosing or has been given an opportunity to review it with counsel and have chosen not to do so. Employee further declares and acknowledges that no representations made by any agent or attorney of ReliaQuest, if any, concerning any legal advice or other information related to this Agreement, and that Employee is acting upon Employee's own best judgment, belief, and knowledge regarding execution of this Agreement.

**- Signature Block on Next Page –**



**YOU UNDERSTAND YOU ARE GIVING UP ALL RIGHTS YOU MAY HAVE TO RECOVER DAMAGES FROM THE COMPANY OR REINSTATEMENT BASED ON ANYTHING THAT HAPPENED BEFORE YOU SIGNED THIS AGREEMENT. YOU ACKNOWLEDGE THAT YOU SIGN THIS AGREEMENT KNOWINGLY AND VOLUNTARILY.**

**RELIAQUEST, LLC**

SIGN: *Greg Farrell* (signature)

NAME: Greg Farrell

TITLE: Chief Financial Officer

DATE: Apr 4, 2022

**EMPLOYEE: AARON ALLEN**

SIGN: *Aaron Allen* (signature)
Aaron Allen (Apr 4, 2022 12:01 EDT)

DATE: Apr 4, 2022

3 | Page



**AARON ALLEN:** This document provides you with a summary of the information presented to you concerning your separation from employment with ReliaQuest, LLC. Please carefully review the Severance Agreement and General Release (the "Severance Agreement"). If you have any questions, please contact ReliaQuest at RQbenefits@reliaquest.com or legal@reliaquest.com.

1. **Separation Date**: **March 21, 2022.**

2. **Final Pay Date**. You will be paid for all wages earned in the current pay period through the separation date listed above, less applicable withholdings, deductions and taxes, on **March 30, 2022,** in the gross amount of $REDACTED.

3. **Severance Calculation**. If you sign the Severance Agreement by 5:00 pm on **April 6, 2022,** ReliaQuest will pay you severance pay in the amount of $REDACTED less applicable withholdings, deductions and taxes, which will be broken up and paid out over two (2) payroll periods in accordance with ReliaQuest's standard payroll process. If you decide not to sign the Severance Agreement, you will forgo any right to the above severance payment and be required to reimburse ReliaQuest for the full amount of any relocation or other expenses you may owe. In such instance, ReliaQuest will contact you to setup an appropriate payment arrangement and ReliaQuest reserves the right to pursue any lawful means to recoup the full amount of any relocation costs.

4. **Health Benefits**. If you are currently enrolled in health benefits, your coverage expires at 11:59 p.m. on **March 31, 2022, however if you sign the Severance Agreement it will expire at 11:59 p.m. on April 30, 2022**. You may then choose to continue coverage at your cost through COBRA. You will receive information regarding COBRA from our third-party vendor.

5. **401(k)**. If you participate in 401(k), you will have three options following your separation, subject to plan rules:
   a) Rollover the 401(k) account into an IRA or another employer's 401(k) plan;
   b) Cash out the account; or
   c) Leave in current 401(k) account just as any other active participant.

   For more information, go to www.401k.com or call (800) 835-5097.

6. **Unemployment**. ReliaQuest will not oppose any application you make for unemployment compensation benefits but will provide truthful information about you and your separation as may be requested or required by any unemployment agency. ReliaQuest cannot guarantee eligibility for those benefits.

7. **Expenses**. If you have any outstanding expenses, a final expense report should be turned in by the end of the pay period and the normal approval and reimbursement process will be followed, subject to any setoff of amounts owed by you to ReliaQuest.

8. **Forwarding Information**: Please make sure to maintain your home address and contact information for future company communications (e.g., W-2 mailing, etc.).

9. **Confidentiality, Non-Solicitation, and Non-Competition**. You remain bound by the terms of your Employment Agreement dated **October 12, 2021**. If you have any questions regarding your obligations, please consult independent legal counsel to advise you of your rights.

10. **Severance Agreement:** You will receive the Severance Agreement through Adobe Sign. Please carefully read and review its terms prior to signing.

# Exhibit B to Noonan Declaration

MARCH 25, 2022 EMAIL FROM AARON ALLEN TO KATHY MORALES-JORGENSEN

**From:** cyb3r n3tiz3n <**cyb3rn3tiz3n@outlook.com**>
**Sent:** Friday, March 25, 2022 3:07:30 PM
**To:** Kathy Morales-Jorgensen <**kjorgensen@reliaquest.com**>
**Subject:** [EXTERNAL] Re: Signature requested on "Aaron Allen Severance Agreement & ESIS"

Hello,

It is against my religious beliefs to sign contracts forming covenants with secular organizations.

Please replace "covenant" with agreement.

Thank you

Get **Outlook for Android**

**From:** cyb3r n3tiz3n <**cyb3rn3tiz3n@outlook.com**>
**Sent:** Tuesday, March 22, 2022 9:21:24 AM

1

**To:** Katherine Morales-Jorgensen <Kjorgensen@Reliaquest.com>
**Subject:** Re: Signature requested on "Aaron Allen Severance Agreement & ESIS"

Will Review.

Make sure to have my headphones, keyboard, and mouse sent from my desk to the address on file, thanks.

---

**From:** Katherine Morales-Jorgensen <echosign@echosign.com>
**Sent:** Monday, March 21, 2022 6:22 PM
**To:** cyb3rn3tiz3n@outlook.com <cyb3rn3tiz3n@outlook.com>
**Subject:** Signature requested on "Aaron Allen Severance Agreement & ESIS"

Katherine Morales-Jorgensen requests your signature on
**Aaron Allen Severance Agreement & ESIS**

Please review and complete Aaron Allen Severance Agreement & ESIS.

**KATHERINE MORALES-JORGENSEN**

Kjorgensen@Reliaquest.com

After you sign **Aaron Allen Severance Agreement & ESIS**, the agreement will be sent to **Greg Farrell.**

By proceeding, you agree that this agreement may be signed using electronic or handwritten signatures.

To ensure that you continue receiving our emails, please add **echosign@echosign.com** to your address book or safe list.

© 2022 Adobe. All rights reserved.