# Exhibit C

APRIL 21, 2023 LETTER FROM LATHAM & WATKINS TO I. TYGAR

**Steven J. Pacini, Esq.**
Direct Dial: (617) 880-4516
steven.pacini@lw.com

200 Clarendon Street
Boston, Massachusetts  02116
Tel: +1.617.948.6000  Fax: +1.617.948.6001
www.lw.com

**LATHAM & WATKINS** LLP

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Austin | Milan |
| Beijing | Munich |
| Boston | New York |
| Brussels | Orange County |
| Century City | Paris |
| Chicago | Riyadh |
| Dubai | San Diego |
| Düsseldorf | San Francisco |
| Frankfurt | Seoul |
| Hamburg | Shanghai |
| Hong Kong | Silicon Valley |
| Houston | Singapore |
| London | Tel Aviv |
| Los Angeles | Tokyo |
| Madrid | Washington, D.C. |

April 21, 2023

<u>**VIA EMAIL**</u>

Ian Tygar
Neil Bryan Tygar, P.A.
5341 W. Atlantic Ave. #303
Delray Beach, FL 33130
itygar@icloud.com

Re:    <u>**Allen v. ReliaQuest, LLC (Case No. 8:23-cv-805)**</u>

Dear Ian:

As we discussed, Latham & Watkins is counsel for ReliaQuest, LLC ("ReliaQuest").  I write to follow up on our previous telephone conversations on Friday, April 14th and Tuesday, April 18th, 2023 regarding the above-referenced complaint filed on April 12th, 2023 (the "Complaint").

Latham & Watkins was alerted to the Complaint as part of its standard docket monitoring process on behalf of its clients – neither you nor Mr. Allen had given ReliaQuest advanced notice that you were filing a public complaint.  I called you on Friday, April 14th, during which I requested that you withdraw the Complaint immediately.  As I told you, Mr. Allen released the claims in the Complaint as part of a severance agreement.  Further, Mr. Allen's baseless Complaint that ReliaQuest engaged in racial and religious discrimination and retaliation are defamatory and damaging to ReliaQuest.  You acknowledged you had seen the severance agreement between Mr. Allen and ReliaQuest, dated April 4th, 2022 (the "Severance Agreement") (attached).  Section 6 of the Severance Agreement includes a clear and conspicuous, standard release:

> In exchange for the consideration referred to in this Agreement, Employee hereby releases and forever discharges ReliaQuest from any and all claims, actions, demands, and causes of action in law or in equity which Employee may have had, or may now have against ReliaQuest, including but not limited to any and all claims which are based on or in any way related to his or her employment with ReliaQuest or the termination of that employment.

LATHAM&WATKINS LLP

When I asked you why you believed you could have filed this lawsuit given Section 6 of the Severance Agreement, you told me that you would call me on Monday. You would not explain on the phone on Friday.[1]

I called you again on Tuesday, April 18th. During this call, you told me your theory was that Mr. Allen did not knowingly and intentionally sign the Severance Agreement. When I asked your basis for this argument, you told me that Mr. Allen did not have an attorney review the Severance Agreement.

That an attorney did not review a severance agreement does not make a release unknowing or involuntary. In fact, Florida courts do not examine whether an attorney reviewed an agreement in examining whether a release was knowing and voluntary. Instead, Florida courts consider whether an employee was given a chance to consult with an attorney and the employer's encouragement or discouragement of the same. It is established law in Florida that two weeks is sufficient time to knowingly and voluntarily sign a release and consult with an attorney if the employee so desires. *See Jones v. A&T Umbrella Benefit Plan No. 1*, 2018 WL 748870, at \*6–7 (M.D. Fla. Jan. 10, 2018) (noting that other courts had found "fourteen days was sufficient time to knowingly and voluntarily sign a release" and "consult with an attorney") (citing *Puentes v. United Parcel Serv., Inc.*, 86 F.3d 196, 199 (11th Cir. 1996).

If you had performed even a cursory investigation of this matter before filing the Complaint, you would know that ReliaQuest sent Mr. Allen the Severance Agreement for review on March 21st, 2022 and gave him until April 6th, 2022 to review the agreement and consult with an attorney if he so wished. Mr. Allen did not sign the Severance Agreement until April 4th, 2022, two full weeks later. In this time, Mr. Allen in fact reviewed the Severance Agreement and requested changes, to which ReliaQuest agreed. Mr. Allen had more than enough time to review and to consult with an attorney. *Puentes*, 86 F.3d at 198-199 (holding two weeks was a sufficient review period). Further, Section 7 of the Severance Agreement includes an acknowledgment that Mr. Allen "has relied on, or had the opportunity to rely upon advice of counsel of Employee's choosing or has been given an opportunity to review it with counsel and [has] chosen not to do so."

Thus, Mr. Allen knowingly and intentionally agreed to the Severance Agreement and released ReliaQuest from the claims in the Complaint. He received generous consideration for the release: one-month salary (despite having worked for ReliaQuest for a mere four months with seriously subpar performance). The Complaint is therefore made in bad faith and is a breach of the Severance Agreement. Your conduct in filing it without first conferring with ReliaQuest or its attorneys and then leaving it on the public docket is also in bad faith and violates Rule 11.

Not only is the Complaint barred by the Severance Agreement, it is frivolous. Contrary to the allegations, ReliaQuest did not retaliate against Mr. Allen. Mr. Allen did not oppose any

---

[1] After our phone conversation, I tried to email you at the itygar@me.com, the email address you listed on the Complaint. I received a bounce back message that the address was invalid. I did not hear from you on Monday, April 17th, 2023.

LATHAM&WATKINS LLP

activity that would constitute discrimination or harassment.[2]  Even if Mr. Allen had opposed discrimination (and he did not), ReliaQuest terminated Mr. Allen because of ongoing and documented poor performance; so significantly below expectations that it was jeopardizing ReliaQuest's client relationships and business.  Customers even reached out to ReliaQuest about his poor performance and conveyed that they felt uncomfortable working with him because he was unable to answer their questions and give them the requisite level of confidence that he could handle the significant work involved in ReliaQuest's data security business.  Mr. Allen's fellow employees and managers also reported that his performance was seriously lacking.  These multiple independent complaints are documented.  Mr. Allen was given opportunities and assistance to improve, but failed to.  There is thus no validity to any claim of racial or religious discrimination or retaliation.

You must immediately withdraw the Complaint. It is causing ongoing damage to ReliaQuest's reputation and goodwill.  ReliaQuest is a successful company with in-house counsel and human resources, and it takes its status as an equal opportunity employer with a diverse workforce seriously.  ReliaQuest finds these claims outrageous and is prepared to fully litigate this matter to set the record straight.  Mr. Allen's woefully subpar performance and incompetence, as well as his brazen act of filing a federal lawsuit after collecting a generous severance in exchange for a standard general release, will become part of the public record if Mr. Allen presses forward with the Complaint.

On top of the ongoing damage to ReliaQuest, your client retains ReliaQuest's generous severance payment of $REDACTED (the "Severance Payment").  The Severance Payment was above market, even for long-term employees who performed satisfactorily.  Mr. Allen was neither a long-term employee nor had he performed satisfactorily.  He had only been at ReliaQuest for four months.  Over the course of his short employment, as noted multiple customers and managers complained about Mr. Allen's performance.  If your position is that the Severance Agreement is invalid, your client must immediately return the Severance Payment.

If you and your client proceed with this matter, we will seek sanctions against you and your law firm under Rule 11.  This letter constitutes formal notice under Rule 11.

Additionally, ReliaQuest will bring counterclaims against your client for breach of contract, bad-faith litigation, and defamation.  ReliaQuest is prepared to seek full restitution, including all of its attorneys' fees, costs, and damages.  Although I see on the docket that a summons was issued, I have not heard from you about service.  I urge you not to serve the complaint and to instead withdraw it.  If you do serve the summons, please promptly inform me as counsel for ReliaQuest.

\*      \*      \*

---

[2] A fellow employee posting an allegedly "racially charged" meme one time does not qualify as harassment or discrimination, and opposing such conduct is not protected activity.

April 21, 2023
Page 4

LATHAM&WATKINSLLP

        Please direct your response to me.  You may call me at (617) 880-4516 or email me at steven.pacini@lw.com.  Be advised that ReliaQuest reserves all its rights and remedies, including its right to seek monetary, attorneys' fees, costs, and sanctions.  This letter is not intended to be a complete statement of all the facts and legal arguments in support of ReliaQuest's position.  All of ReliaQuest's rights and remedies, that it may now or ever have, including at law or under the Severance Agreement, are retained and reserved without limitation, waiver or prejudice.

        Sincerely,

        Steven J. Pacini

cc:    Jody Keeling, Esq., Vice President, Corporate Counsel, ReliaQuest
       Laura Tanner, Esq., Director, Corporate Counsel, ReliaQuest