IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | | |
|---|---|---|
| AARON ALLEN | ) | |
| | ) | |
| Plaintiff | ) | Case No. 8:23-cv-806 |
| | ) | |
| vs. | ) | |
| | ) | |
| RELIAQUEST, LLC, | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS AND MEMORANDUM OF LAW**

NOW COMES, AARON ALLEN ("Plaintiff") who by and through the undersigned counsel files this Response to the Defendant's Motion for Judgment on the Pleadings and Memorandum of Law (the "Motion") (ECF No. 24) as follows:

1. The Defendant's Motion raises one singular argument: that Plaintiff entered into the severance agreement (the "Agreement") voluntarily and knowingly and thus reaches the erroneous conclusion that Defendant's second affirmative defense of release entitles it to judgment on the pleadings.

2. Defendant's argument continues to ignore language excluding EEOC claims from the release while at the same time subtlety deemphasizing the actual language of the agreement but not quoting it with full candor. Defendant completely ignores the Declaration of Plaintiff. [ECF 22-1] as to who on behalf of Plaintiff specifically represented what the ambiguous language meant, and who explicitly stated that plaintiff could "sue" in accordance with same.

3. Furthermore, while asserting that the second affirmative defense of waiver (the severance agreement) entitles Defendant to Judgment on the pleadings, it ignores the seven filed

affirmative defenses to their counterclaims which apply to their affirmative defenses namely fraud in the inducement, waiver, estoppel, unclean hands, construction, mutual mistake, and negligent misrepresentation. [See Fed. R. Civ. P. 8(c)(2) and 8(e)] The failure to refute these affirmative defenses alone requires a denial of the motion for judgment on the pleadings.

4. The Motion further fails to adequately address the need to refute all the prongs of the Totality of the Circumstances test which is summarized as the six (6) factors (all of which are factual, and most disputed and a subject of discovery). Despite the Defendants self-serving summaries that all prongs resolve for Defendant they actually are based on no record evidence or admissions but merely self-serving statements of the Defendant and apply no actual evidence or discovery regarding same.

5. The arguments Defendant relies upon reveals that there are issues of material fact regarding these elements that if taken in a light most favorable to the Plaintiff would require this Court to deny the Motion.

6. Upon examination of the complaint and taking all facts therein as true, the Motion should be denied.

7. Moreover, upon examination of the answer and counterclaims and the answer to the counterclaims and affirmative defenses thereto, the Motion should be denied as it does not support a finding that the counterclaims cannot be disproven especially when the Motion does not even attempt to controvert the Plaintiff's affirmative defenses.

8. To the extent the Court is persuaded that the Plaintiff has not pled sufficient facts to state a viable claim, Plaintiff requests leave to file an amended complaint.

## MEMORANDUM OF LAW

### I. STANDARD OF REVIEW

As with the Rule 12(b)(6) motion, under Rule 12(c) the court must accept the nonmovant's allegations as true viewing the facts "in the light most favorable to the nonmoving party." *Latecoere Int'l, Inc. v. United States Dep't of the Navy*, 19 F.3d 1342, 1357 (11th Cir. 1994) (on Fed. R. Civ. P. 12(c) motion, court must review evidence in light most favorable to nonmoving party); *GATX Leasing Corp. v. National Union Fire Ins. Co.*, 64 F.3d 1112, 1114 (7th Cir. 1995) (facts viewed in light most favorable to nonmoving party); *Park Univ. Enters., Inc. v. American Cas. Co.*, 442 F.3d 1239, 1244 (10th Cir. 2006) ("We review a district court's grant of a motion for judgment on the pleadings de novo, using the same standard that applies to a Rule 12(b)(6) motion. … So doing, we accept all facts pleaded by the nonmoving party as true and grant all reasonable inferences from the pleadings in favor of the same.").

**Here the complaint clearly stands, and is not even challenged, instead Defendants argument is based not on refuting the complaint, but on its claim that its affirmative defense of release is so compelling that judgment must be rendered in defendants favor on the mere pleading of the release.** Defendants ignore the response to defendants counterclaims and affirmative defenses to same including fraud in the inducement, waiver, estoppeal, unclean hands, construction, and negligent misrepresentation, as well as the Declaration of Plaintiff filed of record and essentially demand judgment on their unsupported factual allegations.

A complaint survives a motion for judgment on the pleadings if it contains sufficient factual matter, accepted as true, to state a claim to relief that is "plausible on its face" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007); Ashcroft v. Iqbal, 556 U.S. 662, 678–679, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *HDC, LLC v. City of Ann Arbor*,

675 F.3d 608, 611 (6th Cir. 2012) (court applies pleading requirements from Twombly and Iqbal to motions under Fed. R. Civ. P. 12(c)); *Cafasso v. General Dynamics C4 Sys.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (in reviewing dismissal under Fed. R. Civ. P. 12(c), court applies same standard as under Fed. R. Civ. P. 12(b)(6) and inquires whether complaint's factual allegations, together with all reasonable inferences, state plausible claim for relief); *Rollins v. Wackenhut Servs., Inc.*, 703 F.3d 122, 129–130 (D.C. Cir. 2012) (Twombly plausibility standard applies to motions under Fed. R. Civ. P. 12(c); complaint must contain sufficient factual matter, accepted as true, to state claim that is plausible on its face).

The language "plausible on its face" emphasizes the limited applicability of Rule 12(b)(6) as the predicate for a final dismissal of the action, a disposition that courts generally disfavor because it summarily terminates cases on their merits. *United States v. Baxter Int'l, Inc.*, 345 F.3d 866, 881 (11th Cir. 2003) (threshold of sufficiency to which complaint is held at motion-to-dismiss stage is "exceedingly low"); *Barnett v. Bailey*, 956 F.2d 1036, 1043 (11th Cir. 1992) (Fed. R. Civ. P. 12(b)(6) dismissal requires "beyond doubt" standard). During this threshold review, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. *Brandt v. Bassett*, 69 F.3d 1539, 1550 (11th Cir. 1995) (quoting Scheuer); see also *Harris v. Procter & Gamble Cellulose Co*., 73 F.3d 321, 324 (11th Cir. 1996) (denial of motion does not indicate that plaintiff will prevail on claim that withstands Fed. R. Civ. P. 12(b)(6) challenge).

For Rule 12(b)(6) purposes, the court must accept the plaintiff's factual allegations as true, drawing all reasonable inferences in plaintiff's favor. *Fuller v. Johannessen*, 76 F.3d 347, 349–350 (11th Cir. 1996) (relying on *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957). The court should construe a plaintiff's allegations liberally, because the rules require

only general or "notice" pleading, rather than detailed fact pleading. For example, provided that a pleading states a claim for relief under the plausibility standard, it is not necessary for the pleading to also rebut other possible explanations for the conduct alleged, even if those alternatives might appear to be more likely. *Harris v. Procter & Gamble Cellulose Co.,* 73 F.3d 321, 324 (11th Cir. 1996) (notice pleading required)

## II. ARGUMENT

The Motion's sole argument is that the Plaintiff knowingly and voluntarily released his claims against the Defendant when Plaintiff entered into the Agreement between the parties. (Defendant's Second Affirmative Defense). A careful examination of the argument reveals that it (1) relies on the unsupported conclusion that the language of the severance agreement was clear and unambiguous and or understood by both parties to mean the same thing; (2) ignores the facts as alleged in the Affirmative defenses to counter claim [DE 18, Pages 8-12] and the Plaintiffs Certification [DE 22, Ex 1]; and (3) it ignores that the Totality of the Circumstances is not limited to the words of the agreement, but instead tests the circumstances surrounding the agreement for fundamental fairness in promoting public policy's in support of federal law.

Defendant's analysis must address all of the six (6) factors used to determine whether the Plaintiff entered into the Agreement knowingly and voluntarily, and those factories are primarily evidentiary and clearly raise issues of material fact if all reasonable inferences are taken as true, thus Defendant fails to meet the evidentiary standard necessary for a judgment on the pleadings, or on his counterclaims and as such the Motion fails.

The Motion further fails as to the counterclaims of the Defendant as none of the elements to those causes of action have been established and an analysis thereon reveals that the elements have not been properly pled and further seek damages that Defendant is not entitled to as a matter

of law. Furthermore, the Plaintiff's affirmative defenses have not been refuted so the Motion must be denied as to the counterclaims.

To the extent the Court is persuaded by the Motion, Plaintiff respectfully requests leave to amend the complaint, and / or answer to counter claims.

### A. Section 6 of the Agreement is not clear and unambiguous.

Section 6 of the Agreement is not clear and unambiguous therefore a finding for the Defendant on this matter would be improper.

#### 1. The Defendant ignores the ambiguates created by the second sentence of the Release.

The Defendant relies on the first sentence of Section 6 of the Severance Agreement and appears to ignore highlighted second sentence. Section 6 states in relevant part:

> "RELEASE. In exchange for the consideration referred to in this Agreement, Employee hereby releases and forever discharges ReliaQuest from any and all claims, actions, demands, and causes of action in law or in equity which Employee may have had, or may now have against ReliaQuest, including but not limited to any and all claims which are based on or in any way related to his or her employment with ReliaQuest or the termination of that employment. **This waiver and release specifically excludes matter that may not be released by law, including Employee's right to pursue certain claims and relief with the Equal Employment Opportunity Commission, the National Labor Relations Board, and the Security & Exchange Commission.**"

Plaintiff reasonably interpreted the above highlighted language as allowing him to file an EEOC claim, and a subsequent lawsuit once the right to sue letter was issued. This reasonable interpretation of the agreements language was bolstered by the **express representations of Defendant** made immediately prior to signature to Plaintiff who was told **"….I was told by my employer "you can sue after you sign!",** See Declaration [ECF 22-1].

Defendant frequently complains that the complaint fails to mention the agreement in an attempt to bolster his various arguments, however the agreement is an affirmative defense of the defendant and not part of Plaintiffs prima facie case. Rule 8(a) of the Federal Rules of Civil

Procedure does not require the pleading of a disputed release agreement as part of Plaintiffs case for violations of Federal Protected Racial Discrimination claims under the EEOC as it is not an element of Plaintiffs case.  Plaintiff has filed no case falling under the agreement, the agreement is merely an affirmative defense of Defendant.  To the contrary, Rule 8(c)(1) specifies release as an Affirmative Defense to be plead in response, and is not part of the pleading of Plaintiff.   As such Defendant's argument that Plaintiff was under an affirmative duty to plead the agreement fails.

The Plaintiff's interpretation of the agreement that he had the right to sue for EEOC violations was bolstered by the representations made by Scott Noonan which the Plaintiff states in his Declaration filed of record herein in relevant part [DE 22, Ex 1]

> *"13. On March 21, 2022, prior to signing the severance agreement, I met with Senior Vice President of Development and Engagement, Scott Noonan in a meeting office with two other managers, in which Mr. Noonan explained the severance agreement and further stated that by signing the severance agreement, I would waive all claims against RELIAQUEST except those protected by law such as EEOC Claims.*
>
> *14. I relied on the statement made by Mr. Noonan which bolstered my belief of what the language of Section 6 meant and signed the severance agreement."* (ECF 22-1 at p. 2).

The above statements were in the record and in the possession of the Defendant at the time the Motion was filed but despite clear notice **the Motion falsely avers** that

*"Plaintiff makes this bald assertion without particularity. He does not state who from ReliaQuest said it, when, or in what context. Yet it is essentially a claim of fraud in the inducement. . . Plaintiff did not plead even basic facts about where this conversation occurred or who made the statement to him."* (ECF 24 Motion at 14).

Conspicuously absent form Defendant's argument is any justification for the use of the second sentence in the release or even an attempt to argue that the language is clear and unambiguous. An examination of Defendant's Counterclaims, especially the Count I Breach of

Section 6, reveals that it further relies on the first sentence of Section 6 **and does not attempt to explain the meaning of the second sentence that includes a carve out for "Employee's right to pursue certain claims and relief with the Equal Employment Opportunity Commission…."**. Furthermore, the Answer to the counterclaims contains affirmative defenses of Mutual Mistake, Fraud in the Inducement and Negligent Misrepresentation that go to the crux of this issue. (See ECF 18 Motion at p. 9-11).

The Defendant's only attempt to argue that the second sentence is clear and unambiguous is found on pages 8 through 10 of the Motion. Curiously, the Defendant's attempt begins with quoting the release language of paragraph 6 but omits the second sentence. (Motion at p. 8). The only argument Defendant makes regarding the second sentence is the **unsupported conclusion** that *"this release makes clear Plaintiff is not prohibited from filing or participating in EEOC claims or investigations, but he is prohibited from personally recovering damages under related claims."* (Mot. p. 9). To support this conclusion, the Motion emphasizes language outside of Section 6 that appears on the signature page and the qualifying language that the claims cannot be released *"as a matter of law"*[1], which may be one interpretation of the language but not the only one.

The sentence states as follows:

> "This waiver and release specifically excludes matter that may not be released by law, including Employee's right to pursue certain claims **and** relief with the Equal Employment Opportunity Commission, the National Labor Relations Board, and the Security & Exchange Commission."{emphasis added}

The use of the conjunction **and** creates the possibility of reading the above sentence to mean that the "release by law" applies only to Employee's right to pursue certain claims and the **and** is additional exclusions from the release that are not qualified by the "release of law"

---

[1] The words "as a matter of law" do not appear in Section 6 of the Agreement.

language. This possible meaning should be given greater weight as the Plaintiff did not draft this language, is not a lawyer and was unable to hire a lawyer so that he relied on the representations as to interpretation made to him by the Defendant through Mr. Noonan.

Moreover, the words "matter that may not be released by law" is also ambiguous as the words could be construed to include Plaintiff's discrimination claims, an interpretation which was represented to Plaintiff by Mr. Noonan and upon which he relied. (See ECF 22-1 Declaration at p. 2).

Based on the above, it appears the second sentence of the release is a patent ambiguity as it arises from the use of insensible language. *Emergency Assocs. of Tampa, P.A. v. Sassano*, 664 So. 2d 1000 (Fla. 2d DCA 1995). As such, the release does not clearly indicate the parties' intention, therefore the court must declare that the patently ambiguous provision is a nullity. *See Connelly v. Smith*, 97 So. 2d 865 (Fla. 3d DCA 1957).

To the extent the court finds the language is determined to be clear and intelligible, then a latent ambiguity exists which requires the review extrinsic evidence to interpret the possible meanings of the release. *Ace Elec. Supply Co. v. Terra Nova Elec., Inc.*, 288 So. 2d 544 (Fla. 1st DCA 1973); *RX Solutions, Inc. v. Express Pharmacy Servs., Inc.,* 746 So. 2d 475 (Fla. 2d DCA 1999) (when a contract is rendered ambiguous by some collateral matter, it has a latent ambiguity, and the court must hear parol evidence to interpret the writing properly.) A latent ambiguity is brought to light when extraneous circumstances reveal "an insufficiency in the contract not apparent from the face of the document." *Hunt v. First Nat'l Bank,* 381 So. 2d 1194 (Fla. 2d DCA 1980).

The Motion fails as its reliance on the Agreement is misplaced because there is an ambiguity in the language of paragraph 2 of the release, which casts doubt on whether it exempted

the Plaintiff's EEOC racial discrimination claims against the Defendant. The Plaintiff has provided extrinsic evidence by and through his Declaration to support a finding that the second sentence exempted his claims. Moreover, any ambiguity will be held against the Defendant as it drafted the Agreement.

The Defendant's use of the language outside of Section 6 further fails as it does not take into consideration the clear and unambiguous portion of Section 6 in which is states: "*This waiver and release specifically excludes"*. To the extent the Defendant is suggesting that the language outside of Section 6 is controlling over the language contained in Section 6, this argument fails because as the drafter of the Agreement, any ambiguity should be construed against the Defendant and therefore the language in Section 6 should control.  See *City of Homestead v. Johnson*, 760 So. 2d 80, 84 (Fla. 2000) (An ambiguous term in a contract is to be construed against the drafter.); *Hurt v. Leatherby Ins. Co.*, 380 So. 2d 432, 434 (Fla. 1980). (Generally, ambiguities are construed against the drafter of the instrument.); "A provision in a contract will be construed most strongly against the party who drafted it." *Sol Walker & Co. v. Seaboard Coast Line R.R. Co.*, 362 So. 2d 45, 49 (Fla. 2d DCA 1978). Where the language of contract is ambiguous or doubtful, it should be construed against the party who drew the contract and chose the wording. *Vienneau v. Metropolitan Life Ins. Co.*, 548 So. 2d 856 (Fla. 4th DCA 1989); *Am. Agronomics Corp. v. Ross*, 309 So. 2d 582 (Fla. 3d DCA 1975). "To the extent any ambiguity exists in the interpretation of [a] contract, it will be strictly construed against the drafter." *Goodwin v. Blu Murray Ins. Agency, Inc.*, 939 So. 2d 1098 (Fla. 5th DCA 2006); *Russell v. Gill*, 715 So. 2d 1114 (Fla. 1st DCA 1998).

Because of this ambiguity and because the language should be interpreted against the Defendant drafter, the Motion fails.

**B. The mere existence of the Agreement (release) affirmative defense is not sufficient.**

Federal courts are cautions to grant summary judgment regarding similar severance agreements as it is often found that issues of material fact remain regarding the Totality of the circumstances (what Defendant calls the six factors). The following language from *Torrez v. Public Service Co. of New Mexico,* 908 F.2d 687 (10th Cir. 1990) which expresses the majority of Federal Districts courts holdings and has been cited in this district when this issue has been raised presents the current dominant legal position on this issue.

> "The majority of circuits, however, explicitly look beyond the contract language and consider all relevant factors in assessing a plaintiff's knowledge and the voluntariness of the waiver. *See Stroman v. West Coast Grocery Co.,* 884 F.2d 458, 462 (9th Cir. 1989); *Riley v. American Family Mut. Ins. Co.,* 881 F.2d 368, 373-74 (7th Cir. 1989); *Bormann v. A T T Communications, Inc.,* 875 F.2d 399, 403 (2d Cir.) (waiver of ADEA rights), *cert. denied,* ___ U.S. ___, 110 S.Ct. 292, 107 L.Ed.2d 272 (1989); *Cirillo v. Arco Chem. Co.,* 862 F.2d 448, 451 (3d Cir. 1988) (waiver of ADEA rights); *Coventry v. United States Steel Corp.,* 856 F.2d 514, 522-23 (3d Cir. 1988) (waiver of ADEA rights); *Rogers v. General Elec. Co.,* 781 F.2d 452, 456 (5th Cir. 1986). In so doing, these courts have considered the following circumstances and conditions under which the release was signed:
>
> "(1) the clarity and specificity of the release language; (2) the plaintiff's education and business experience; (3) the amount of time plaintiff had for deliberation about the release before signing it; (4) whether [p]laintiff knew or should have known his rights upon execution of the release; (5) whether plaintiff was encouraged to seek, or in fact received benefit of counsel; (6) whether there was an opportunity for negotiation of the terms of the Agreement; and (7) whether the consideration given in exchange for the waiver and accepted by the employee exceeds the benefits to which the employee was already entitled by contract or law."
> *Cirillo,* 862 F.2d at 451.
>
> In our view, the totality of the circumstances approach is the better one. **While evaluation of the language of the contract is necessary to determine the validity of the waiver of discrimination claims, our inquiry cannot end there. Especially "[i]n light of the strong policy concerns to eradicate discrimination in employment, a review of the totality of the circumstances, considerate of the particular individual who has executed the release, is also necessary."** *Coventry,* **856 F.2d at 522-23**; *see also Watkins,* **530 F.2d at 1172** **("[t]o assume that, notwithstanding strong evidence to the contrary, a signature implies understanding is to allow a rule of contract law to play too salient a part in the administration of a remedial civil rights statute").**

> In assessing the totality of the circumstances in this case, we conclude there are material issues of fact precluding summary judgment. **The language of the release, although clear and unambiguous, failed to mention specifically waiver of employment discrimination claims.** *See Cirillo,* 862 F.2d at 450 (employee advised of equal employment laws, encouraged to consult employee relations representative, and release specified employment discrimination claims); *Rogers,* 781 F.2d at 453-54 (release specifically mentioned Title VII). **As we have stated above, unambiguous language cannot derail our analysis of whether the waiver was made knowingly and voluntarily. Here,** Torrez has stated that it did not occur to him when he signed the release that he might be waiving possible discrimination claims."{emphasis added}

See also *Pierce v. Atchison Topeka and Santa Fe Ry. Co.*, 110 F.3d 431, 438, (7th Cir. 1997) (We observe, finally, that placing the burden of proof upon Santa Fe with respect to whether Pierce knowingly and voluntarily waived his ADEA claims is consistent with our holding that waivers of federal rights cannot be governed solely by principles of contract--a holding that stems from the view that "[w]aivers of federal remedial rights ... are not lightly to be inferred,"); *Fields v. Baseline Props., LLC* (W.D. Okla. 2021) (Defendant's Motion for Summary Judgment is denied regarding written waiver of rights to pursue federal claims); *Rangel v. El Paso Natural Gas Co.*, 996 F.Supp. 1093 (D. N.M. 1998) (Defendant's Motion for Summary Judgment denied on Plaintiff's Title VII and state law claims regarding written separation agreement);

Since federal courts struggle to render a decision on the less rigorous summary judgment standard, it would be error to place a greater burden on that of the Plaintiff in regards to a Rule 12 standard.

**C.   Plaintiff did not knowingly and voluntarily waive his EEOC discrimination claims.**

The Plaintiff did not knowingly and voluntarily waive his EEOC discrimination claims Employees can waive employment claims when their waiver is "voluntary and knowing based on the totality of the circumstances." *Myricks v. Fed. Reserve Bank of Atlanta*, 480 F.3d 1036, 1040 (11th Cir.2007). The waiver claims must be knowing and voluntary. *Freeman v. Motor Convoy, Inc.*, 700 F.2d 1339, 1352-53 (11th Cir. 1983).

The Court considers the (i) the education and business experience of the employee; (ii) the time the employee spent considering the agreement before signing it; (iii) the clarity of the language in the agreement; (iv) the employee's opportunity to consult with an attorney; (v) whether the employer encouraged or discouraged consultation with an attorney; and (vi) the consideration given in exchange for the release[2] compared to the benefits the employee was already entitled to receive. *Id*.

Mr. Allen did not participate in the creation of the agreement See ECF 22-1 Declaration. Mr. Allen had not prior legal or business experience related to law or contracts for which he could rely upon to competently review the agreement. See ECF 22-1 Declaration. Furthermore, Mr. Allen did not have the opportunity to hire legal counsel and Defendant did not encourage him to hire an attorney.[3] See ECF 22-1 Declaration. Moreover, Mr. Allen believed the language of Section 6 of the agreement exempted his EEOC discrimination claims against the Defendant, a belief which was bolstered by the representations made by Mr. Noonan before he signed the agreement. See ECF 22-1 Declaration.   Specifically, Plaintiff states:

> "On March 21, 2022, prior to signing the severance agreement, I met with Senior Vice President of Development and Engagement, Scott Noonan in a meeting office with two other managers, in which Mr. Noonan explained the severance agreement and further stated that by signing the severance agreement, I would waive all claims against RELIAQUEST except those protected by law such as my racial discrimination claims which fell under EEOC Claims. **In plain language I was told by my employer "you can sue after you sign!",** now that I have sued they apparently are claiming I can't**.**

It is a fundamental proposition that a contract induced by fraud is voidable. *Lance Holding Co. v. Ashe*, 533 So.2d 929, 930 (Fla. 5th DCA 1988). Generally, the remedy for fraud in the

---

[2] Defendant repeatedly characterizes the severance package as "generous", Plaintiff would describe it as inadequate and insulting, and contained multiple obligations including "confidentiality, non-solicitation, & non-competition" and "non-disparagement", the assertion that it was generous in light of what was being given up, or that the entire agreement was for the single poorly worded and ambiguous release paragraph is disputed.

[3] Defendant repeatedly makes the argument that they encouraged review by counsel but appears to base that argument solely on waiver language as opposed to the actual circumstances in which they interpreted the agreement for Plaintiff and could be argued gave him the counsel themselves.

inducement is recission of the contract. *Lower Fees, Inc. v. Bankrate, Inc.*, 74 So.3d 517 (Fla. 4d DCA 2011).

Taking the facts most favorable to the Plaintiff, the totality of the circumstances suggest that Mr. Allen did not execute the severance agreement knowingly and voluntarily therefore the agreement can be avoided by Mr. Allen and the Motion should be denied.

**D. The Counterclaims have not been clearly established to justify granting the Motion.**

The Motion further seeks to have the Court enter judgment for Defendant on all three of its counterclaims. An examination of the counterclaims reveals that not all elements have been pled let alone proved especially since none of the Plaintiff's affirmative defenses have been controverted therefore this request appears to be entirely without merit.

As a matter of law both the unjust enrichment claim and the breach of contract claims cannot both prevail, as you cannot have unjust enrichment if you have a contract. Yet Defendant seeks a judgment on the pleadings on both contrary claims.

In order to state a claim for breach of contract, the Defendant must plead three things: (i) a valid contract; (ii) a material breach; and (iii) damages. *Friedman v. New York Life Ins. Co.*, 985 So.2d 56, 58 (Fla. 4d DCA 2008); *Baron v. Osman*, 39 So.3d 449, 450 (Fla. 5th DCA 2010).

As previously discussed above, there is an issue of material fact regarding the interpretation of Section 6 of the Agreement and the release regarding Plaintiff's right to sue Defendant but notwithstanding that issue, the counterclaim requests damages that are not calculatable and not permissible[4]. Specifically, paragraph 55 of the counterclaim seeks uncalculated damages for *"significant additional damages"* and appears to mix tort damages into the contract claim as it seeks *"damages to its reputation and good will"* (ECF 13 p. 38). Defendant further seeks attorney

---

[4] Plaintiff maintains that he did not breach the agreement, as the clause specifically excludes matters related to the EEOC, this suit is filed pursuant to an EEOC complaint and subsequent right to sue letter.

fees (ECF 13 p. 38) but the Agreement contains no such provision. This claim for legal fees is improper under the American rule in a claim for breach of the agreement or the good faith obligation of fair dealing. Moreover, the Agreement contains numerous acts of consideration on behalf of Plaintiff in exchange for the payment, not merely the disputed EEOC release language, it also contains confidentiality, non-solicitation, and non-completion provision that would need to be assessed a value further making the Motion improper.

The breach of the covenant of good faith and fair dealing should also be denied as it fails to allege essential elements of the claim.

To maintain an action for breach of the implied covenant of good faith and fair dealing, the the following must be alleged: (i) the plaintiff and the defendant are parties to a written contract; (ii) the contract is ambiguous about the permissibility or scope of the conduct in question; (iii) the defendant, through a conscious and deliberate act, fails or refuses to discharge contractual responsibilities, which unfairly frustrates the contract's purpose and disappoints the plaintiff's expectations; (iv) the defendant's breach deprives the plaintiff of the contract's benefits; and (v) the plaintiff suffers damages. *Meruelo v. Mark Andrew of Palm Beaches, Ltd*., 12 So.3d 247, 250-51 (Fla. 4d DCA 2009).

Nothing is alleged in the counterclaim that the Agreement is ambiguous about the conduct of the Plaintiff by filing this action. To the contrary, the counterclaim alleges that the Plaintiff's conduct is in breach of the contract. See ¶s 65 and 65 *"Counter-Defendant, in **breach of the express language . . .**"* (ECF 13 p. 38-42). The counterclaim further fails to allege how the Plaintiff refuses to discharge contractual responsibilities, how the defendant's breach deprives the plaintiff of the contract's benefits and therefore cannot prevail on this claim.

In regards to the unjust enrichment claim, it incorporated paragraphs 1 through 44 and 46 thorough 75. Paragraph 16 states in relevant part:

> 16. A true and accurate copy of the Severance Agreement that Counter-Defendant signed is attached to the Counterclaim as Exhibit A. In accordance with Rule 10 of the Federal Rules of Civil Procedure, ReliaQuest incorporates by reference the entire Severance Agreement as if pleaded herein in its entirety." (ECF 13 p. 29).

Paragraphs 63 and 64 of the counterclaim states[5]:

> *"63. After the Parties entered into the Severance Agreement, ReliaQuest performed all of its obligations under the Severance Agreement, including payment to Counter-Defendant of the Severance Payment.*
>
> *64. Counter-Defendant, in breach of the express language of Section 6 of the Severance Agreement, commenced this Action."* (ECF 13 p. 39).

An action for unjust enrichment fails upon a showing that an express contract exists. *Williams v. Bear Stearns & Co.*, 725 So.2d 397, 400 (Fla. 5d DCA 1998); *Kane v. Stewart Tilghman Fox & Bianchi, P.A.*, 85 So. 3d 1112, 1114 (Fla. Dist. Ct. App. 4d Dist. 2012); *Leader Global Solutions, LLC v. Tradeco Infraestructura, S.A. DE C.V.,* 155 F.Supp.3d 1310, 1320 (S.D. Fla. Jan 12, 2016).

Since the Defendant pled that an express contract exists and incorporated by reference those paragraphs into its unjust enrichment claim, the claim fails as a matter of law. Instead of granting the Motion's request, it seems more likely that this cause of action would be denied and stricken should Plaintiff file his own similar motion.

Notwithstanding any of the above arguments, the Motion is devoid of single mention of the Plaintiff's affirmative defenses. The Plaintiff pled seven affirmative defenses in his answer to the Defendant's counterclaims which are: (i) unclean hands; (ii) estoppel; (iii) waiver; (iv)

---

[5] There are further examples that can be cited but these examples appear more than enough to establish the Defendant made the allegation of the existence of an express contract in his unjust enrichment claim.

construction; (v) mutual mistake; (vi) fraud in the inducement; and (vii) Negligent Misrepresentation. (ECF 18 p. 8-11),

Once an affirmative defense is raised, the movant has the burden of either disproving it or establishing the legal insufficiency of the affirmative defense. *Haven Fed. Sav. & Loan Assoc. v. Kirian*, 579 So. 2d 730, 733 (Fla. 1991); *Florida Dep't of Agric. v. Go Bungee, Inc*., 678 So. 2d 920, 921 (Fla. 5th DCA 1996); *Delandro v. America's Mtg. Servicing, Inc.*, 674 So. 2d 184, 186 (Fla. 3d DCA 1996); See also *Leal v. Deutsche Bank Nat. Trust Co*., 21 So. 3d 907 (Fla. 3d DCA 2009) (reversing because the bank never addressed the borrowers' affirmative defenses in a mortgage foreclosure action).

Since none of the affirmative have been disproved or established as legally insufficient the Motion as to the counterclaims fails.

### E. Plaintiff should be given leave to amend the complaint

To the extent the Court is persuaded by the Plaintiff's Motion, Plaintiff respectfully requests leave to file an amended complaint. See *Fuller v. Johannessen*, 76 F.3d 347, 348 (11th Cir. 1996) (leave to amend granted following dismissal of claim in bankruptcy action); *San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos.*, 75 F.3d 801, 815 (2d Cir. 1996) (leave to amend complaint should be generously granted); *La Porte Constr. Co. v. Bayshore Nat'l Bank*, 805 F.2d 1254, 1256 (5th Cir. 1986) ("[g]enerally, when a court dismisses a complaint under Rule 12, the court should allow the plaintiff leave to amend his complaint to correct the defect"). Plaintiff's Answer to the counterclaims contains affirmative defenses among other things of fraud in the inducement, mutual mistake, negligent misrepresentation, that can be pled in alternative causes of action to clarify the Plaintiff's position in this action should the court find that pleading them in response to the counter-claims and affirmative defenses is insufficient procedurally. (See

ECF 18 Motion at p. 9-11). Furthermore, the Plaintiff avers the particularity required for fraud in the inducement in his Declaration which can be added to an amended complaint (ECF 22-1).

The Defendant would not be prejudiced by granting Plaintiff leave to amend as this action is barely over three months old and no discovery has been commenced.

## CONCLUSION

For the reasons set forth above, the Plaintiffs request that the Defendant's Motion be denied.

DATED this 24th day of July, 2023.  Respectfully submitted,

/s/ Ian Tygar
Ian Tygar, Esq.
Neil Bryan Tygar, P.A.
Attorney for Plaintiff
Bar No. 1031848
5341 W. Atlantic Ave, #303
Delray Beach, FL 33484
Telephone:   (561) 455-0280
Facsimile:   (561) 455-0281
Email:       ntygar@me.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 24th day of July, 2023, the foregoing document electronically filed and served upon all counsel of record via notice delivered by this Court's ECF System.

/s/ Ian Tygar
Ian Tygar, Esq.