# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

AARON ALLEN                  )
)
              Plaintiff     )    Case No. 8:23-cv-806
)
    vs.                   )
)
RELIAQUEST, LLC.       )
)
            Defendant   )
)
)
)
)

## AMENDED COMPLAINT

Plaintiff AARON ALLEN ("ALLEN" or Plaintiff) by and through his undersigned attorneys files this Amended Complaint against Defendant RELIAQUEST, LLC. ("RELIAQUEST" or Defendant) alleges and says as follows:

## JURISDICTION AND VENUE

1. Plaintiff brings this action against Defendant pursuant to Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 41 U.S.C. Section 2000e et seq., 42 U.S.C. Section 1981, and Plaintiff also joins an intertwined Florida statutory claim, the Florida Civil Rights Act of 1992 ("FCRA"), Florida Statutes Section 760.01, et. Seq., and 42 U.S.C. § 1981.

2. Jurisdiction is conferred upon this Court by 42 U.S.C. Sect. 2000e-5; 28 U.S.C. Sect. 1331; and 28 U.S.C. Sect. 1343.

3. The supplemental jurisdiction of this Court is invoked with respect to ALLEN's claims under the law of Florida pursuant to:

a. Title 20 U.S.C. Sect. 1376(a), because the Florida claim is so related to the federal claims with the Court's original jurisdiction that it forms part of the same case or controversy under Article III of the United States Constitution; and,

b. Title 28 U.S.C. Sect. 1343, because the claim arises out of the same operative facts as the federal claim, and is such that the parties would ordinarily expect to try them in one proceeding.

4. Venue is proper for the United States District Court for the Middle District of Florida because:

a. ALLEN was employed in the Middle District of Florida by Defendant which at all material times conducted, and continues to conduct, business in the Middle District of Florida;

b. The acts that gave rise to ALLEN's claims occurred within the Middle District of Florida pursuant to 42 U.S.C. Sect. 2000e-5(f)(3) and 42 U.S.C. Sect. 1391 "b" and "c"; and

c. The Defendant is subject to jurisdiction of the Middle District of Florida.

## CONDITIONS PRECEDENT

5. ALLEN has complied with all conditions precedent in this case, or they have been waived.

6. ALLEN timely filed a Charge of Discrimination against the Defendant with the United States Equal Employment Opportunity Commission ("EEOC").

7. A Notice of Right to Sue letter was issued on January 17, 2023, a copy of which is attached hereto as Exhibit "A".

8. Accordingly, this lawsuit is being filed within the 90 days' time in which to file.

## PARTIES

9. ALLEN is a permanent resident of the United States, who during all material times resided in the Middle District of Florida.

10. At all times material hereto, ALLEN, is a Native American and African-American male.

11. Defendant is a corporation organized and existing under the laws of Florida whose principal address is 1001 Water Street Suite 1900 TAMPA, FL 33602 and all times material, conducted a continuous business in the Southern District of Florida.

12. The Defendant is an "employer" within the meaning of the Title VII and the Florida Civil Rights Act.

13. The Defendant is engaged in an " industry affecting commerce" within the meaning of Title VII.

14. During all times material, ALLEN was an "employee" of Defendant as defined by Title VII and the Florida Civil Rights Act.

15. At some or all times material to this action, the Defendant and some of its representatives engaged in unlawful discriminatory practices against ALLEN, which were motivated at least in part by ALLEN being Native American and African-American.

## FACTUAL ALLEGATIONS

16. ALLEN began working for RELIAQUEST on November 1, 2021, as a Detection Architect as part of their Detection Operations Team working at 777 S Harbor Suite 500 Tampa, FL.

17. At all times material, ALLEN was qualified to perform his job with Defendant within the legitimate expectations of his employer.

18. ALLEN was an employee in good standing with the Defendant prior to termination.

19. On March 21, 2022, ALLEN was terminated.

20. The reason RELIAQUEST gave to ALLEN for his termination was "made mistakes" and "did not talk during a meeting with a customer who was threatening to leave."

21. RELIAQUEST employed less than five African-American workers in ALLEN'S Department but none had leadership roles.

22. Within the higher paying management orientated positions blacks are only represented at a "Token" level or not at all.

23. Higher positions are kept from Blacks, and blacks are limited in promotion.

24. A former African American Manager, Freddie Holyfield Jr., was let go despite other employees complimenting his work.

25. Within the Detections Operations Team ALLEN was subject to constant discriminatory and harassing treatment that pervades RELIAQUEST including

    a. Being referred to as their "WORK HORSE" at least twice by RELIAQUEST management in the Detection Operations Team.

b.  Being subject to a racially charged meme as a form of cultural insult for being black. When Allen responded to the racially charged meme with "racial stereotypes not a good look, RQ" a co-worker commented on his post with a laughing emoji.

c.  Being told by his direct supervisor, Ray Miller, informing him from day one that he would probably not be a manager within a year. Further, he discouraged ALLEN from applying for management roles despite having approximately five years of management experience.

d.  Being told that he could not participate in "UPSELL OPPORTUNITIES" that would lead to additional income despite other employees in similar situated roles being allowed to participate. Refused compensation for any of his referrals despite being promised on multiple occasions that submissions were worth $5,000.00 for each successful referral.

e.  Being denied access to training directly related to what they asked me to accomplish.

f.  Being denied opportunity to transfer to a different role, which was promised (by Casey Martin).

g.  Being falsely accused of not complying with a customer request to review detection rules with them.

26. Other similarly situated non- African-American and non-Native American employees of RELIAQUEST were treated differently than the Plaintiff when accused of similar wrong doings.

27. On March 21, 2022 ALLEN was terminated and presented with a Severance Agreement and told to sign it.

28. ALLEN did not participate in the creation of the Severance Agreement but did request one single minor change that RELIAQUEST remove the word covenant as it goes against his religious beliefs.

29. Section 6 of the Severance Agreement states in part:

> "This waiver and release specifically excludes matter that may not be released by law, including Employee's right to pursue certain claims and relief with the Equal Employment Opportunity Commission, the National Labor Relations Board, and the Security & Exchange Commission."

30. On March 21, 2022, prior to signing the severance agreement, ALLEN met with Senior Vice President of Development and Engagement, Scott Noonan in a meeting office with two other managers, in which Mr. Noonan explained the Severance Agreement and further stated that by signing the severance agreement, ALLEN would waive all claims against RELIAQUEST except those protected by law such as racial discrimination claims which fell under EEOC Claims.

31. Specifically, on March 21, 2022 in the meeting, Mr. Noonan told ALLEN that: *"this does not apply to any federal claims such as with the EEOC or other federal labor rights."*

32. On March 21, 2022, Scott Noonan further represented to ALLEN that he would have seven days to sign the Severance Agreement.

33. ALLEN contacted several lawyers but was unable to schedule a consultation within a weeks' time let alone have a lawyer review the Severance Agreement therefore he was unable to hire legal counsel.

34. On April 4, 2022, ALLEN relied on the statements made by Mr. Noonan regarding the Severance Agreement, specifically that his EEOC claims were excluded from the Section 6 general release and that he could sue after he signed and executed the Severance Agreement.

35. ALLEN filed a claim against RELIAQUEST for its discriminatory conduct with the EEOC.

36. The EEOC gave ALLEN a right to sue letter and he initiated this action.

## COUNT I
## TITLE VII CLAIM FOR DISCRIMINATION

37. Plaintiff re-alleges paragraphs 1 through 36 as if fully set forth herein.

38. The Defendant has engaged in unlawful employment practices and policies in the terms and conditions of Plaintiff's employment in violation of 42 U.S.C. Section 2600e et. Seq. the discriminatory practices include, but are not limited to:

    a. Treating African-American employees differently from non-African-American employees in the terms and conditions of employment, including promoting, work environment, and firing; and

    b. Terminating Plaintiff's employment.

39. The effect of the practices complained of above has been to deprive Plaintiff equal employment opportunities and otherwise adversely affect his status as an employee because of his race. Specifically, Plaintiff was subject to continually harassment, was withheld opportunities to advance and was subject to disparaging treatment in the enforcement of conflicting policies that lead to his ultimate termination.

40. A direct and proximate result of the intentional and premeditated discriminatory acts by the Defendant with respect to this discrimination in the terms and conditions of ALLEN'S employment, Plaintiff has been damaged which includes but is not limited to back pay, front pay, loss of benefits, future pecuniary loss, inconvenience, emotional pain, suffering, mental anguish, loss of enjoyment of life, other non-pecuniary losses, and punitive damages.

WHEREFORE, the Plaintiff requests:

(a) Entry of a judgment for restitution, compensatory and punitive damages including, but not limited to, damages for mental pain and suffering, anguish, injury of reputation and loss of capacity to enjoy life, back pay, front pay and interest;

(b) Award Plaintiff costs in this action, including reasonable attorneys' fees and expert fees as provided by Title VII; and

(c) Any other equitable relief deemed appropriate by this Court.

## COUNT II
## FLORIDA CIVIL RIGHTS ACT CLAIM FOR DISCRIMINATION

41. Plaintiff re-alleges paragraphs 1 through 36 as if fully set forth herein.

42. The Defendant has engaged in unlawful employment practices and policies in the terms and conditions of Plaintiff's employment in violation of The Florida Civil Rights Act. Florida Status Section 760.01, et. Seq. The discriminatory practices include, but are not limited to:

    a. Treating African-American employees differently from non-African-American employees; and

    b. Terminating Plaintiff's employment.

43. The effect of the practices complained of above has been to deprive Plaintiff equal employment opportunities and other wise adversely affect his status as an employee because of his race.

44. A direct and proximate result of the intentional and premeditated discriminatory acts by the Defendant with respect to this discrimination in the terms and conditions of ALLEN's employment, Plaintiff has been damaged which includes but is not limited to back pay, front pay, loss of benefits, future pecuniary loss, inconvenience, emotional pain, suffering, mental anguish, loss of enjoyment of life, other non-pecuniary losses, and punitive damages, all of which injuries and losses are continuing and permanent in nature.

WHEREFORE, Plaintiff requests:

(a) Entry of a judgment for restitution, compensatory and punitive damages including, but not limited to, damages for mental pain and suffering, anguish, injury of reputation and loss of capacity to enjoy life, back pay, front pay and interest;

(b) Award Plaintiff costs in this action, including reasonable attorneys' fees and expert fees as provided by Title VII; and

(c) Any other equitable relief deemed appropriate by this Court.

## COUNT III
## RACE DISCRIMINATION (TITLE VII)

45. Plaintiff re-alleges paragraphs 1 through 36 as if fully set forth herein.

46. The Defendant discriminated against ALLEN on the basis of his race, black and Native American, by subjecting the Plaintiff to different terms and conditions of employment and terminating his employment for pretexual reasons.

47. The actions of the Defendant constitute an intentional violation of Title VII, and as a direct, natural, foreseeable and proximate result of the actions and inactions of Defendant, ALLEN has suffered injuries and losses including a violation of his statutory rights, mental pain and suffering and extreme emotional stress; loss of ability to lead a normal life; lost wages and benefits and other economic losses, all of which injuries and losses are continuing and permanent in nature.

48. The Plaintiff has retained the services of the undersigned attorneys to represent him in this action and is obligated to pay them a reasonable fee for their services.

WHEREFORE, the Plaintiff requests:

(a) Entry of a judgment for restitution, compensatory and punitive damages including, but not limited to, damages for mental pain and suffering, anguish, injury of reputation and loss of capacity to enjoy life, back pay, front pay and interest;

(b) Award Plaintiff costs in this action, including reasonable attorneys' fees and expert fees as provided by Title VII; and

(c) Any other equitable relief deemed appropriate by this Court.

**COUNT IV**
**RACE DISCRIMINATION (SECTION 1981)**

49. Plaintiff re-alleges paragraphs 1 through 36 as if fully set forth herein.

50. The Defendant discriminated against ALLEN on account of his race, black and Native American, by subjecting the Plaintiff to different terms and conditions of employment and terminating his employment for pretexual reasons.

51. 42 USC Section 1981 states in relevant part as follows:

(a) Statement of equal rights

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

(b) "Make and enforce contracts" defined:
For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. 42 U.S.C.A. §1981

52. 42 U.S.C. Section 1981 forbids discrimination in the making and enforcing of contracts based on race.

53. The treatment that the Plaintiff has suffered at the hands of the Defendant was racially motivated and has breached or interfered with the Plaintiff's rights under Section 1981.

54. Plaintiff is a member of African and Native origin and was discriminated against because of his race as provided under 42 U.S.C. Section 1981 and has suffered damages as set forth herein.

55. The Plaintiff's race was at least a motivating factor in the decision to terminate his employment with RELIAQUEST.

56. The Plaintiff's race was at least a motivating factor in not allowing him opportunities to advance further within the company.

57. The Defendant's conduct complained of herein was willful and in disregard of Plaintiff's protected rights. The Defendant and its supervisory personnel were aware that discrimination on the basis of race was unlawful but acted in reckless disregard of the law.

58. The Defendant through the actions of its agents outrageously disregarded the requirements to investigate and remedy the claims of discrimination.

59. The actions of the Defendant constitute a violation of Section 1981, and as a direct, natural, foreseeable and proximate result of the actions and inactions of the Defendant, the Plaintiff has suffered injuries and losses including a violation of his statutory rights, mental pain and suffering and extreme emotional stress; loss of ability to lead a normal life; lost wages and benefits and other economic losses, all of which injuries and losses are continuing and permanent in nature.

60. The Plaintiff has retained the services of the undersigned attorneys to represent him in this action and is obligated to pay them a reasonable fee for their services.

WHEREFORE, The Plaintiff requests:

(a) Entry of a judgment for restitution, compensatory and punitive damages including, but not limited to, damages for mental pain and suffering, anguish, injury of reputation and loss of capacity to enjoy life, back pay, front pay and interest;

(b) Award Plaintiff costs in this action, including reasonable attorneys' fees and expert fees as provided by Title VII; and

(c) Any other equitable relief deemed appropriate by this Court.

## COUNT V
## RACE DISCRIMINATION (FLORIDA CIVIL RIGHTS ACT)

61. Plaintiff re-alleges paragraphs 1 through 36 as if fully set forth herein.

62. The Defendant discriminated against Plaintiff on the basis of his race, black and Native, by subjecting the Plaintiff to different terms and conditions of employment and terminating his employment for pretextual reasons.

63. The actions of the Defendant constitute an intentional violation of the FCRA, and as a direct, natural, foreseeable and proximate result of the actions and inactions of Defendant, the Plaintiff has suffered injuries and losses including a violation of his statutory rights, mental pain and suffering and extreme emotional stress; loss of ability to lead a normal life; lost wages and benefits and other economic losses, all of which injuries and losses are continuing and permanent in nature.

64. The Plaintiff has retained the services of the undersigned attorneys to represent him in this action and is obligated to pay them a reasonable fee for their services.

WHEREFORE, the Plaintiff requests:

(d) Entry of a judgment for restitution, compensatory and punitive damages including, but not limited to, damages for mental pain and suffering, anguish, injury of reputation and loss of capacity to enjoy life, back pay, front pay and interest;

(e) Award Plaintiff costs in this action, including reasonable attorneys' fees and expert fees as provided by Title VII; and

(f) Any other equitable relief deemed appropriate by this Court.

## COUNT VI
## RETALIATION UNDER TITLE VII
### 42 U.S.C. § 2000e–3

65. Plaintiff re-alleges paragraphs 1 through 36 as if fully set forth herein.

66. The Plaintiff participated in a protected activity by making known his concerns regarding a racially charged meme during a Microsoft Teams Meeting in March of 2022.

67. After making his concerns known regarding a racially charged meme in writing, the Plaintiff experienced further concentrated acts of discrimination against himself.

68. Instead of investigating the reported alleged wrongdoing, the employer defendant terminated the Plaintiff instead.

69. As a result of the above actions, the defendant employer violated U.S.C. § 2000e–3 and Plaintiff has suffered damages therefrom.

70. As a direct, natural, foreseeable and proximate result of the actions and inactions of Defendant, Plaintiff has suffered injuries and losses including a violation of his statutory rights, mental pain and suffering and extreme emotional stress; loss of ability to lead a normal life; lost wages and benefits and other economic losses, all of which injuries and losses are continuing and permanent in nature.

71.     Plaintiff has retained the services of the undersigned attorneys to represent him in this action and is obligated to pay them a reasonable fee for their services.

WHEREFORE, the Plaintiff requests:

(g) Entry of a judgment for restitution, compensatory and punitive damages including, but not limited to, damages for mental pain and suffering, anguish, injury of reputation and loss of capacity to enjoy life, back pay, front pay and interest;

(h) Award Plaintiff costs in this action, including reasonable attorneys' fees and expert fees as provided by Title VII; and

(i) Any other equitable relief deemed appropriate by this Court.

### COUNT VII
**VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**
**Disparate Treatment/Failure to Accommodate on the Basis of Religion**
**(42 U.S.C. § 2000e,** *et seq.***)**

72. Plaintiff re-alleges paragraphs 1 through 36 as if fully set forth herein.

73. Title VII forbids an employer from refusing a job to someone because of her/his need for a religious accommodation, absent proof that granting the accommodation would cause it undue hardship. 42 U.S.C. §§ 2000e(j), 2000e-2(a)(1); *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 774 (2015).

74. This extension of actionable religious discrimination to include a failure to accommodate derives from Title VII's definition of "religion" to include "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j).

75. A plaintiff can therefore make out a prima facie case under Title VII by showing (1) she/he held a bona fide religious belief, the practice of which conflicted with an employment duty; (2) the employer took adverse action—including the refusal to hire—because of the plaintiff's inability to fulfill the job requirement; and (3) the plaintiff's religious practice was a motivating factor in the employer's decision.

76. Plaintiff is a devote Messianite.

77. Plaintiff participates actively in his religion going to Church at-least once a week and holding the Sabbath.

78. Plaintiff submitted a leave request a year in advance to abide by religious holiday.

79. Defendant took adverse action against the Plaintiff by scheduling an impromptu group mandatory training session in which Plaintiff had to miss.

80. Plaintiff's religious practice was the motivating factor in Defendant's decision to schedule the mandatory training session.

81. Plaintiff has retained the services of the undersigned attorneys to represent him in this action and is obligated to pay them a reasonable fee for their services.

WHEREFORE, the Plaintiff requests:

(j) Entry of a judgment for restitution, compensatory and punitive damages including, but not limited to, damages for mental pain and suffering, anguish, injury of reputation and loss of capacity to enjoy life, back pay, front pay and interest;

(k) Award Plaintiff costs in this action, including reasonable attorneys' fees and expert fees as provided by Title VII; and

(l) Any other equitable relief deemed appropriate by this Court.

## COUNT VIII
## FRAUD IN THE INDUCEMENT

82. Plaintiff re-alleges paragraphs 1 through 36 as if fully set forth herein.

83. Florida courts have recognized that a fraud in the inducement claim may be brought where the party makes an oral promise contingent on certain circumstances and the promisor has no intention to act on that promise. See *W.R. Townsend Contracting, Inc. v. Jensen Civil Constr., Inc*., 728 So. 2d 297, 304-05 (Fla. 1d DCA 1999)

84. To state a cause of action for fraud in the inducement, a complaint must allege: (i) a false statement of material fact; (ii) the maker of the false statement knew or should have known of the falsity of the statement; (iii) the maker intended that the false statement induce another's reliance; and (iv) the other party justifiably relied on the false statement to its detriment. *Sena v. Pereira*, 179 So.3d 433, 436 (Fla. 4d DCA 2015).

85. On March 21, 2022, Senior Vice President of Development and Engagement, Scott Noonan in a meeting office made a false statement of material fact to ALLEN that "*this does not apply to any federal claims such as with the EEOC or other federal labor rights"* in response to ALLEN questioning his right to file discrimination claims against the Defendant after signing the Severance Agreement.

86. When Mr. Noonan made the statement, he did so within the scope of his employment with the Defendant.

87. Mr. Noonan knew or should have known that his statement was false when made.

88. Mr. Noonan made the statement to induce ALLEN to rely upon it and execute the Severance Agreement.

89. ALLEN justifiably relied on the false statement to his detriment.

90. ALLEN has sustained damages as a result of the conduct of the Defendant.

91. It is a fundamental proposition that a contract induced by fraud is voidable. *Lance Holding Co. v. Ashe*, 533 So.2d 929, 930 (Fla. 5d DCA 1988).

92. Generally, the remedy for fraud in the inducement is recission of the contract. *Lower Fees, Inc. v. Bankrate, Inc*., 74 So.3d 517 (Fla. 4d DCA 2011).

WHEREFORE, Plaintiff respectfully requests this Honorable Court to find in favor of Plaintiff and rescind the Severance Agreement together with any further relief this Court deems just and proper.

## COUNT IX
## NEGLIGENT MISREPRESENTATION

93. Plaintiff re-alleges paragraphs 1 through 36 as if fully set forth herein.

94. On March 21, 2022, Senior Vice President of Development and Engagement, Scott Noonan in a meeting office made a misrepresentation of material fact to ALLEN that

"*this does not apply to any federal claims such as with the EEOC or other federal labor rights*" in response to ALLEN questioning his right to file discrimination claims against the Defendant after signing the Severance Agreement.

95. When Mr. Noonan made the statement, he did so within the scope of his employment with the Defendant.

96. Mr. Noonan either knew of the misrepresentation, made the misrepresentation without knowledge of its truth or falsity, or should have known the representation was false.

97. Mr. Noonan made the statement to induce ALLEN to rely upon it and execute the Severance Agreement.

98. ALLEN justifiably relied on the false statement to his detriment.

99. ALLEN has sustained damages as a result of the conduct of the Defendant.

WHEREFORE, Plaintiff respectfully requests this Honorable Court to find in favor of Plaintiff and rescind the Severance Agreement together with any further relief this Court deems just and proper.

## COUNT X
## RECISSION OF SEVERANCE AGREEMENT (MUTUAL MISTAKE)

100. Plaintiff re-alleges paragraphs 1 through 36 as if fully set forth herein.

101. The Plaintiff and Defendant are parties to the Severance Agreement.

102. The Severance Agreement was created with little to no input from ALLEN.

103. On March 21, 2022, Senior Vice President of Development and Engagement, Scott Noonan in a meeting office made statement of material fact to ALLEN that "*this does not apply to any federal claims such as with the EEOC or other federal labor rights.*" in response to ALLEN questioning his right to file discrimination claims against the Defendant after signing the Severance Agreement.

104. ALLEN and Noonan made a mutual mistake in concluding that the language in Paragraph 6 of the Severance Agreement excluded ALLEN'S discrimination claims so that ALLEN could file a discrimination claim against RELIAQUEST with the EEOC.

105. The mutual mistake is not the result of an excusable lack of care.

106. ALLEN has offered to restore the benefits he received under the Severance Agreement to Defendant and continues to offer such a restoration.

107. ALLEN was given a week to execute the Severance Agreement and did not have the opportunity to consult an attorney to verify the language in the Severance Agreement but did make multiple attempts to do so.

108. Moreover, neither party has not so relied on the payment in the Severance Agreement that it would be inequitable to require repayment.

109. ALLEN has no adequate remedy at law.

110. It would be inequitable to deny ALLEN's request to rescind the Severance Agreement because of ALLEN's mistake.

111. Defendant's position has not changed so that granting the relief would be unjust.

112. In granting rescission, the court should attempt to restore the parties to the status quo. Where restoration to the status quo is impossible, however, a court may still grant rescission, provided the equities between the parties can be balanced. *Braman Dodge, Inc. v. Smith*, 515 So.2d 1053, 1054 (Fla. 3d DCA 1987); *Bass v. Farish*, 616 So.2d 1146, 1147 (Fla. 4d DCA 1993) (noting an exception to the general rule when the inability of one party to restore to the status quo is caused by the fraud of the other party).

WHEREFORE, Plaintiff respectfully requests this Honorable Court to find in favor of Plaintiff and rescind the Severance Agreement together with any further relief this Court deems just and proper.

## COUNT XI
## RECISSION OF SEVERANCE AGREEMENT (UNILATERAL MISTAKE)

113. Plaintiff re-alleges paragraphs 1 through 36 as if fully set forth herein

114. The Florida Supreme Court has held that rescission of a contract may be permitted in Florida based on unilateral mistake when the mistake is not the result of an inexcusable lack of due care, and where the other party to the contract has not so far relied upon the payment that it would be inequitable to require repayment. *Maryland Cas. Co. v. Krasnek*, 174 So. 2d 541 (Fla. 1965); *BMW of N. Am., Inc. v. Krathen*, 471 So. 2d 585, 588 (Fla. 4d DCA 1985) See also *Rachid v. Perez*, 26 So.3d 70, 71 (Fla. 3d DCA 2010) ("Under Florida law, the party seeking rescission based on unilateral mistake must establish that: (1) the mistake was induced by the party seeking to benefit from the mistake; (2) there is no negligence or want of due care on the part of the party seeking a return to the status quo; (3) denial of release from the agreement would be inequitable; and (4) the position of the opposing party has not so changed that granting the relief would be unjust."); *Joseph Buckeck Construction Corp. v. Music*, 420 So.2d 410, 414 (Fla. 1d DCA 1982). Florida law permits a party to rescind a contract based on unilateral mistake unless the mistake results from an inexcusable lack of due care or unless the other party has so detrimentally relied on the contract that it would be inequitable to order rescission. *Florida Insurance Guaranty Assoc., Inc. v. Love*, 732 So.2d 456, 457 (Fla. 2d DCA 1999).

115. The Plaintiff and Defendant are parties to the Severance Agreement.

116. The Severance Agreement was created with little to no input from ALLEN.

117. On March 21, 2022, Senior Vice President of Development and Engagement, Scott Noonan in a meeting office made statement of material fact to ALLEN that "*this does not apply to any federal claims such as with the EEOC or other federal labor rights*" in response to ALLEN questioning his right to file discrimination claims against the Defendant after signing the Severance Agreement.

118. ALLEN made a unilateral mistake in concluding that Mr. Noonan's words meant that the language in Paragraph 6 of the Severance Agreement meant that it did not include his discrimination claims so that he could file a discrimination claim against RELIAQUEST with the EEOC.

119. ALLEN's mistake was induced by Mr. Noonan seeking to benefit from ALLEN's mistaken belief.

120. ALLEN has not committed any negligent act which would preclude him from rescinding the Severance Agreement.

121. ALLEN has offered to restore the benefits he received under the Severance Agreement to Defendant and continues to offer such a restoration.

122. ALLEN mistake is not the result of an excusable lack of care.

123. ALLEN was given a week to execute the Severance Agreement and did not have the opportunity to consult an attorney to verify the language in the Severance Agreement but did make multiple attempts to do so.

124. Moreover, neither party has not so relied on the payment in the Severance Agreement that it would be inequitable to require repayment.

125. ALLEN has no adequate remedy at law.

126. It would be inequitable to deny ALLEN's request to rescind the Severance Agreement because of ALLEN's mistake.

127. Defendant's position has not changed so that granting the relief would be unjust.

WHEREFORE, Plaintiff respectfully requests this Honorable Court to find in favor of Plaintiff and rescind the Severance Agreement together with any further relief this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated this 9 day of February, 2024.

Respectfully submitted,

/s/ Ian Tygar

Ian Tygar, Esq.
FBN: 1031848
Neil Bryan Tygar, P.A.

## VERIFICATION

Under penalty of perjury, I declare that I have read the Amended Complaint and all the facts alleged therein are true and correct to the best of my knowledge and belief.

Executed on this ___9 + h___ day of February, 2024.

Aaron A. Allen

AARON ALLEN

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 9th  day of February, 2024, the foregoing document electronically filed and served upon all counsel of record via notice delivered by this Court's ECF System.

/s/ Ian Tygar

Ian Tygar, Esq.
FBN: 1031848
Neil Bryan Tygar, P.A.
Counsel for Plaintiff
5341 W. Atlantic Ave. #303
Delray Beach, FL 33130
Tel:     561-455-0280 Ext. 11
Fax:     561-455-0281
Cell:    561-305-6510
itygar@me.com