## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

AARON ALLEN,

     Plaintiff,

v.                               Case No.: 23-cv-00806-KKM-MEP

 RELIAQUEST, LLC.

     Defendant.

_____/

## DEFENDANT, RELIAQUEST, LLC'S MOTION TO
## DISMISS AMENDED COMPLAINT (Dkt. No. 32)

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant, ReliaQuest, LLC ("Defendant"), respectfully moves this Court to dismiss Plaintiff, Aaron Allen's ("Plaintiff") Amended Complaint (Dkt. No. 32) (the "Amended Complaint"), with prejudice, because the Amended Complaint fails to state any claim upon which relief can be granted against Defendant based on the terms of the severance and release agreement Plaintiff signed at issue and otherwise. In support thereof, Defendant states:

## INTRODUCTION

Plaintiff's Amended Complaint does not state a claim for which relief can be granted, as Plaintiff knowingly and voluntarily released all claims against Defendant, as evidenced by the severance and release agreement he signed (the

"Severance Agreement"), a true and accurate copy of which is attached as **Exhibit A**, which states in bold, capitalized font: "**YOU ARE GIVING UP ALL RIGHTS YOU MAY HAVE TO RECOVER DAMAGES FROM THE COMPANY.**" [1] Severance Agreement at 3. Plaintiff's allegations of reliance on purportedly contradictory oral representations from his employer, made 14 days prior to his signing, are belied by the explicit terms of the Severance Agreement set forth above, which are presented in bold, capitalized font and clearly state that Plaintiff was giving up his rights to recover monetary damages. Plaintiff's self-serving and dubious claim of an inability to engage counsel within the two-week period is, even if true, immaterial, and indeed establishes his awareness that he should not rely on the purported oral representations of his employer in the face of the clear language of the written agreement. This all too familiar story of seeking to avoid a contractual release of claims after-the-fact has been considered and roundly rejected by Florida

---

[1] The Severance Agreement in its entirety is incorporated by reference in the Amended Complaint. *See Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) (noting a document "need not be physically attached to a pleading to be incorporated by reference into it" if it is central to the plaintiff's claims and undisputed); *see also Harris v. Ivax Corp.*, 182 F.3d 799, 802 (11th Cir.1999) ("[A] document central to the complaint that the defense appends to its motion to dismiss is also properly considered, provided that its contents are not in dispute.") Here, Plaintiff cited and quoted from the Severance Agreement. Amended Complaint (Dkt. No. 32) ¶ 29. Moreover, the Severance Agreement is central to Plaintiff's complaint. Plaintiff does not, and cannot, dispute the contents of the Severance Agreement. Amended Complaint (Dkt. No. 32) ¶¶ 28–34. Thus, the Severance Agreement is incorporated by reference and the Court may consider it in its entirety when ruling on the current motion. *See Day*, 400 F.3d at 1276. (affirming dismissal of complaint upon consideration, in part, of agreement incorporated by reference).

courts and the Eleventh Circuit.[2] *See Middleton v. Int'l Bus. Machines Corp.*, 787 F. App'x 619, 622-23 (11th Cir. 2019) (finding plaintiff's reliance on contradictory verbal statements from management unreasonable when "viewed in the context of a written agreement" stating otherwise).

Defendant seeks dismissal of all counts in the Amended Complaint. Counts I through VII, alleging discrimination and retaliation, are barred by the Severance Agreement's release of claims. Counts VIII and IX, alleging fraud in the inducement and negligent misrepresentation, fail for lack of justifiable reliance. Counts X and XI, seeking rescission based on mutual and unilateral mistake, fail because Plaintiff assumed the risk of mistake and did not exercise due diligence, nor did he plead that ReliaQuest knew of any alleged misunderstanding.

## **BACKGROUND**

In the Amended Complaint, Plaintiff alleges that on the day of his termination, March 21, 2022, he received a draft of the Severance Agreement. Amended Complaint (Dkt. No. 32) ¶ 27. On the same day, Plaintiff met with Scott Noonan, another ReliaQuest employee, who explained the Severance Agreement and stated that by signing it, Plaintiff "would waive all claims against RELIAQUEST except

---

[2] If the Court were to find Plaintiff's allegations sufficient to survive this Motion to Dismiss, it would set a precedent that undermines the finality and reliability of severance agreements. Such a decision would signal a slippery slope, opening the floodgates for parties to circumvent clear and unambiguous contractual terms, rendering severance agreements effectively meaningless.

those protected by law, such as racial discrimination claims which fell under EEOC Claims." *Id.* ¶ 30. Notably, Plaintiff acknowledges that he read and sought to amend the Severance Agreement, specifically requesting a change to the word "covenant," which demonstrates his understanding and engagement with the terms of the Severance Agreement. *Id*. ¶ 28. Furthermore, Plaintiff's own allegations confirm that he sought legal counsel, further evidencing his awareness and comprehension of the Severance Agreement's significance. *Id*. ¶ 33. Fourteen days after it was presented to him, on April 4, 2022, Plaintiff signed and executed the Severance Agreement. *Id*. ¶ 34.

In relevant part, the Severance Agreement states as follows:

- "In exchange for the consideration referred to in this Agreement, Employee hereby releases and forever discharges ReliaQuest from any and all claims, actions, demands, and causes of action in law or in equity which Employee may have had, or may now have against ReliaQuest, including but not limited to any and all claims which are based on or in any way related to his or her employment with ReliaQuest or the termination of that employment. This waiver and release specifically excludes matter that may not be released by law, including Employee's right to pursue certain claims and relief with the Equal Employment Opportunity Commission, the National Labor Relations Board, and the Security & Exchange Commission."

- "**[EMPLOYEE] UNDERSTAND[S HE IS] GIVING UP ALL RIGHTS [HE] MAY HAVE TO RECOVER DAMAGES FROM THE COMPANY OR REINSTATEMENT BASED ON ANYTHING THAT HAPPENED BEFORE [HE] SIGNED THIS AGREEMENT.**"

- "Employee expressly acknowledges that Employee has relied on, or had the opportunity to rely upon, advice of counsel of Employee's choosing or has been given an opportunity to review it with counsel and have chosen not to do so."

- "Employee further declares and acknowledges that no representations made by any agent or attorney of ReliaQuest, if any, concerning any legal advice or other information related to this Agreement . . ."

Plaintiff alleges that he "contacted several lawyers" but claims he "was unable to schedule a consultation within a weeks' time . . . ." Amended Complaint (Dkt. No. 32) ¶ 33. Plaintiff pleads that he signed the Severance Agreement fourteen days after receiving a copy (*i.e.*, two weeks after his alleged discussion with Noonan). *Id.* ¶ 30.

Plaintiff alleges he subsequently filed a charge of discrimination with the Equal Employment Opportunity Commission (the "EEOC"). *Id.* ¶ 6. Plaintiff alleges the EEOC provided him with a right to sue letter.[3] *Id.* ¶ 7.

In July of 2023, Defendant ReliaQuest, LLC moved for judgment on the pleadings. Motion for Judgement on the Pleadings ("Dkt. No. 24"). The Court denied that order without prejudice, finding "judgment remains premature based on the pleadings," and stated that "Allen should be granted leave to amend his complaint before assessing the severance agreement." Order Denying Defendant's Motion for Judgment on the Pleading Without Prejudice ("Dkt. No. 31") at 2. Given that

---

[3] The right to sue letter does not confer any rights on Plaintiff and does not override the Severance Agreement and the release therein. Right to sue letters "**inform** the person claiming to be aggrieved . . . of the right to sue in Federal district court . . . ," 29 CFR § 1601.19 (emphasis added), but they do no not confer any rights. *See* Brunson-Bedi v. New York, No. 15 Civ. 9790 (NSR), 2018 WL 2084171, at *7 n.9 (([T]he right-to-sue letter itself confers no rights, but merely advises Plaintiff of a right it already has."). Plaintiff has already released his right to pursue claims against ReliaQuest related to his employment and termination. The issuance of a right to sue letter does not change this fact.

Plaintiff has been given time to amend his complaint, it is now appropriate for the Court to evaluate the Severance Agreement in the context of the Defendant's motion to dismiss.

## **LEGAL STANDARD**

Courts considering motions to dismiss:

> must accept all factual allegations in the complaint as true and view them in a light most favorable to the plaintiff. This preferential standard of review, however, does not permit all pleadings adorned with facts to survive to the next stage of litigation. The Supreme Court has been clear on this point – a district court should dismiss a claim where a party fails to plead facts that make the claim facially plausible. A claim is facially plausible when the court can draw a reasonable inference, based on the facts pled, that the opposing party is liable for the alleged misconduct. This plausibility standard requires more than a sheer possibility that a defendant has acted unlawfully.

*Karaba v. DSI Sec. Servs.*, 2017 WL 6349796, at *2 (M.D. Fla. Aug. 7, 2017) (citing *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Although an employment discrimination plaintiff need not establish a full *prima facie* case at the motion to dismiss stage, he or she must at least state the statutory elements necessary to recover, *Andrews v. City of Hartford*, 700 Fed. Appx. 924, 926 (11th Cir. 2017), and "provide enough factual matter (taken as true) to suggest intentional discrimination," *Karaba*, 2017 WL 6349796, at *3 (citing *Castillo v. Allegro Resort Mktg.*, 603 Fed.Appx. 913, 916 (11th Cir. 2015)).

## ARGUMENT

### I.   Plaintiff Released All Employment-Related Claims Against ReliaQuest

Plaintiff released ReliaQuest from all claims related to his employment or termination—Counts I through VII—when he voluntarily and knowingly executed the Severance Agreement. Again, the Severance Agreement explicitly states that the release extends to "any and all claims, actions, demands, and causes of action in law or in equity which Employee may have had, or may now have against ReliaQuest, including but not limited to any and all claims which are based on or in any way related to his or her employment with ReliaQuest or the termination of that employment." Severance Agreement, Section 6. The Severance Agreement clearly states that Plaintiff is "**GIVING UP ALL RIGHTS YOU MAY HAVE TO RECOVER DAMAGES FROM THE COMPANY.**" *Id* at 3. Counts I through VII in Plaintiff's Amended Complaint allege various forms of discrimination and retaliation, and seek monetary damages. These counts are "based on . . . [Plaintiff's] employment with ReliaQuest or the termination of that employment," and it is precisely these claims for monetary damages that Plaintiff released. Severance Agreement, Section 6.

### A. Plaintiff Voluntarily and Knowingly Agreed to the Severance Agreement

The facts as pled demonstrate that Plaintiff's agreement to the Severance Agreement was "voluntary and knowing," rendering it legally enforceable and

effectively releasing Title VII and related claims (Counts I through VII). *Myricks v. Fed. Rsrv. Bank of Atlanta*, 480 F.3d 1036, 1040 (11th Cir. 2007) (quoting *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 52 (1974)).

In determining whether a release was voluntary and knowing, Florida courts look to "(1) the plaintiff's education and business experience; (2) the amount of time the plaintiff considered the agreement before signing it; (3) the clarity of the agreement; (4) the plaintiff's opportunity to consult with an attorney; (5) the employer's encouragement or discouragement of consultation with an attorney; and (6) the consideration given in exchange for the waiver when compared with the benefits to which the employee was already entitled." *Puentes v. United Parcel Serv., Inc.*, 86 F.3d 196, 198 (11t h Cir. 1996); *see Gonzalez v. Fla. Dep't of Highway Safety & Motor Vehicles*, 237 F. Supp. 2d 1338, 1359 (S.D. Fla. 2022) (applying the six factors from *Puentes* in a Title VII case); *see also Jones v. A&T Umbrella Benefit Plan No. 1*, 315-cv-821-J-34RK, 2018 WL 748870, at *6–7 (M.D. Fla. Jan. 10, 2018) (applying the six factors from *Puentes* in an ERISA case).

Each of these elements is satisfied by the facts pled in the Amended Complaint. Plaintiff's request to amend the document upon termination, Amended Complaint ¶ 28, and his efforts to seek legal counsel, *id*. ¶ 33, both signal his understanding and deliberate engagement with the Severance Agreement's terms.

Therefore, the voluntary nature of his acceptance is not contradicted by any allegations in the Amended Complaint.

    1.  <u>Plaintiff is Highly Educated and Has Significant Business Experience</u>

The first factor is satisfied. Plaintiff held a technical position at a state of the art cyber security company, Amended Complaint (Dkt. No. 32) ¶ 16, and alleges that he has approximate five years of management experience, *id.* ¶ 16(c). *See Taylor v. Camillus House, Inc.*, 149 F. Supp. 2d. 1337, 1380 (S.D. Fla. 2001) (finding the first factor satisfied when plaintiff had a college education and seven years of work experience).

    2.  <u>Plaintiff Had Ample Time to Consider the Severance Agreement</u>

Plaintiff had sufficient time to consider the Severance Agreement. Florida courts have found that "fourteen days to consider [a] release is sufficient to conclude [the] release was knowing and voluntary." *Bacon v. Stiefel Labs., Inc*., No. 09-21871-CV-KING, 2011 WL 4944122, at *5 (S.D. Fla. Oct. 17, 2011) (citing *Puentes*, 86 F.3d at 199); *see also Jones*, 315-cv-821-J-34RK, 2018 WL 748870, at *6–7). Plaintiff admitted to signing the Severance Agreement two weeks after initial receipt.  Amended Complaint (Dkt. No. 32) ¶¶ 27, 34. Thus, this factor is satisfied.

    3.  <u>The Severance Agreement is Clear that Plaintiff Released All Claims Related to His Employment and All Rights to Damages from ReliaQuest</u>

The clarity of the Severance Agreement is assessed under the third factor. The Severance Agreement unequivocally releases all claims related to Plaintiff's employment and termination. Severance Agreement, Section 6. The signature page further emphasizes, in bold and capitalized text, that Plaintiff is forfeiting all rights to recover damages from ReliaQuest: "**YOU UNDERSTAND YOU ARE GIVING UP ALL RIGHTS YOU MAY HAVE TO RECOVER DAMAGES FROM THE COMPANY**." *Id*. at 3. The exception language, which preserves the right to file charges with government agencies like the EEOC, does not confuse the release's scope. This standard carve-out does not permit personal recovery of damages through litigation, aligning with the explicit terms of the Severance Agreement. *See* Amended Complaint ¶ 29.

Allegations of verbal statements by Scott Noonan, *id.* ¶ 31, do not undermine the written Severance Agreement's clarity. Written terms prevail over alleged oral representations, and the Agreement's language is clear and unambiguous. Reliance on contradictory verbal statements is unreasonable when a written agreement clearly states otherwise. *See Middleton v. Int'l Bus. Machines Corp.*, 787 F. App'x 619, 622-23 (11th Cir. 2019).

### 4. Plaintiff Had an Opportunity to Consult With an Attorney

The fourth factor is also satisfied here. Although Plaintiff alleges he was unable to consult with an attorney, this factor does not examine whether Plaintiff

actually received legal counsel but instead whether Plaintiff had an opportunity to do so. *See Bacon*, 2011 WL 4944122, at *5 (S.D. Fla. Oct. 17, 2011) (not considering whether the plaintiffs in fact consulted with counsel, but finding they had an adequate opportunity to do so, in determining the release to be made knowingly and voluntarily). As he admitted, Plaintiff had two weeks to consider the Severance Agreement, more than enough time to consult with counsel.

5. <u>Employer Encouraged Plaintiff to Consult With an Attorney</u>

Section 7 of the Severance Agreement includes an acknowledgment that Plaintiff "has relied on, or had the opportunity to rely upon advice of counsel of Employee's choosing or has been given an opportunity to review it with counsel and have chosen not to do so." Thus, Plaintiff was on notice that he should consult with an attorney upon receipt of the Severance Agreement, and Plaintiff does not plead that ReliaQuest discouraged him from consulting with an attorney. Thus, this element is satisfied.

6. <u>Plaintiff Received a Generous Severance Package to Which He Was Not Otherwise Entitled in Consideration for the Release in the Severance Agreement</u>

There can be no genuine dispute here that the sixth factor of the test is met. In consideration for signing the Severance Agreement, Plaintiff received a severance payment of four weeks' salary and an extra month of health benefits coverage, benefits to which he acknowledged he was not otherwise entitled. *See* Severance

Agreement, Sections 1-2; *see also* Severance Agreement, Section 2 ("Employee acknowledges that Employee is not already entitled to this Severance Payment.").[4]

## B. Plaintiff's Allegations Fail To Establish Misleading or Fraudulent Verbal Statements that Contradict the Severance Agreement

Despite being a given a chance to amend his complaint specifically to add these facts, the Amended Complaint's claims of contradictory verbal statements by a ReliaQuest employee do not meet the necessary threshold to challenge the Severance Agreement's enforceability. In order to establish a claim of fraud in the inducement or negligent misrepresentation, Plaintiff must show that there was "a misrepresentation of material fact." *See Hill v. State Farm Ins. Co.*, 181 F. Supp. 3d 980, 985 (M.D. Fla. 2016)*; see also Hercules Cap., Inc. v. Gittleman*, No. 16-CV-81663, 2018 WL 395489, at *21.

### 1. Noonan's Alleged Statements Were Neither False Nor Misleading

In the Amended Complaint, Plaintiff admits that Noonan informed him that he "would waive all claims against RELIAQUEST." Amended Complaint (Dkt. No. 32) ¶ 30. Plaintiff claims that Noonan also told him "he would not waive claims protected by law such as racial discrimination which fell under EEOC Claims," and "*this does not apply to any federal claims such as with the EEOC or other federal*

---

[4] Notably, despite the claims Plaintiff asserted in his complaint and the Amended Complaint, including claims seeking rescission, he has never offered to return or otherwise tendered to ReliaQuest the compensation he knowingly received under the Severance Agreement.

*labor rights*," *id.* ¶ 31 (emphasis in the original). Even if such statements by Noonan were made, they do not constitute misleading, fraudulent, or information that is contradictory to the explicit terms of the Severance Agreement. Noonan's alleged statements did not suggest that Plaintiff could pursue a federal court lawsuit for money damages; rather, they correctly indicated that Plaintiff was releasing all claims against ReliaQuest, except those that are non-waivable *as a matter of law*, such as the right to file charges with the EEOC or other federal agencies. That is not a mistake, fraud, or misrepresentation. That is the reality and Noonan's statements to Plaintiff are fully consistent with applicable law.

There is no doubt that Noonan's explanation accurately reflects the legal distinction between the right to participate in an agency investigation, by, for example, filing a charge with the EEOC—which cannot be waived—and the right to recover money damages from an employer in a civil suit brought by the employee, which can be waived. *See* U.S. Equal Employment Opportunity Commission, EEOC-NVTA-2009-2, Q&A-Understanding Waivers of Discrimination Claims in Employee Severance Agreements (2009) ("Although your right to file a charge with the EEOC is protected, you can waive the right to recover from your employer either in your own lawsuit, or in any suit brought on your behalf by the Commission.").

Moreover, Plaintiff's actions—seeking legal counsel and then signing the Severance Agreement—indicate an awareness of the need to understand his rights

fully. Conspicuously absent in any of the pleadings is an allegation that Plaintiff made any inquiry with, or request for clarification from, ReliaQuest about the scope of the release further weakens Plaintiff's position.[5] The Severance Agreement's language advising Plaintiff not to rely on any agent or attorney of ReliaQuest reinforces the expectation of due diligence on Plaintiff's part, which (if his allegations are to be taken as true) he did not fulfill. Consequently, Plaintiff's claims of misleading or fraudulent verbal statements do not hold against the explicit and unambiguous terms of the Severance Agreement.

Noonan's alleged statements, at most, would have put a reasonable person on inquiry notice that accepting the severance payments meant waiving significant claims. Plaintiff alleges he knew enough to meet with several attorneys prior to execution, yet he does not allege that he inquired with Noonan or others at ReliaQuest about whether his particular claims would be encompassed by the release in the Severance Agreement. Instead, he pleads that after Noonan made these statements, he contacted several attorneys, although he never had a consultation, and signed the Severance Agreement fourteen days later. *See* Amended Complaint ¶¶ 32-34.

---

[5] Plaintiff did, however, request that the word "covenant" be removed from the form of the Severance Agreement, which word was removed on the final version based on his request. *See* Amended Complaint (Dkt. No. 32) ¶ 32.

## II.   **Plaintiff Cannot Establish Justifiable Reliance on Noonan's Alleged Statements**

Plaintiff's Counts VIII and IX, which allege fraud in the inducement and negligent misrepresentation, respectively, are deficient because they fail to establish the necessary element of justifiable reliance on Noonan's alleged statements. Plaintiff did not plead that he was misled into believing that he could pursue a federal court lawsuit for money damages against ReliaQuest. Instead, Plaintiff alleges that Noonan informed him that the Severance Agreement did not apply to federal claims such as with the EEOC, which is consistent with the Severance Agreement's exclusion of matters that may not be released by law. Amended Complaint ¶ 31. Moreover, Plaintiff did not plead that he had no choice but to rely on Noonan's statements without seeking further clarification or legal advice. *Id*. ¶¶ 32-34.

For fraud in the inducement, the elements include "(1) misrepresentation of material fact; (2) by someone who knew or should have known of the statement's falsity; (3) with intent that the representation would induce another to rely and act on it; and (4) injury suffered in justifiable reliance on the representation." *See Zarrella v. Pac. Life Ins. Co.*, 755 F. Supp. 2d 1218, 1224 (S.D. Fla. 2010). "[R]eliance on representations by a contracting party in a suit based on the contract is unreasonable where the representations are not contained in the subsequent written agreement between the parties," *Barnes v. Burger King Corp.*, 932 F. Supp. 1420, 1428 (S.D. Fla. 1996), especially when "alleged misrepresentations contradict the

express terms of the ensuing written agreement," *Zarrella*, 755 F. Supp. 2d at 1225-26. Additionally, "where one has an opportunity to make a cursory examination or investigation and does not do so, he cannot recover," and "pleadings of the parties make it evident that reliance on the part of a purchaser was not justified as a matter of law." *See M/I Schottenstein Homes, Inc. v. Azam*, 813 So. 2d 91, 93 (Fla. 2002).

Negligent misrepresentation requires similar elements, including a false material misrepresentation believed to be true, which the defendant should have known was false, intended to induce reliance, and resulting in injury due to justifiable reliance. *See Hercules Cap., Inc.*, No. 16-CV-81663, 2018 WL 395489, at *21.

First, as a matter of law, Plaintiff cannot reasonably rely on alleged oral representations that directly conflict with the clear and unambiguous terms of a written agreement that he later executed. The Severance Agreement is clear and unambiguous, explicitly stating that the release extends to all claims related to Plaintiff's employment with ReliaQuest or the termination of that employment, and limits the exclusion to those claims that cannot be released as a matter of law. Severance Agreement, Section 6. The Severance Agreement's language is unequivocal that Plaintiff is "**GIVING UP ALL RIGHTS YOU MAY HAVE TO RECOVER DAMAGES FROM THE COMPANY**." Severance Agreement at 3.

Second, even assuming Noonan's statements were inaccurate, Plaintiff's claim of fraudulent inducement fails due to the lack of reasonable reliance. The Severance Agreement's explicit advice to consult an attorney and warning against relying on ReliaQuest's representations render Plaintiff's alleged reliance on Noonan's statements unreasonable. Plaintiff's actions—seeking legal advice and signing the Severance Agreement without further inquiry—indicate an understanding of the terms, undermining any claim of justifiable reliance on Noonan's statements.

Plaintiff's unsupported claim of justifiable reliance on Noonan's alleged statements is untenable. The Severance Agreement's clarity, acknowledged by Plaintiff, coupled with his opportunity for legal consultation, negates any basis for rescission or sustaining claims against ReliaQuest. Therefore, Counts VIII and IX should be dismissed.

## III.   Claims for Rescission Based on Mutual and Unilateral Mistake Fail

Plaintiff's rescission claims for mutual and unilateral mistake—Counts X and XI—are untenable given the explicit Severance Agreement terms, Plaintiff's assumption of risk, and lack of due diligence.

### A. Plaintiff's Assumption of Risk Vitiates the Claim of Mutual Mistake

To succeed on a claim of mutual mistake and rescind the Severance Agreement, Plaintiff must "show he did not bear the risk of a mistake." *Leff v. Ecker*, 972 So.2d 965, 966 (Fla. 3rd D.C.A. 2007). However, Plaintiff's own actions (as he

pled them) establish that he assumed such risk. Despite his supposed limited knowledge and inability to schedule a legal consultation, Plaintiff did not request additional time to seek counsel and chose to sign the Severance Agreement, accepting his understanding as sufficient. Amended Complaint (Dkt. No. 32), ¶¶ 33-34. By proceeding under these circumstances, Plaintiff bears the risk, and Plaintiff cannot use his claim of mutual mistake to avoid an "agreement[] entered into improvidently." *See Leff*, 9727 So.2d at 966; *see also Costa v. MGM Contracting, Inc.*, 2015 WL 12683833, at *5 (M.D. Fla. Aug. 20, 2015) (citing *Leff* with approval). Therefore, the Court should dismiss Count X of the Amended Complaint.

### B. Lack of Due Diligence Negates the Claim of Unilateral Mistake

Plaintiff's claim for rescission based on unilateral mistake is equally untenable. Rescission on this ground requires a showing that Plaintiff exercised due diligence and that ReliaQuest had reason to know of the alleged misunderstanding. *See Berman v. Kafka*, 518 F. App'x 783, 786 (11th Cir. 2013). Plaintiff, however, did not fulfill his duty of due diligence. He did not plead that he inquired about the meaning of Noonan's alleged statement, the Severance Agreement's terms, or that he expressed any confusion or concern regarding its scope. *See* Amended Complaint, (Dkt. No. 32), ¶¶ 27-34, 21-26, 65-68. Without such inquiries, Plaintiff cannot establish that ReliaQuest was aware or should have been aware of any mistake. The clarity of the Severance Agreement and Plaintiff's acknowledgment of its terms,

coupled with his opportunity to consult with legal counsel, preclude a claim of unilateral mistake. *See Berman v. Kafka*, 518 F. App'x at 786. Thus, the Court should dismiss Count XI of the Amended Complaint.

## IV.   <u>Plaintiff's Amended Complaint Should be Dismissed with Prejudice</u>

Because Plaintiff was already given the opportunity to amend, and any further amendment containing allegations seeking to circumvent the Severance Agreement would be futile, all counts should be dismissed with prejudice. *See Equal Employment Opportunity Commission v. STME,* LLC, 309 F. Supp. 3d 1207, 1215 (M.D. Fla. 2018) (leave to amend need not be granted when amendment would be futile). Despite being fully informed of ReliaQuest's position and the legal issues surrounding the Severance Agreement, Plaintiff's amended complaint still fails to assert valid claims. Further attempts to amend would be futile, as the Severance Agreement's terms and the established facts—including the 14-day period before executing the agreement—bar any actionable claim.

## <u>CONCLUSION</u>

WHEREFORE, Defendant, ReliaQuest, LLC, respectfully requests this Court dismiss all of Plaintiff's claims in the Amended Complaint with prejudice; and award such other relief as this Court deems just and proper.

## <u>LOCAL RULE 3.01(g) CERTIFICATION</u>

As set forth above, the undersigned counsel for ReliaQuest certifies, pursuant to Local Rule 3.01(g), that local counsel for ReliaQuest, Dean A. Kent, conferred with Plaintiff's Counsel, Kevin Henderson, on a phone call on February 22, 2024, in a good-faith effort to address and resolve the issues raised by this Motion, but Plaintiff did not consent to dismissal of all the claims asserted in the Amended Complaint.

Dated: February 23, 2024

Respectfully submitted,

*/s/ Dean A. Kent*
Dean A. Kent
Florida Bar No. 307040
Email: dak@trenam.com/ ac@trenam.com
Richard Hanchett
Florida Bar No. 709212
rhanchett@trenam.com/ ac@trenam.com
**TRENAM LAW**
101 East Kennedy Blvd.
Suite 2700
Tampa, Florida 33602-5150
Tel: (813) 223-7474
Fax: (813) 229-6553

Steven J. Pacini (*pro hac vice*)
**Latham & Watkins LLP**
200 Clarendon Street, 27th Floor
Boston, Massachusetts 02116
Tel: (617) 948-6000
Fax: (617) 948-6001
Email: steven.pacini@lw.com

*Attorneys for ReliaQuest, LLC*

# Exhibit A

SEVERANCE AGREEMENT AND GENERAL RELEASE



<u>**SEVERANCE AGREEMENT AND**</u>
<u>**GENERAL RELEASE**</u>

This Severance Agreement and General Release (hereafter, the "Agreement") is made by **RELIAQUEST, LLC**, its affiliated companies, and each of its officers, directors, managers, employees, agents, and successors (hereafter referred to collectively as "ReliaQuest") and **AARON ALLEN** and all of his or her agents, heirs, and successors (hereafter referred to as "Employee"). The effective date of this agreement is **March 21, 2022.**

<u>**INTRODUCTION**</u>

- Employee began employment with ReliaQuest on **November 1, 2021**. Employee signed an Employment Agreement dated **October 12, 2021.**

- Employee's separation date is **March 21, 2022.**

**NOW, THEREFORE**, in consideration of the mutual promises, including future promises, herein contained, the parties hereto agree to amicably end Employee's employment with ReliaQuest as follows:

<u>AGREEMENT</u>

1. <u>**WAGES & HEALTH INSURANCE.**</u> For the pay period ending **March 26, 2022**, ReliaQuest will pay Employee the gross amount of $REDACTED, less any applicable withholdings, deductions, and taxes. That payment will be made via direct deposit on **March 30, 2022**. Employee's health insurance coverage under any of ReliaQuest's benefit plans will expire at 11:59 p.m. on **April 30, 2022.**

2. <u>**SEVERANCE.**</u> In exchange for Employee signing this Severance Agreement, ReliaQuest will pay a severance payment in the gross amount of $REDACTED, less any applicable withholdings, deductions, and taxes, which will be broken up and paid out over two (2) payroll periods in accordance with ReliaQuest's standard payroll process (the "Severance Payment"). Employee acknowledges that Employee is not already entitled to this Severance Payment. Employee further acknowledges that the Severance Payment will not be made to Employee until ReliaQuest has received this fully executed Agreement from Employee and all company property described in Paragraph 3 below has been received by ReliaQuest from Employee.

3. <u>**RETURN OF COMPANY PROPERTY.**</u> Employee agrees to return to ReliaQuest property of ReliaQuest such as credit cards, keys, cell phones, Laptops, Bags, computer disks, computer programs, files, and any documents in any format prepared or received by Employee that Employee has in his or her possession or control relating in any way to the ReliaQuest's business operations.

4. <u>**CONFIDENTIALITY, NON-SOLICITATION & NON-COMPETITION.**</u> Employee acknowledges and agrees that Employee remains bound by the terms of his or her Employment Agreement related to confidentiality, non-solicitation and non-competition. Employee understands that if Employee has questions regarding those obligations, Employee should consult the Employment Agreement or contact ReliaQuest or an appropriate representative as described in item (b) below. Employee also agrees to hold the existence of this Agreement and its provisions in strictest confidence and Employee will not publicize or disclose the terms in any manner whatsoever; provided, however, that Employee may disclose the terms of this Agreement in confidence: (a) to a spouse or partner; (b) to an attorney, accountant, auditor, tax preparer, and financial advisor, provided that such individuals first agree that they will treat such information as strictly confidential and that Employee agrees to be responsible for any disclosure by any such individual as if Employee had made the disclosure; and (c) as necessary to enforce its terms or as otherwise required by law. **Employee agrees not to disclose the terms of this Agreement to any current or former ReliaQuest employees**.

5.  **NON-DISPARAGEMENT.** Employee agrees not to disparage ReliaQuest and its officers, directors, employees, or agents, in any manner likely to be harmful to them or their business, business reputation, or personal reputation; provided, however, that statements which are made in good faith in response to any question, inquiry, or request for information required by legal process shall not violate this paragraph. Nothing in this restriction is intended to limit Employee from giving honest statements before an administrative agency investigating an alleged violation of federal, state or local laws, including the Equal Employment Opportunity Commission, the National Labor Relations Board, and the Security & Exchange Commission.

6.  **RELEASE.** In exchange for the consideration referred to in this Agreement, Employee hereby releases and forever discharges ReliaQuest from any and all claims, actions, demands, and causes of action in law or in equity which Employee may have had, or may now have against ReliaQuest, including but not limited to any and all claims which are based on or in any way related to his or her employment with ReliaQuest or the termination of that employment. This waiver and release specifically excludes matter that may not be released by law, including Employee's right to pursue certain claims and relief with the Equal Employment Opportunity Commission, the National Labor Relations Board, and the Security & Exchange Commission.

7.  **ACKNOWLEDGMENT.** Employee expressly acknowledges that Employee has relied on, or had the opportunity to rely upon, advice of counsel of Employee's choosing or has been given an opportunity to review it with counsel and have chosen not to do so.  Employee further declares and acknowledges that no representations made by any agent or attorney of ReliaQuest, if any, concerning any legal advice or other information related to this Agreement, and that Employee is acting upon Employee's own best judgment, belief, and knowledge regarding execution of this Agreement.

**- Signature Block on Next Page –**



**YOU UNDERSTAND YOU ARE GIVING UP ALL RIGHTS YOU MAY HAVE TO RECOVER DAMAGES FROM THE COMPANY OR REINSTATEMENT BASED ON ANYTHING THAT HAPPENED BEFORE YOU SIGNED THIS AGREEMENT. YOU ACKNOWLEDGE THAT YOU SIGN THIS AGREEMENT KNOWINGLY AND VOLUNTARILY.**

**RELIAQUEST, LLC**

SIGN: _____

NAME: Greg Farrell
_____

TITLE: Chief Financial Officer
_____

DATE:             Apr 4, 2022
_____

**EMPLOYEE: AARON ALLEN**

SIGN: _____
Aaron Allen (Apr 4, 2022 12:01 EDT)

DATE:             Apr 4, 2022
_____



**AARON ALLEN:** This document provides you with a summary of the information presented to you concerning your separation from employment with ReliaQuest, LLC. Please carefully review the Severance Agreement and General Release (the "Severance Agreement"). If you have any questions, please contact ReliaQuest at RQbenefits@reliaquest.com or legal@reliaquest.com.

1.  **Separation Date**: **March 21, 2022.**

2.  **Final Pay Date**. You will be paid for all wages earned in the current pay period through the separation date listed above, less applicable withholdings, deductions and taxes, on **March 30, 2022,** in the gross amount of $REDACTED.

3.  **Severance Calculation**. If you sign the Severance Agreement by 5:00 pm on **April 6, 2022,** ReliaQuest will pay you severance pay in the amount of $REDACTED less applicable withholdings, deductions and taxes, which will be broken up and paid out over two (2) payroll periods in accordance with ReliaQuest's standard payroll process. If you decide not to sign the Severance Agreement, you will forgo any right to the above severance payment and be required to reimburse ReliaQuest for the full amount of any relocation or other expenses you may owe. In such instance, ReliaQuest will contact you to setup an appropriate payment arrangement and ReliaQuest reserves the right to pursue any lawful means to recoup the full amount of any relocation costs.

4.  **Health Benefits**. If you are currently enrolled in health benefits, your coverage expires at 11:59 p.m. on **March 31, 2022, however if you sign the Severance Agreement it will expire at 11:59 p.m. on April 30, 2022.** You may then choose to continue coverage at your cost through COBRA. You will receive information regarding COBRA from our third-party vendor.

5.  **401(k)**. If you participate in 401(k), you will have three options following your separation, subject to plan rules:
    a) Rollover the 401(k) account into an IRA or another employer's 401(k) plan;
    b) Cash out the account; or
    c) Leave in current 401(k) account just as any other active participant.

    For more information, go to www.401k.com or call (800) 835-5097.

6.  **Unemployment**. ReliaQuest will not oppose any application you make for unemployment compensation benefits but will provide truthful information about you and your separation as may be requested or required by any unemployment agency. ReliaQuest cannot guarantee eligibility for those benefits.

7.  **Expenses**. If you have any outstanding expenses, a final expense report should be turned in by the end of the pay period and the normal approval and reimbursement process will be followed, subject to any setoff of amounts owed by you to ReliaQuest.

8.  **Forwarding Information**: Please make sure to maintain your home address and contact information for future company communications (e.g., W-2 mailing, etc.).

9.  **Confidentiality, Non-Solicitation, and Non-Competition**. You remain bound by the terms of your Employment Agreement dated **October 12, 2021**. If you have any questions regarding your obligations, please consult independent legal counsel to advise you of your rights.

10. **Severance Agreement:** You will receive the Severance Agreement through Adobe Sign. Please carefully read and review its terms prior to signing.