IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | | |
|---|---|---|
| AARON ALLEN | ) | |
| | ) | |
| Plaintiff | ) | Case No. 8:23-cv-00806 |
| | ) | |
| vs. | ) | |
| | ) | |
| RELIAQUEST, LLC, | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S
MOTION TO DISMISS AMENDED COMPLAINT**

NOW COMES, AARON ALLEN ("Plaintiff") who by and through the undersigned counsel files this Response to the Defendant's Motion to Dismiss Amended Complaint (the "Motion") (ECF No. 35) as follows:

1. The Defendant's Motion lumps the Plaintiffs eleven claims into three categories and raises one singular argument for each category.

2. The Motion lumps counts I through VII together as "employment related claims" and alleges the Severance Agreement (the "Agreement") bars the claims.

3. The Motion lumps counts VIII and IX together and argues that the Amended Complaint fails to allege justifiable reliance.

4. The Motion lumps counts X and XI together and alleges the Plaintiff assumed the risk of mistake and did not exercise diligence.

5. A major flaw in the Motion is its focus on language on the last page of the Agreement and failing to take into account that the language contained in paragraph 6 of the Agreement is the

language Plaintiff avers is ambiguous and unclear and paragraph 6 limits the scope of the language cited in the Motion.

6. The Motion further fails to adequately address the need to refute all the prongs of the Totality of the Circumstances test which is summarized as the six (6) factors (all of which are factual, and most disputed and a subject of discovery). Despite the Defendants self-serving summaries that all prongs resolve for Defendant, they actually are based on no record evidence or admissions but merely improper conclusions which are not supported by evidence.

7. The arguments Defendant relies upon reveals that there are issues of material fact regarding these elements that if taken in a light most favorable to the Plaintiff would require this Court to deny the Motion.

8. Upon examination of the amended complaint and taking all facts therein as true, the Motion should be denied.

## MEMORANDUM OF LAW

### I. Standard of Review

In determining the merits of a motion to dismiss, the Court takes the allegations in the complaint as true and construes the allegations "in the light most favorable to the Plaintiff." *Rivell v. Private Health Care Systems, Inc.*, 520 F.3d 1308, 1309 (11th Cir. 2008) (citing *Hoffman–Pugh v. Ramsey*, 312 F.3d 1222, 1225 (11th Cir. 2002)); *Chaparro v. Carnival Corp.*, 693 F.3d l 333, l 337 ( 11th Cir, 2012)); *Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration Alliance*, 304 F.3d 1076, 1084 ( 11th Cir. 2002).

The court should construe a plaintiff's allegations liberally, because the rules require only general or "notice" pleading, rather than detailed fact pleading. For example, provided that a pleading states a claim for relief under the plausibility standard, it is not necessary for the pleading

to also rebut other possible explanations for the conduct alleged, even if those alternatives might appear to be more likely. *Harris v. Procter & Gamble Cellulose Co.,* 73 F.3d 321, 324 (11th Cir. 1996) (notice pleading required).

Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief in order to give the defendant "fair notice of what the. . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8, *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

A motion to dismiss under Rule 12(b)(6) "is granted only when the movant demonstrates that the complaint has failed to include 'enough facts to state a claim to relief that is plausible on its face.'" *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

The language "plausible on its face" emphasizes the limited applicability of Rule 12(b)(6) as the predicate for a final dismissal of the action, a disposition that courts generally disfavor because it summarily terminates cases on their merits. *United States v. Baxter Int'l, Inc*., 345 F.3d 866, 881 (11th Cir. 2003) (threshold of sufficiency to which complaint is held at motion-to-dismiss stage is "exceedingly low"); *Barnett v. Bailey*, 956 F.2d 1036, 1043 (11th Cir. 1992) (Fed. R. Civ. P. 12(b)(6) dismissal requires "beyond doubt" standard). During this threshold review, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. *Brandt v. Bassett*, 69 F.3d 1539, 1550 (11th Cir. 1995) (quoting Scheuer); see also *Harris v. Procter & Gamble Cellulose Co*., 73 F.3d 321, 324 (11th Cir. 1996) (denial of motion does not indicate that plaintiff will prevail on claim that withstands Fed. R. Civ. P. 12(b)(6) challenge).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions . . . ." *Twombly*, 550 U.S. at 555 (internal citations and quotations omitted) (alteration in original). "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . ." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint does not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. (quoting *Twombly*, 550 U.S. at 557).

## II. Counts I through VII of the Amended Complaint State Claims upon Which Relief Can Be Granted.

The Motion's sole argument to dismiss counts I through VII of the amended complaint is that the Plaintiff knowingly and voluntarily released his claims against the Defendant when Plaintiff entered into the Agreement. A careful examination of the argument reveals that it (1) relies on the unsupported conclusion that the language of the severance agreement was clear and unambiguous and or understood by both parties to mean the same thing; (2) ignores the facts as alleged in the Amended Complaint; and (3) it ignores that the Totality of the Circumstances is not limited to the words of the agreement, but instead tests the circumstances surrounding the agreement for fundamental fairness in promoting public policy's in support of federal law.

Defendant's analysis must address all of the six (6) factors used to determine whether the Plaintiff entered into the Agreement knowingly and voluntarily, and those factories are primarily evidentiary and clearly raise issues of material fact if all reasonable inferences are taken as true, thus the amended complaint states a claim and the Motion fails.

The basic premise for the Motion's arguments is that the language in the Agreement is clear and unambiguous. An examination of Section 6 of the Agreement reveals that is clearly not the case.

**A. Section 6 of the Agreement is not clear and unambiguous.**

Section 6 of the Agreement is not clear and unambiguous therefore a finding for the Defendant on this matter would be improper.

Instead of relying on the first sentence of Section 6 as Defendant did in its Motion for Judgment on the Pleadings, Defendant now focuses on language on the last page of the Agreement and ignores Section 6 altogether. The reliance on the newly emphasized language in the Agreement is flawed as it is conditioned upon and subject to the language of the Sections 6 release of the Agreement. Section 6 states in relevant part:

> "RELEASE. In exchange for the consideration referred to in this Agreement, Employee hereby releases and forever discharges ReliaQuest from any and all claims, actions, demands, and causes of action in law or in equity which Employee may have had, or may now have against ReliaQuest, including but not limited to any and all claims which are based on or in any way related to his or her employment with ReliaQuest or the termination of that employment. **This waiver and release specifically excludes matter that may not be released by law, including Employee's right to pursue certain claims and relief with the Equal Employment Opportunity Commission, the National Labor Relations Board, and the Security & Exchange Commission.**"

Plaintiff reasonably interpreted the above highlighted language as allowing him to file an EEOC claim, and a subsequent lawsuit once the right to sue letter was issued. This reasonable interpretation of the agreements language was bolstered by the **express representations of Defendant** made immediately prior to signature to Plaintiff who was told **"…."this does not apply to any federal claims such as with the EEOC or other federal labor rights."**, See Amended Complaint.

Moreover, Rule 8(a) does not require the pleading of a disputed release agreement as part of Plaintiff's case for violations of Federal Protected Racial Discrimination claims under the EEOC as it is not an element of Plaintiff's case. Plaintiff has filed no case falling under the agreement, the agreement is merely an affirmative defense of Defendant. To the contrary, Rule 8(c)(1) specifies release as an Affirmative Defense to be plead in response, and is not part of the pleading of Plaintiff. As such, Defendant's argument that the Agreement prevents Counts I through VII from stating a cause of action fails.

The Plaintiff's interpretation of the agreement that he had the right to sue for EEOC violations was bolstered by the representations made by Scott Noonan which the Plaintiff states in the Amended Complaint.

Conspicuously absent from Defendant's argument is any justification for the use of the second sentence in the release or even an attempt to argue that the language is clear and unambiguous. An examination of Motion, reveals that it does not attempt to explain the meaning of the second sentence that includes a carve out for "*Employee's right to pursue certain claims and relief with the Equal Employment Opportunity Commission….*". The use of the conjunction **and** creates the possibility of reading the above sentence to mean that the "release by law" applies only to Employee's right to pursue certain claims and the **and** is additional exclusions from the release that are not qualified by the "release of law" language. This possible meaning should be given greater weight as the Plaintiff did not draft this language, is not a lawyer and was unable to hire a lawyer so that he relied on the representations as to interpretation made to him by the Defendant through Mr. Noonan.

Moreover, the words "matter that may not be released by law" is also ambiguous as the words could be construed to include Plaintiff's discrimination claims, an interpretation which was represented to Plaintiff by Mr. Noonan and upon which he relied. (See Amended Complaint).

Based on the above, it appears the second sentence of the release is a patent ambiguity as it arises from the use of insensible language. *Emergency Assocs. of Tampa, P.A. v. Sassano*, 664 So. 2d 1000 (Fla. 2d DCA 1995). As such, the release does not clearly indicate the parties' intention, therefore the court must declare that the patently ambiguous provision is a nullity. *See Connelly v. Smith*, 97 So. 2d 865 (Fla. 3d DCA 1957).

To the extent the court finds the language is determined to be clear and intelligible, then a latent ambiguity exists which requires the review of extrinsic evidence to interpret the possible meanings of the release. *Ace Elec. Supply Co. v. Terra Nova Elec., Inc.*, 288 So. 2d 544 (Fla. 1st DCA 1973); *RX Solutions, Inc. v. Express Pharmacy Servs., Inc.,* 746 So. 2d 475 (Fla. 2d DCA 1999) (when a contract is rendered ambiguous by some collateral matter, it has a latent ambiguity, and the court must hear parol evidence to interpret the writing properly.) A latent ambiguity is brought to light when extraneous circumstances reveal "an insufficiency in the contract not apparent from the face of the document." *Hunt v. First Nat'l Bank,* 381 So. 2d 1194 (Fla. 2d DCA 1980).

The Motion fails as its reliance on the Agreement is misplaced because there is an ambiguity in the language of paragraph 2 of the release, which casts doubt on whether it exempted the Plaintiff's EEOC racial discrimination claims against the Defendant. The Plaintiff has provided extrinsic evidence by and through his Declaration to support a finding that the second sentence exempted his claims. Moreover, any ambiguity will be held against the Defendant as it drafted the Agreement.

The Defendant's use of the language outside of Section 6 further fails as it does not take into consideration the clear and unambiguous portion of Section 6 in which it states: "*This waiver and release specifically excludes*". To the extent the Defendant is suggesting that the language outside of Section 6 is controlling over the language contained in Section 6, this argument fails because as the drafter of the Agreement, any ambiguity should be construed against the Defendant and therefore the language in Section 6 should control. See *City of Homestead v. Johnson*, 760 So. 2d 80, 84 (Fla. 2000) (An ambiguous term in a contract is to be construed against the drafter.); *Hurt v. Leatherby Ins. Co.*, 380 So. 2d 432, 434 (Fla. 1980). (Generally, ambiguities are construed against the drafter of the instrument.); "A provision in a contract will be construed most strongly against the party who drafted it." *Sol Walker & Co. v. Seaboard Coast Line R.R. Co.*, 362 So. 2d 45, 49 (Fla. 2d DCA 1978). Where the language of contract is ambiguous or doubtful, it should be construed against the party who drew the contract and chose the wording. *Vienneau v. Metropolitan Life Ins. Co.*, 548 So. 2d 856 (Fla. 4th DCA 1989); *Am. Agronomics Corp. v. Ross*, 309 So. 2d 582 (Fla. 3d DCA 1975). "To the extent any ambiguity exists in the interpretation of [a] contract, it will be strictly construed against the drafter." *Goodwin v. Blu Murray Ins. Agency, Inc.*, 939 So. 2d 1098 (Fla. 5th DCA 2006); *Russell v. Gill*, 715 So. 2d 1114 (Fla. 1st DCA 1998).

Taking the Amended Complaint in the light most favorable to the Plaintiff, it can be held that the language contained in Section 6 of the Agreement does exclude the Plaintiff's EEOC claims from the Agreement and the release, therefore there is at least an issue of material fact regarding the meaning of the language which establishes that the Amended Complaint states claims for Counts I through VII and the Motion fails.

**B. The mere existence of the Agreement is not sufficient.**

Federal courts are cautions to grant summary judgment regarding similar severance agreements as it is often found that issues of material fact remain regarding the Totality of the circumstances (what Defendant calls the six factors). The following language from *Torrez v. Public Service Co. of New Mexico,* 908 F.2d 687 (10th Cir. 1990) which expresses the majority of Federal Districts courts holdings and has been cited in this district when this issue has been raised presents the current dominant legal position on this issue.

> "The majority of circuits, however, explicitly look beyond the contract language and consider all relevant factors in assessing a plaintiff's knowledge and the voluntariness of the waiver. *See Stroman v. West Coast Grocery Co.,* 884 F.2d 458, 462 (9th Cir. 1989); *Riley v. American Family Mut. Ins. Co.,* 881 F.2d 368, 373-74 (7th Cir. 1989); *Bormann v. A T T Communications, Inc.,* 875 F.2d 399, 403 (2d Cir.) (waiver of ADEA rights), *cert. denied,* ___ U.S. ___, 110 S.Ct. 292, 107 L.Ed.2d 272 (1989); *Cirillo v. Arco Chem. Co.,* 862 F.2d 448, 451 (3d Cir. 1988) (waiver of ADEA rights); *Coventry v. United States Steel Corp.,* 856 F.2d 514, 522-23 (3d Cir. 1988) (waiver of ADEA rights); *Rogers v. General Elec. Co.,* 781 F.2d 452, 456 (5th Cir. 1986). In so doing, these courts have considered the following circumstances and conditions under which the release was signed:
>
> "(1) the clarity and specificity of the release language; (2) the plaintiff's education and business experience; (3) the amount of time plaintiff had for deliberation about the release before signing it; (4) whether [p]laintiff knew or should have known his rights upon execution of the release; (5) whether plaintiff was encouraged to seek, or in fact received benefit of counsel; (6) whether there was an opportunity for negotiation of the terms of the Agreement; and (7) whether the consideration given in exchange for the waiver and accepted by the employee exceeds the benefits to which the employee was already entitled by contract or law."
> *Cirillo,* 862 F.2d at 451.
>
> In our view, the totality of the circumstances approach is the better one. While evaluation of the language of the contract is necessary to determine the validity of the waiver of discrimination claims, our inquiry cannot end there. Especially "[i]n light of the strong policy concerns to eradicate discrimination in employment, a review of the totality of the circumstances, considerate of the particular individual who has executed the release, is also necessary." *Coventry,* 856 F.2d at 522-23; *see also Watkins,* 530 F.2d at 1172 ("[t]o assume that, notwithstanding strong evidence to the contrary, a signature implies understanding is to allow a rule of contract law to play too salient a part in the administration of a remedial civil rights statute").
>
> In assessing the totality of the circumstances in this case, we conclude there are material issues of fact precluding summary judgment. The language of the release, although clear

> and unambiguous, failed to mention specifically waiver of employment discrimination claims. *See Cirillo,* 862 F.2d at 450 (employee advised of equal employment laws, encouraged to consult employee relations representative, and release specified employment discrimination claims); *Rogers,* 781 F.2d at 453-54 (release specifically mentioned Title VII). As we have stated above, unambiguous language cannot derail our analysis of whether the waiver was made knowingly and voluntarily. Here, Torrez has stated that it did not occur to him when he signed the release that he might be waiving possible discrimination claims."

See also *Pierce v. Atchison Topeka and Santa Fe Ry. Co.*, 110 F.3d 431, 438, (7th Cir. 1997) (We observe, finally, that placing the burden of proof upon Santa Fe with respect to whether Pierce knowingly and voluntarily waived his ADEA claims is consistent with our holding that waivers of federal rights cannot be governed solely by principles of contract--a holding that stems from the view that "[w]aivers of federal remedial rights ... are not lightly to be inferred,"); *Fields v. Baseline Props., LLC* (W.D. Okla. 2021) (Defendant's Motion for Summary Judgment is denied regarding written waiver of rights to pursue federal claims); *Rangel v. El Paso Natural Gas Co.*, 996 F.Supp. 1093 (D. N.M. 1998) (Defendant's Motion for Summary Judgment denied on Plaintiff's Title VII and state law claims regarding written separation agreement);

Since federal courts struggle to render a decision on the less rigorous summary judgment standard, it would be an error to place a greater burden on that of the Plaintiff in regards to a Rule 12 standard.

### C. Plaintiff did not knowingly and voluntarily waive his EEOC discrimination claims.

The Plaintiff did not knowingly and voluntarily waive his EEOC discrimination claims. Employees can waive employment claims when their waiver is "voluntary and knowing based on the totality of the circumstances." *Myricks v. Fed. Reserve Bank of Atlanta*, 480 F.3d 1036, 1040 (11th Cir.2007). The waiver claims must be knowing and voluntary. *Freeman v. Motor Convoy, Inc.*, 700 F.2d 1339, 1352-53 (11th Cir. 1983).

The Court considers the (i) the education and business experience of the employee; (ii) the time the employee spent considering the agreement before signing it; (iii) the clarity of the language in the agreement; (iv) the employee's opportunity to consult with an attorney; (v) whether the employer encouraged or discouraged consultation with an attorney; and (vi) the consideration given in exchange for the release[1] compared to the benefits the employee was already entitled to receive. *Id*.

Mr. Allen did not participate in the creation of the agreement. See Am.Comp. ¶28. Furthermore, Mr. Allen did not have the opportunity to hire legal counsel and Defendant did not encourage him to hire an attorney.[2] Moreover, Mr. Allen believed the language of Section 6 of the agreement exempted his EEOC discrimination claims against the Defendant, a belief which was bolstered by the representations made by Mr. Noonan before he signed the agreement. See Am Comp.  Specifically, Paragraphs 30 and 31 of the Amended Complaint states:

> 30.    *On March 21, 2022, prior to signing the severance agreement, ALLEN met with Senior Vice President of Development and Engagement, Scott Noonan in a meeting office with two other managers, in which Mr. Noonan explained the Severance Agreement and further stated that by signing the severance agreement, ALLEN would waive all claims against RELIAQUEST except those protected by law such as racial discrimination claims which fell under EEOC Claims.*
> 31.    *Specifically, on March 21, 2022 in the meeting, Mr. Noonan told ALLEN that: "this does not apply to any federal claims such as with the EEOC or other federal labor rights."*

---

[1] Defendant repeatedly characterizes the severance package as "generous", Plaintiff would describe it as inadequate and insulting, and contained multiple obligations including "confidentiality, non-solicitation, & non-competition" and "non-disparagement", the assertion that it was generous in light of what was being given up, or that the entire agreement was for the single poorly worded and ambiguous release paragraph is disputed.

[2] Defendant repeatedly makes the argument that they encouraged review by counsel but appears to base that argument solely on waiver language as opposed to the actual circumstances in which they interpreted the agreement for Plaintiff and could be argued gave him the counsel themselves.

Taking the facts most favorable to the Plaintiff, the totality of the circumstances suggest that Mr. Allen did not execute the Agreement knowingly and voluntarily therefore the agreement can be voided by Mr. Allen and the Motion should be denied.

**D. The Amended Complaint states claims for Fraud in the Inducement and Negligent Misrepresentation (Counts VIII and IX)**

A fraud in the inducement claim must allege four elements: (i) a false statement of material fact; (ii) the maker of the false statement knew or should have known of the falsity of the statement; (iii) the maker intended that the false statement induce another's reliance; and (iv) the other party justifiably relied on the false statement to its detriment. *Sena v. Pereira*, 179 So.3d 433, 436 (Fla. 4d DCA 2015).

A negligent misrepresentation claim must also allege four elements: (i) there was a misrepresentation of material fact; (ii) the representer either knew of the misrepresentation, made the misrepresentation without knowledge of its truth or falsity, or should have known the representation was false; (iii) the representer intended to induce another to act on the misrepresentation; and (iv) injury resulted to a party acting in justifiable reliance upon the misrepresentation. *Florida Women's Medical Clinic, Inc. v. Sultan*, 656 So.2d 931, 933 (Fla. 4th DCA 1995); Simon v. Celebration Co., 883 So.2d 826, 832 (Fla. 5th DCA 2004); Gallon v. Geico General Ins. Co., 150 So.3d 252, 254 (Fla. 2d DCA 2014).

The Motion only challenges the fourth element of the fraud and negligent misrepresentation claims: justifiable reliance. The Defendant's singular argument that Counts

-12-

VIII (Fraud in the Inducement) and Count IX (Negligent Misrepresentation) fail is that the Plaintiff cannot *"reasonably rely on alleged oral misrepresentations that directly conflict with the clear and unambiguous terms."* (Motion p. 16)³. An examination of the caselaw and the facts alleged in the Amended Complaint demonstrate this argument fails.

Curiously in support of this position the Motion argues that *"Noonan informed him [Plaintiff] that the Severance Agreement did not apply to federal claims such as with the EEOC* **which is consistent with the Severance Agreement's exclusion of matters. . ."** (Motion p. 15). After making this statement the Motion then completely reverses position by implying Mr. Noonan's statement is not consistent with the Agreement by stating that "reliance on representations by a contracting party in a suit based on a contract is unreasonable where **the representations are not contained in the subsequent agreement between the parties. . . especially when the alleged misrepresentations contradict the express terms of the written agreement"** (Motion p. 15-16 citations omitted).

This argument clearly fails because the Motion itself acknowledges that Mr. Noonan's statement was **consistent with the Severance Agreement.**

Moreover, Mr. Noonan's statement to Plaintiff is a material fact because it expressed an opinion of superior knowledge on the subject of the statement and the Plaintiff has alleged Mr., Noonan knew or should have known from facts in his or her possession that the statement was false. *Mejia v. Jurich, 781 So. 2d 1175*, (Fla. 3d. DCA 2001).

---

³ Plaintiff restates the arguments contained *supra* that the language of Paragraph 6 is not clear and unambiguous which invalidates this argument altogether. Moreover, the Motion does not argue that the Plaintiff cannot establish the other elements of fraud in the inducement or negligent misrepresentation so Plaintiff shall not address them. And take the Motion's silence on these elements to mean the Defendant is satisfied the Amended Complaint properly alleges these elements.

Furthermore, the representations alleged to have been made by Mr. Noonan in the Amended Complaint do not directly controvert the language of Section 6 of the Agreement because that language is ambiguous so that in the light most favorable to Plaintiff, his reliance thereon was justified.

Taking the facts in the light most favorable to the Plaintiff establishes that he can allege that the elements of fraud in the inducement and negligent misrepresentation therefore the Motion fails.

**E. The Amended Complaint states claims for Mutual and Unilateral Mistake (Counts X and XI)**

The Motion alleges that Counts X (Mutual Mistake) and XI (Unilateral Mistake) of the Amended Complaint fail because the Plaintiff assumed the risk (for mutual mistake) and did not act diligently (for unilateral mistake). In support of this position, the Defendant cites a singular case from the Florida third district court of appeals to support its assumption of risk argument and one singular case from the eleventh circuit to support its diligence argument. A review of the Amended Complaint, the cases cited and the argument in the Motion demonstrates the Motion's arguments fail.

A court has the equitable power to rescind an agreement where a mutual mistake is found due to the instrument not accurately expressing the true intent of the parties. *Tobin v. Mich. Mut. Ins. Co.*, 948 So. 2d 692 (Fla. 2006) (quoting *Providence Square v. Biancardi*, 507 So. 2d 1366, 1369 (Fla. 1987)); *Blumberg v. Am. Fire & Cas. Co.*, 51 So. 2d 182 (Fla. 1951). The mistake must be such that the plaintiff would not have entered the contract if he was aware of it. *Thomas J. Duggan, LLC v. Peacock Point, LLC*, 89 So. 3d 283 (Fla. 1D DCA 2012).

In order to state a claim for unilateral mistake to rescind a contract, the Florida Supreme Court has held that when the mistake is not the result of an inexcusable lack of due care, and where the other party to the contract has not so far relied upon the payment that it would be inequitable to require repayment. *Maryland Cas. Co. v. Krasnek*, 174 So. 2d 541 (Fla. 1965); *BMW of N. Am., Inc. v. Krathen*, 471 So. 2d 585, 588 (Fla. 4d DCA 1985) See also *Rachid v. Perez*, 26 So.3d 70, 71 (Fla. 3d DCA 2010) ("Under Florida law, the party seeking rescission based on unilateral mistake must establish that: (1) the mistake was induced by the party seeking to benefit from the mistake; (2) there is no negligence or want of due care on the part of the party seeking a return to the status quo; (3) denial of release from the agreement would be inequitable; and (4) the position of the opposing party has not so changed that granting the relief would be unjust.").

An examination of the Amended Complaint reveals that Plaintiff has alleged he and Defendant are parties to the Severance Agreement, the Agreement was created by the Defendant and that Scott Noonan, a representative of Defendant told the Plaintiff that *"this does not apply to any federal claims such as with the EEOC or other federal labor rights."* (Am Comp ¶¶s 101-103 and 116-117).

Plaintiff pled both mutual mistake and unilateral mistake because the Plaintiff presently lacks the knowledge of whether Mr., Noonan also believed the Plaintiff could sue after he signed or whether Mr. Noonan did not believe his statement and made the statement to induce the Plaintiff to enter the Agreement.

In regards to the Motion's argument regarding the mutual mistake claim, the Motion cites *Leff v. Ecker,* 972 So.2d. 965 (Fla. 3D DCA 2007) but does so improperly. *Leff* holds that a party to an agreement bears the risk of a mutual mistake when:

*""he is aware, at the time the contract is made, that he has only limited knowledge with respect to the facts to which the mistake relates but treats his limited knowledge as sufficient."* Id. at 966.

The Amended Complaint alleges *"Mr. Noonan explained the Severance Agreement and further stated that by signing the severance agreement, ALLEN would waive all claims against RELIAQUEST except those protected by law such as racial discrimination claims which fell under EEOC Claims."* (Am. Comp. ¶30). Plaintiff relied on the statement made by Mr. Noonan so that Mr. Noonan made the Plaintiff knowledgeable of the facts to which the mistake relates. Nowhere in the Amended Complaint does the Plaintiff allege he treated his limited knowledge as sufficient. Instead, the Amended Complaint alleges the Plaintiff relied on the statement made by Mr. Noonan as he had no reason to believe that Mr. Noonan would lie about the Agreement and believed Mr. Noonan properly explained the Agreement to him. Moreover, the Plaintiff did attempt to consult an attorney but was unable to do so. In the light most favorable to the Plaintiff he has stated a claim for mutual mistake, especially since he relied on the statements made by the Defendant and acted with due care in his attempt to consult with an attorney and as such the Motion should be denied.

The Motion also fails to refute the claim for unilateral mistake as the Amended Complaint alleges the Plaintiff acted with due diligence by attempting to consult with an attorney and by and through the alleged statement made by Mr. Noonan demonstrating that the Defendant had reason to know of the misunderstanding.

Taking the allegation of the Amended Complaint in the light most favorable to the Plaintiff, the Amended Complaint states a cause of action of unilateral mistake and the Motion fails.

**F. Plaintiff should be given leave to amend the complaint**

To the extent the Court is persuaded by the Plaintiff's Motion, Plaintiff respectfully requests leave to file an amended complaint but requests that the Court give Plaintiff direction as to what causes of action are not supported by factual averments. See *Fuller v. Johannessen*, 76 F.3d 347,

348 (11th Cir. 1996) (leave to amend granted following dismissal of claim in bankruptcy action); *San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos.*, 75 F.3d 801, 815 (2d Cir. 1996) (leave to amend complaint should be generously granted).

## CONCLUSION

For the reasons set forth above, the Plaintiffs request that the Defendant's Motion be denied.

DATED this 15th day of March, 2024.

Respectfully submitted,

/s/ Ian Tygar
Ian Tygar, Esq.
Neil Bryan Tygar, P.A.
Attorney for Plaintiff
Bar No. 1031848
5341 W. Atlantic Ave, #303
Delray Beach, FL 33484
Telephone:   (561) 455-0280
Facsimile:    (561) 455-0281
Email:          ntygar@me.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 15th day of March, 2024, the foregoing document electronically filed and served upon all counsel of record via notice delivered by this Court's ECF System.

/s/ Ian Tygar
Ian Tygar, Esq.

-10-