# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

AARON ALLEN,

    Plaintiff,

v.                                               Case No. 8:23-cv-0806-KKM-AEP

RELIAQUEST, LLC,

    Defendant.
_____

## ORDER

Aaron Allen sues his former employer ReliaQuest, LLC, for race discrimination and religious discrimination under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*, and the Florida Civil Rights Act, FLA. STAT. § 760.01, *et seq. See* Am. Compl. (Doc. 32). Additionally, Allen raises claims for fraud in the inducement, negligent misrepresentation, and recission based on mutual mistake and unilateral mistake. *Id.* ReliaQuest contends the amended complaint should be dismissed in its entirety because Allen signed a severance agreement releasing all claims relating this his employment or termination that he may have against ReliaQuest. MTD (Doc. 35). Because the severance agreement contains a clear and unambiguous waiver of the claims Allen now asserts, the Court grants the motion in part.

I.   BACKGROUND[1]

Aaron Allen "is a Native American and African-American male." Am. Compl. (Doc. 32) ¶ 10. Allen began working for ReliaQuest in November 2021 "as a Detection Architect as part of their Detection Operations Team." *Id.* ¶ 16. Allen was terminated on March 21, 2022. *Id.* ¶ 19. The same day, ReliaQuest presented Allen with a severance agreement. *Id.* ¶ 27. Although Allen did not participate in drafting the severance agreement, Allen did request a minor change to a provision of the agreement. *Id.* ¶ 28.

Critically, Section 6 of the Severance Agreement included this waiver and release provision:

> In exchange for the consideration referred to in this Agreement, [Allen] hereby releases and forever discharges ReliaQuest from any and all claims, actions, demands, and causes of action in law or in equity which [Allen] may have had, or may now have against ReliaQuest, including but not limited to any and all claims which are based on or in any way related to his or her employment with ReliaQuest or the termination of that employment. This waiver and release specifically excludes matter that may not be released by law, including [Allen's] right to pursue certain claims and relief with the Equal Employment Opportunity Commission, the National Labor Relations Board, and the Security & Exchange Commission.

Severance Agreement (Doc. 13-1) ¶ 6. The Severance Agreement also contained an acknowledgment provision right above Allen's signature block, which stated: "You

---

[1] Because the Court construes ReliaQuest's motion as one for summary judgment, the Court accepts all facts in the amended complaint as undisputed for the purposes of ruling on the instant motion.

2

understand you are giving up all rights you may have to recover damages from the company or reinstatement based on anything that happened before you signed this agreement. You acknowledge that you sign this agreement knowingly and voluntarily." *Id.* at 3.

Before signing the Severance Agreement, Allen met with "Senior Vice President of Development and Engagement, Scott Noonan," and two other managers. Am. Compl. ¶ 30. Noonan explained the Severance Agreement to Allen, stating that "by signing the severance agreement, Allen would waive all claims against ReliaQuest except those protected by law such as racial discrimination claims which fell under the EEOC [c]laims." *Id.* Specifically, Noon told Allen that the waiver provision "does not apply to any federal claims, such as with the EEOC or other federal labor rights." *Id.* And Noonan told Allen to take seven days to review and sign the agreement. *Id.*

Despite multiple attempts to contact legal counsel, Allen did not speak with a hired attorney before signing the Severance Agreement on April 4, 2022. *Id.* ¶¶ 33–34. As justification for signing the agreement, Allen cites to Noonan's representations. *Id.* ¶ 34.

Following the signing of the Severance Agreement, Allen filed a claim with the EEOC, alleging discriminatory behavior by ReliaQuest. *Id.* ¶ 35. The EEOC then gave Allen a right to sue letter and Allen then initiated this discrimination suit against ReliaQuest, asserting claims for (1) discrimination in violation of Title VII; (2) discrimination in violation of the Florida Civil Rights Act; (3) race discrimination in

violation of Title VII; (4) race discrimination in violation of 42 U.S.C. § 1981; (5) retaliation under Title VII; (6) religious discrimination in violation of Title VII; and (7) various contractual claims. *Id.* ¶ 36; *see also id.* ¶¶ 37–127. ReliaQuest now moves to dismiss all claims in the amended complaint. MTD at 1–3. Because resolving ReliaQuest's arguments would require the Court to interpret the parties' Severance Agreement—which is generally inappropriate at the motion to dismiss stage—I construe ReliaQuest's motion as one for summary judgment. *See Garcia v. Copenhaver, Bell & Assocs., M.D.'s, P.A.*, 104 F.3d 1256, 1266 n.11 (11th Cir. 1997) (explaining that "a district court may convert a motion to dismiss into a motion for summary judgment," if the court notifies the parties and permits the parties to submit relevant argument"). The Court notified the parties of its intent to convert ReliaQuest's motion into one for summary judgment, (Doc. 44), and the parties' submitted supplemental briefing, *see* Pl.'s Suppl. Br. (Doc. 45); Def.'s Suppl. Br. (Doc. 46).

## II.  LEGAL STANDARD

Summary judgment is appropriate if no genuine dispute of material fact exists, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). A fact is material if it might affect the outcome of the suit under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "In a case involving contract interpretation, summary judgment is appropriate when the agreement is totally unambiguous, or when

any ambiguity may be resolved by applying the rules of construction to situations in which the parol evidence of the parties' intentions is undisputed or non-existent." *Dew Seven, LLC v. Big Lots Stores, Inc.*, 354 F. App'x 415, 416 (11th Cir. 2009) (citation and quotation omitted).

The movant always bears the initial burden of informing the district court of the basis for its motion and identifying those parts of the record that demonstrate an absence of a genuine issue of material fact. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). When that burden is met, the burden shifts to the nonmovant to present evidentiary materials (e.g., affidavits, depositions, exhibits, etc.) demonstrating that there is a genuine issue of material fact which precludes summary judgment. *Id.* A moving party is entitled to summary judgment if the nonmoving party "fail[s] to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The Court reviews the record evidence as identified by the parties and draws all legitimate inferences in the nonmoving party's favor. *See Sconiers*, 946 F.3d at 1262; *Reese v. Hebert*, 527 F.3d 1253, 1268 (11th Cir. 2008). Here, to the extent that the record is disputed or capable of multiple inferences, the Court draws them in favor of the non-movant.

## III. ANALYSIS

At the heart of this case is the meaning of the Severance Agreement's release provision and whether it bars Allen's claims asserted in the amended complaint. The parties do not dispute the authenticity of the Severance Agreement, instead the parties disagree as to the meaning of its release provision. *See* MTD at 23; Resp. (Doc. 40) at 4–8. ReliaQuest contends the ordinary meaning of the release provision bars Allen from raising his discrimination claims asserted in the amended complaint. Def.'s Suppl. Br. at 3–4. Allen disagrees, instead arguing that the exception to the release provision carved out his right to individually sue ReliaQuest for discrimination claims that are protected by federal law. Resp. at 5–6; Pl.'s Suppl. Br. at 2–4. Upon review, the ordinary and unambiguous language of the release provision bars Allen from individually suing and seeking relief for claims relating to his employment or termination.

"The interpretation of a contract, including whether it is ambiguous, is a question of law." *S. Coal Corp. v. Drummond Coal Sales, Inc.*, 28 F.4th 1334, 1341 (11th Cir. 2022). "Where, as here, there are no disputes of material fact concerning the terms of the relevant contracts, summary judgment is particularly appropriate." *Eaton v. Principal Life Ins. Co.*, No. 20-cv-0061, 2022 WL 972452, at *5 (M.D. Fla. Mar. 31, 2022) (citing *Kohlheim v. Glynn Cnty.*, 915 F.2d 1473, 1480 n.33 (11th Cir. 1990)); *see also Dew Seven, LLC*, 354 F. App'x at 416. For the reasons explained below, the Severance Agreement's release

provision is not ambiguous and therefore the Court may rule on the appropriate interpretation of the contract as a matter of law. *See Pan Am. W., Ltd. v. Cardinal Com. Dev., LLC*, 50 So. 3d 68, 71 (Fla. 3d DCA 2010) ("Where a contractual provision is unambiguous, no issue of fact is presented as to the meaning of the language or the parties' intent, and the moving party is entitled to judgment as a matter of law.").

### A. The Terms of the Severance Agreement, Including the Release Provision, are Clear and Unambiguous

"The cardinal rule of contract law is that a court should strive to effectuate the intent of the parties. When a contract term is clear and unambiguous, the best evidence of this intent is the term itself . . . ." *Hibiscus Assocs. Ltd. v. Bd. of Trs. of Policemen and Firemen Retirement Sys. of the City of Detroit*, 50 F.3d 908, 919 (11th Cir. 1995). Accordingly, when interpreting a contract under Florida law, a court should first look to the language of the contract, as it is the best evidence of the parties' intent. *See Hurt v. Leatherby Ins. Co.*, 380 So. 2d 432, 433 (Fla. 1980); *White v. Fort Myers Beach Fire Control Dist.*, 302 So. 3d 1064, 1071 (Fla. 2d DCA 2020) (citation omitted); *see also Am. Home Assurance Co. v. Larkin Gen. Hosp., Ltd.*, 593 So. 2d 195, 197 (Fla. 1992) (explaining that the "intent of the parties to the contract should govern the construction of a contract" (citation omitted)). If the terms of a contract "are clear and definite, they must be understood according to their ordinary meaning." *Institutional & Supermarket*

7

*Equip., Inc. v. C & S Refrigeration, Inc.*, 609 So. 2d 66, 68 (Fla. 4th DCA 1992) (citation omitted).

Beginning with the plain language, the release provision is clear that Allen "release[d] and forever discharge[d] ReliaQuest from any and all claims, actions, demands, and causes of action in law or equity" that were "based on or in any way related to [Allen's] employment with ReliaQuest or the termination of that employment." Severance Agreement ¶ 6. The Severance Agreement plainly states that the only exception to this general and broad release provision is "matter that may not be released by law, including [Allen's] right to pursue certain claims and relief with the Equal Employment Opportunity Commission, the National Relations Board, and the Security & Exchange Commission." *Id.* The "matter that may not be released by law" pertains only to Allen's right to file a charge or discrimination with the EEOC or Allen's right to testify, assist, or participate in an EEOC investigation, hearing, or proceeding regarding ReliaQuest. *See* EEOC, No. EEOC-NVTA-2009-2, *Q&A – Understanding Waivers of Discrimination Claims in Employee Severance Agreements* (July 15, 2009). An employee may by law release their right to file an individual lawsuit or obtain monetary relief. *Id.* Thus, the exception to the Severance Agreement's general release provision does not extend to Allen individually filing a lawsuit or individually recovering against ReliaQuest. This interpretation of the release provision is consistent with the Severance Agreement's acknowledgment provision, which

states that Allen is "giving up all rights [he] may have to recover damages from [ReliaQuest] or reinstatement based on anything that happened before you signed this agreement." *See* Severance Agreement at 3.

In sum, the release provision is clear and unambiguous, and I need not consider extrinsic evidence to determine its meaning. *See Jenkins v. Eckerd Corp.*, 913 So. 2d 43, 52 (Fla. 1st DCA 2005) ("[I]f a contract provision is 'clear and unambiguous,' a court may not consider extrinsic or 'parol' evidence to change the plain meaning set forth in the contract." (quoting *Quarterman v. City of Jacksonville*, 347 So. 2d. 1036, 1041 (Fla. 1st DCA 1977))). Simple review of the release provision makes clear that its exception does not sweep so broad to include Allen's right to file an individual lawsuit and seek relief against ReliaQuest for discrimination that occurred during his employment.

### B. Allen's Attempts to Create Ambiguity Fail

To avoid the clear language of the Severance Agreement, Allen raises two arguments as to why the release provision's language is ambiguous. First, Allen contends that "[i]t is uncertain if the 'and' between the words 'claim' and 'relief' connects those words or separates them into different matters that are excluded from the general release." Pl.'s Suppl. Br. (Doc. 45) at 2. Second, Allen contends that the words "matter that may not be released by law" are ambiguous as to whether they apply to the word "including" or "waiver and release." *Id.* Neither argument is persuasive. Allen cannot inject ambiguity into the

9

unambiguous release provision just by disagreeing as to its proper interpretation. *See AECOM Tech. Servs., Inc. v. Pro. Servs. Indus., Inc.*, 580 F. Supp. 3d 1176, 1185–86 (M.D. Fla. 2021) (explaining that although "[a] contract is ambiguous when there are competing reasonable interpretations of the instrument," " 'fanciful, inconsistent, and absurd interpretations' do no not create ambiguity." (quoting *Nabbie v. Orlando Outlet Owner, LLC*, 237 So. 3d 463, 467 (Fla. 5th DCA 2018))).

First, Allen's interpretation fails because it discards the ordinary meaning of the word "and," which is a conjunctive, not disjunctive, term. *See United States v. Garcon*, 54 F.4th 1274, 1278 (11th Cir. 2022) (explaining that " '[a]nd' means 'along with or together with,' which ordinarily [used in] a "conjunctive" sense (citations and quotations omitted)), *abrogated on other grounds by Pulsifer v. United States*, 601 U.S. 124 (2024). Allen's offered reading assigns the word "and" a disjunctive meaning, which violates its ordinary meaning. Under Florida law, courts should not interpret unambiguous terms in a manner that contradicts their ordinary meaning. *See Institutional & Supermarket Equip.*, 609 So. 2d at 68 (Fla. 4th DCA 1992) ("Where contracts are clear and unambiguous, they should be construed as written, and the court can give it no other meaning. Where words of a contract are clear and definite, they must be understood according to their ordinary meaning." (citation omitted)).

Second, Allen's interpretation also discards the plain reading of last sentence of the waiver provision, which indicates that Allen's "right to pursue certain claims and relief" with the EEOC is an example of "matter that may not be released by law." Allen's mistaken belief as to what claims may be released by law does not change the meaning of the provision's plain and unambiguous language.

Third, in addition to being textually flawed, Allen's argument violates basic contract interpretation principles. For example, accepting Allen's reading would render superfluous the last provision of the agreement which states that Allen, by signing the Severance Agreement, was "giving up all rights [he] may have to recover damages from [ReliaQuest] or reinstatement based on anything that happened before you signed this agreement." *See* Severance Agreement at 3. The Court declines to adopt such an interpretation. *See Universal Prop. & Cas. Ins. Co. v. Johnson*, 114 So. 3d 1031, 1036 (Fla. 1st DCA 2013) (explaining that "[a] contract is not to be read so as to make one section superfluous" or "interpreted in such a way as to render a provision meaningless when there is a reasonable interpretation that does not do so," instead "all the various provisions of a contract must be so construed . . . as to give effect to each" (citations and quotations omitted)).

In short, the Court rejects Allen's strained interpretation of the Severance Agreement because it contradicts the plain language of the release provision and violates

basic contract interpretation principles. The natural reading of a contractual provision is preferred.

## IV. CONCLUSION

The Court grants Defendant's construed motion for summary judgment (Doc. 35) in part. Because the parties have not formally briefed the issue of whether the release was knowing and voluntary under the summary judgment standard, the Court declines to resolve that issue now. The parties are permitted to address in a subsequent summary judgment motion whether the release was knowing and voluntary, and whether summary judgment as to Counts VIII–XI is appropriate in the light of this Order.

Accordingly, the following is **ORDERED:**

1. ReliaQuest's Motion to Dismiss (Doc. 35), construed by the Court as a motion for partial summary judgment, is **GRANTED IN PART**. The Court's ruling should not be construed as ruling on any issues other than the proper interpretation of the Severance Agreement's release provision.

2. The parties may move to amend the Court's Case Management and Scheduling Order (Doc. 41) to permit bifurcated discovery and summary judgment on issues pertaining to the Severance Agreement.

3. No later than **August 16, 2024**, ReliaQuest must file an answer to Allen's Amended Complaint.

**ORDERED** in Tampa, Florida, on August 1, 2024.

TOM BARBER
UNITED STATES DISTRICT JUDGE*

---

* Signed by Judge Thomas P. Barber to expedite the resolution of this motion. This case remains assigned to Judge Kathryn Kimball Mizelle.

13