## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

AARON ALLEN,

      Plaintiff/Counter Defendant,

v.                                 Case No.: 23-cv-00806-KKM-MEP

 RELIAQUEST, LLC.

      Defendant/Counterclaimant.

_____/

## RELIAQUEST, LLC'S ANSWER AND AFFIRMATIVE DEFENSES TO AMENDED COMPLAINT (Doc. 32) AND AMENDED COUNTERCLAIMS[1]

Pursuant to this Court's Order dated August 1, 2024, (Doc. 47), Defendant, ReliaQuest, LLC ("ReliaQuest") hereby responds to the corresponding numbered paragraphs of Aaron Allen's ("Allen") Amended Complaint (Doc. 32), as follows:

## JURISDICTION AND VENUE

1.     Admits that Allen purports to assert such actions in this Amended Complaint, but denied that ReliaQuest violated any of the laws set forth in the Amended Complaint and that any such claims state a claim upon which relief may

---

[1] ReliaQuest previously filed its Counterclaim against Allen as part of Doc. 13, which was responded to by Allen in Doc. 18.  However, in an abundance of caution, it is repleading such counterclaims herein.

be granted or are actionable under the law and the facts, especially given this Court's Order dated August 1, 2024.

2.     Contains legal conclusions to which no response is required; otherwise denied.

3.     Contains legal conclusions to which no response is required; otherwise denied.

4.     Contains legal conclusions to which no response is required; otherwise denied.

## CONDITIONS PRECEDENT

5.      Contains legal conclusions to which no response is required; otherwise denied.

6.     Without knowledge, therefore denied.

7.     Without knowledge, therefore denied.

8.     Without knowledge, therefore denied.

## PARTIES

9.     Without knowledge, therefore denied.

10.     Without knowledge, therefore denied.

11.     Denied that ReliaQuest is a corporation. ReliaQuest is a limited liability company. Admitted that ReliaQuest is existing and organized under the laws of Florida, with its principal address in Tampa, Florida.  Denied that it has conducted

continuous business in the Southern District of Florida, a district not relevant nor implicated in this action.   Except as expressly admitted, ReliaQuest denies the allegations in Paragraph 11.

12.     Contains legal conclusions to which no response is required; otherwise denied.

13.     Contains legal conclusions to which no response is required; otherwise denied.

14.     Contains legal conclusions to which no response is required; otherwise denied.

15.     Denied.

## **FACTUAL ALLEGATIONS**

16.     Admitted that Allen began working for ReliaQuest on November 1, 2021 as a Detection Architect and that Plaintiff was part of its Detection Team, with an office at 777 S. Harbor Island Blvd., Suite 500, Tampa, FL.  Except as expressly admitted, ReliaQuest denies the allegations in Paragraph 16

17.     Denied. Allen's performance was significantly below expectations. Allen failed to perform his job responsibilities with the requisite skill, knowledge, and diligence required to remain employed by ReliaQuest.

18.     Denied. Allen was not an employee in good standing prior to his termination due to significant and unremedied deficiencies in his job performance.

19.     Admitted.

20.     ReliaQuest admits that Allen's poor job performance, including his poor client relationship skills, was discussed at the termination meeting. ReliaQuest lacks knowledge or information sufficient to form a belief as to the truth or falsity of Allen remaining allegations in Paragraph 20, and on that basis denies the same.

21.      ReliaQuest lacks knowledge or information sufficient to form a belief as to the truth or falsity of Plaintiff's allegations in Paragraph 21, and on that basis denies the same.

22.     Denied.

23.     Denied.

24.     ReliaQuest cannot provide details relating to another employee's separation from ReliaQuest in a public forum.  ReliaQuest lacks knowledge or information sufficient to form a belief as to the truth or falsity of Allen's remaining allegations in Paragraph 24, and on that basis denies the same.

25.     Denied.

      a)     Without knowledge, therefore denied.

      b)     Without knowledge, therefore denied.

c)      Admitted Allen had approximately five years of management experience. Except as expressly admitted, without knowledge and therefore denied.

d)      Without knowledge, therefore denied.

e)      Without knowledge, therefore denied.

f)      Without knowledge, therefore denied.

g)      Without knowledge, therefore denied.

26.    Denied.

27.    Admitted that Allen was terminated on March 21, 2022 and presented the Severance Agreement; ReliaQuest lacks knowledge or information sufficient to form a belief as to the truth or falsity of Allen's remaining allegations in Paragraph 27 and on that basis denies.

28.    Admitted that Allen did not draft the first version of the Severance Agreement. Further admitted that Allen, prior to execution, reviewed, negotiated, and requested changes to the wording of the Severance Agreement, which requested changes were accepted and agreed to by the parties. Otherwise, denied.

29.    Admitted to the extent that Section 6 of the Severance Agreement speaks for itself; otherwise denied.

30.     Admitted that prior to execution of the Severance Agreement, Allen met with ReliaQuest's agents to address the Severance Agreement.   Otherwise denied.

31.     Denied.

32.     Without knowledge, therefore denied. Further, denied to the extent that the terms of the Severance Agreement regarding execution speak for themselves.

33.     Without knowledge, therefore denied.

34.     Denied.  Further specifically denied that any such statements were ever made, and the Severance Agreement speaks for itself on such issues.

35.     Without knowledge, therefore denied.

36.     Without knowledge, therefore denied.

## COUNT I – Title VII Discrimination

37.     Based on this Court's August 1, 2024, Order regarding the scope of the release contained in the Severance Agreement of this claim, no response is required by ReliaQuest. To the extent a response is required, ReliaQuest hereby incorporates the answers heretofore set forth Paragraph 1 through 36, as if set forth fully herein.  Except as expressly admitted, ReliaQuest denies the allegations in Paragraph 37.

38.     Based on this Court's August 1, 2024, Order regarding the scope of the release contained in the Severance Agreement of this claim, no response is required

by ReliaQuest. To the extent a response is required, ReliaQuest denies the allegations.

    a) To the extent a response is required, ReliaQuest denies the allegations.

    b) To the extent a response is required, ReliaQuest denies the allegations.

39.    Based on this Court's August 1, 2024, Order regarding the scope of the release contained in the Severance Agreement of this claim, no response is required by ReliaQuest. To the extent a response is required, ReliaQuest denies the allegations.

40.    Based on this Court's August 1, 2024, Order regarding the scope of the release contained in the Severance Agreement of this claim, no response is required by ReliaQuest. To the extent a response is required, ReliaQuest denies the allegations.

## COUNT II – FCRA Discrimination

41.    Based on this Court's August 1, 2024, Order regarding the scope of the release contained in the Severance Agreement of this claim, no response is required by ReliaQuest. To the extent a response is required, ReliaQuest hereby incorporates the answers heretofore set forth Paragraph 1 through 36, as if set forth fully herein. Except as expressly admitted, ReliaQuest denies the allegations in Paragraph 41.

42.     Based on this Court's August 1, 2024, Order regarding the scope of the release contained in the Severance Agreement of this claim, no response is required by ReliaQuest. To the extent a response is required, ReliaQuest denies the allegations.

    a) To the extent a response is required, ReliaQuest denies the allegations.

    b) To the extent a response is required, ReliaQuest denies the allegations.

43.     Based on this Court's August 1, 2024, Order regarding the scope of the release contained in the Severance Agreement of this claim, no response is required by ReliaQuest. To the extent a response is required, ReliaQuest denies the allegations.

44.     Based on this Court's August 1, 2024, Order regarding the scope of the release contained in the Severance Agreement of this claim, no response is required by ReliaQuest. To the extent a response is required, ReliaQuest denies the allegations.

## COUNT III – Title VII Race Discrimination

45.     Based on this Court's August 1, 2024, Order regarding the scope of the release contained in the Severance Agreement of this claim, no response is required by ReliaQuest. To the extent a response is required, ReliaQuest hereby incorporates

the answers heretofore set forth Paragraph 1 through 36, as if set forth fully herein. Except as expressly admitted, ReliaQuest denies the allegations in Paragraph 45.

46.     Based on this Court's August 1, 2024, Order regarding the scope of the release contained in the Severance Agreement of this claim, no response is required by ReliaQuest. To the extent a response is required, ReliaQuest denies the allegations.

47.     Based on this Court's August 1, 2024, Order regarding the scope of the release contained in the Severance Agreement of this claim, no response is required by ReliaQuest. To the extent a response is required, ReliaQuest denies the allegations.

48.     Based on this Court's August 1, 2024, Order regarding the scope of the release contained in the Severance Agreement of this claim, no response is required by ReliaQuest.  To the extent a response is required, ReliaQuest is without knowledge of the allegations, and therefore denies them.

## **COUNT IV – Race Discrimination Section 1981**

49.     Based on this Court's August 1, 2024, Order regarding the scope of the release contained in the Severance Agreement of this claim, no response is required by ReliaQuest.  To the extent a response is required, ReliaQuest hereby incorporates the answers heretofore set forth Paragraph 1 through 36, as if set forth fully herein. Except as expressly admitted, ReliaQuest denies the allegations in Paragraph 49.

50.     Based on this Court's August 1, 2024, Order regarding the scope of the release contained in the Severance Agreement of this claim, no response is required by ReliaQuest. To the extent a response is required, ReliaQuest denies the allegations.

51.     Based on this Court's August 1, 2024, Order regarding the scope of the release contained in the Severance Agreement of this claim, no response is required by ReliaQuest. Additionally, Paragraph 51 contains legal conclusions to which no response is required; to the extent a response is required, ReliaQuest denies the allegations.

52.     Based on this Court's August 1, 2024, Order regarding the scope of the release contained in the Severance Agreement of this claim, no response is required by ReliaQuest. Additionally, Paragraph 52 contains legal conclusions to which no response is required; to the extent a response is required, ReliaQuest denies the allegations.

53.     Based on this Court's August 1, 2024, Order regarding the scope of the release contained in the Severance Agreement of this claim, no response is required by ReliaQuest. To the extent a response is required, ReliaQuest denies the allegations.

54.     Based on this Court's August 1, 2024, Order regarding the scope of the release contained in the Severance Agreement of this claim, no response is required

by ReliaQuest. To the extent a response is required, ReliaQuest denies the allegations.

55.     Based on this Court's August 1, 2024, Order regarding the scope of the release contained in the Severance Agreement of this claim, no response is required by ReliaQuest. To the extent a response is required, ReliaQuest denies the allegations.

56.     Based on this Court's August 1, 2024, Order regarding the scope of the release contained in the Severance Agreement of this claim, no response is required by ReliaQuest. To the extent a response is required, ReliaQuest denies the allegations.

57.     Based on this Court's August 1, 2024, Order regarding the scope of the release contained in the Severance Agreement of this claim, no response is required by ReliaQuest. To the extent a response is required, ReliaQuest denies the allegations.

58.     Based on this Court's August 1, 2024, Order regarding the scope of the release contained in the Severance Agreement of this claim, no response is required by ReliaQuest. To the extent a response is required, ReliaQuest denies the allegations.

59.     Based on this Court's August 1, 2024, Order regarding the scope of the release contained in the Severance Agreement of this claim, no response is required

by ReliaQuest. To the extent a response is required, ReliaQuest denies the allegations.

60.    Based on this Court's August 1, 2024, Order regarding the scope of the release contained in the Severance Agreement of this claim, no response is required by ReliaQuest. To the extent a response is required, ReliaQuest is without knowledge of the allegations, and therefore denies them.

## <u>COUNT V– FCRA Race Discrimination</u>

61.    Based on this Court's August 1, 2024, Order regarding the scope of the release contained in the Severance Agreement of this claim, no response is required by ReliaQuest. To the extent a response is required, ReliaQuest hereby incorporates the answers heretofore set forth Paragraph 1 through 36, as if set forth fully herein. Except as expressly admitted, ReliaQuest denies the allegations in Paragraph 61.

62.    Based on this Court's August 1, 2024, Order regarding the scope of the release contained in the Severance Agreement of this claim, no response is required by ReliaQuest. To the extent a response is required, ReliaQuest denies the allegations.

63.    Based on this Court's August 1, 2024, Order regarding the scope of the release contained in the Severance Agreement of this claim, no response is required by ReliaQuest. To the extent a response is required, ReliaQuest denies the allegations.

64.     Based on this Court's August 1, 2024, Order regarding the scope of the release contained in the Severance Agreement of this claim, no response is required by ReliaQuest. To the extent a response is required, ReliaQuest is without knowledge of the allegations, and therefore denies them.

## COUNT VI – Title VII Retaliation

65.     Based on this Court's August 1, 2024, Order regarding the scope of the release contained in the Severance Agreement of this claim, no response is required by ReliaQuest. To the extent a response is required, ReliaQuest hereby incorporates the answers heretofore set forth Paragraph 1 through 36, as if set forth fully herein. Except as expressly admitted, ReliaQuest denies the allegations in Paragraph 65.

66.     Based on this Court's August 1, 2024, Order regarding the scope of the release contained in the Severance Agreement of this claim, no response is required by ReliaQuest. To the extent a response is required, ReliaQuest denies the allegations.

67.     Based on this Court's August 1, 2024, Order regarding the scope of the release contained in the Severance Agreement of this claim, no response is required by ReliaQuest. To the extent a response is required, ReliaQuest denies the allegations.

68.     Based on this Court's August 1, 2024, Order regarding the scope of the release contained in the Severance Agreement of this claim, no response is required

by ReliaQuest. To the extent a response is required, ReliaQuest denies the allegations.

69.   Based on this Court's August 1, 2024, Order regarding the scope of the release contained in the Severance Agreement of this claim, no response is required by ReliaQuest. To the extent a response is required, ReliaQuest denies the allegations.

70.   Based on this Court's August 1, 2024, Order regarding the scope of the release contained in the Severance Agreement of this claim, no response is required by ReliaQuest. To the extent a response is required, ReliaQuest denies the allegations.

71.   Based on this Court's August 1, 2024, Order regarding the scope of the release contained in the Severance Agreement of this claim, no response is required by ReliaQuest. To the extent a response is required, ReliaQuest is without knowledge of the allegations, and therefore denies them.

## COUNT VII – Title VII Disparate Treatment

72.   Based on this Court's August 1, 2024, Order regarding the scope of the release contained in the Severance Agreement of this claim, no response is required by ReliaQuest. To the extent a response is required, ReliaQuest hereby incorporates the answers heretofore set forth Paragraph 1 through 36, as if set forth fully herein. Except as expressly admitted, ReliaQuest denies the allegations in Paragraph 72.

73.     Based on this Court's August 1, 2024, Order regarding the scope of the release contained in the Severance Agreement of this claim, no response is required by ReliaQuest.  Additionally, Paragraph 73 contains legal conclusions to which no response is required; to the extent a response is required, ReliaQuest denies the allegations.

74.     Based on this Court's August 1, 2024, Order regarding the scope of the release contained in the Severance Agreement of this claim, no response is required by ReliaQuest. Additionally, Paragraph 74 contains legal conclusions to which no response is required; to the extent a response is required, ReliaQuest denies the allegations.

75.     Based on this Court's August 1, 2024, Order regarding the scope of the release contained in the Severance Agreement of this claim, no response is required by ReliaQuest. Additionally, Paragraph 75 contains legal conclusions to which no response is required; to the extent a response is required, ReliaQuest denies the allegations.

76.     Based on this Court's August 1, 2024, Order regarding the scope of the release contained in the Severance Agreement of this claim, no response is required by ReliaQuest. To the extent a response is required, ReliaQuest is without knowledge of the allegations, and therefore denies them.

77.     Based on this Court's August 1, 2024, Order regarding the scope of the release contained in the Severance Agreement of this claim, no response is required by ReliaQuest. To the extent a response is required, ReliaQuest is without knowledge of the allegations, and therefore denies them.

78.     Based on this Court's August 1, 2024, Order regarding the scope of the release contained in the Severance Agreement of this claim, no response is required by ReliaQuest. To the extent a response is required, ReliaQuest denies the allegations.

79.     Based on this Court's August 1, 2024, Order regarding the scope of the release contained in the Severance Agreement of this claim, no response is required by ReliaQuest. To the extent a response is required, ReliaQuest denies the allegations.

80.     Based on this Court's August 1, 2024, Order regarding the scope of the release contained in the Severance Agreement of this claim, no response is required by ReliaQuest. To the extent a response is required, ReliaQuest denies the allegations.

81.     Based on this Court's August 1, 2024, Order regarding the scope of the release contained in the Severance Agreement of this claim, no response is required by ReliaQuest. To the extent a response is required, ReliaQuest is without knowledge of the allegations, and therefore denies them.

## COUNT VIII FRAUD IN THE INDUCEMENT

82.     ReliaQuest reincorporates its responses to Paragraphs 1-36 as if set forth fully herein.  Except as expressly admitted, ReliaQuest denies the allegations in Paragraph 82.

83.     The allegations contained in Paragraph 83 contain legal conclusions to which no response is required; to the extent a response is required, ReliaQuest denies the allegations.

84.     The allegations contained in Paragraph 84 contain legal conclusions to which no response is required; to the extent a response is required, ReliaQuest denies the allegations.

85.     Admit that Scott Noonan was present at a meeting with Allen and other persons on March 21, 2022, otherwise denied.

86.     Denied that any such statements were made as phrased. The allegations contained in Paragraph 86 contain legal conclusions to which no response is required; to the extent a response is required, ReliaQuest otherwise denies the allegation.

87.     Denied that any such statements were made as phrased. Without knowledge as to Mr. Noonan's knowledge regarding any alleged statements and therefore denied.

88.    Denied that any such statements were made as phrased. Without knowledge as to Mr. Noonan's intent and therefore denied.

89.    Denied.

90.    Denied.  In fact, irrespective of the released claims and falsity of his asserted claims, Allen has received a benefit, via compensation under the Severance Agreement to which he was not otherwise entitled, as alleged in ReliaQuest's counterclaim.

91.    The allegations contained in Paragraph 91 contain legal conclusions to which no response is required; to the extent a response is required, ReliaQuest denies the allegation.

**92.**    The allegations contained in Paragraph 92 contain legal conclusions to which no response is required; to the extent a response is required, ReliaQuest denies the allegation.

## COUNT IX – Negligent Misrepresentation

93.    ReliaQuest reincorporates its responses to paragraphs 1-36 as if set forth fully herein.  Except as expressly admitted, ReliaQuest denies the allegations in Paragraph 93.

94.    Admitted that Scott Noonan was present at a meeting with Allen and other persons on March 21, 2022, otherwise denied.

95.　Denied that any such statements were made as phrased. The allegations contained in Paragraph 95 contain legal conclusions to which no response is required; to the extent a response is required, ReliaQuest denies the allegation.

96.　Denied that any such statements were made as phrased. Without knowledge as to Mr. Noonan's knowledge regarding any alleged statements and therefore denied.

97.　Denied that any such statements were made as phrased. Without knowledge as to Mr. Noonan's intent and therefore denied.

98.　Denied.

99.　Denied.  In fact, irrespective of the released claims and falsity of his asserted claims, Allen has received a benefit, via compensation under the Severance Agreement to which he was not otherwise entitled, as alleged in ReliaQuest's counterclaim.

## **COUNT X – Mutual Mistake**

100.　ReliaQuest reincorporates its responses to Paragraphs 1-36 as if set forth fully herein.

101.　Admitted.

102.　Denied.

103.　Admitted that Scott Noonan was present at a meeting with Allen and other persons on March 21, 2022, otherwise denied.

104.   Denied.

105.   Denied.

106.   Denied.

107.   Denied that Allen received seven days to review the Severance Agreement; Allen received fourteen days. Admitted that Allen was given sufficient time to review and consider the Severance Agreement's terms, alone and with any attorney of his choice, before its execution.  Without knowledge as to Allen's efforts and diligence and/or whether Allen did in fact consult with any attorneys. Except as otherwise expressly admitted, ReliaQuest denies the allegations in Paragraph 107.

108.   Denied.

109.   Denied.

110.   Denied.

111.   Denied.

112.   The allegations contained in Paragraph 83 contain legal conclusions to which no response is required; to the extent a response is required, ReliaQuest denies the allegation.

## COUNT XI – Unilateral Mistake

113.   ReliaQuest reincorporates its responses to Paragraphs 1-36 as if set forth fully herein. Except as expressly admitted, ReliaQuest denies the allegations in Paragraph 113.

114.   The allegations contained in Paragraph 114 contain legal conclusions to which no response is required; to the extent a response is required, ReliaQuest denies the allegation.

115.   Admitted.

116.   Denied.

117.   Admitted that Scott Noonan was present at a meeting with Allen and other persons on March 21, 2022, otherwise denied.

118.   Denied.

119.   Denied.

120.   Denied.

121.   Denied.

122.   Denied.

123.   Denied that Allen was given seven days; Allen was given fourteen days. Admitted that Allen was given sufficient time to review and consider the Severance Agreement's terms, alone and with any attorney of his choice, before its execution. Without knowledge as to Allen's efforts and diligence and/or whether Allen did in

fact consult with any attorneys. Except as expressly admitted, ReliaQuest otherwise denies the allegations in Paragraph 123.

124. Denied.

125. Denied.

126. Denied.

127. Denied.

**All allegations not expressly admitted are hereby denied.**

## AFFIRMATIVE DEFENSES

For its affirmative defenses to the claims asserted in this matter, ReliaQuest states as follows:

## FIRST AFFIRMATIVE DEFENSE

All decisions, actions, or failures to act by ReliaQuest with respect to Allen and his employment were justified by legitimate, non-discriminatory, non-retaliatory reasons and were based on factors other than Allen's race, religion, or his alleged reporting of discriminatory conduct in the workplace—including, but not limited to, Allen's significant and unremedied underperformance, including inability to perform basic job duties with the requisite skill and knowledge, which jeopardized ReliaQuest's client relations and business.

## SECOND AFFIRMATIVE DEFENSE

Allen's claims are barred by the affirmative defense of release. ReliaQuest presented Allen with an optional severance agreement with a standard release. Allen knowingly and voluntarily released the claims he now alleges in the Amended Complaint when he executed the Severance Agreement. All of Allen's claims fall within the terms of the Release, are barred, and should be dismissed with prejudice, with costs and fees awarded to ReliaQuest.

## THIRD AFFIRMATIVE DEFENSE

Allen fails to allege facts sufficient to state a claim upon which relief can be granted.

## FOURTH AFFIRMATIVE DEFENSE

Allen's claims of discrimination and retaliation are barred to the extent that Allen has failed to fulfill conditions precedent to filing the Amended Complaint, or to otherwise satisfy statutory prerequisites to instituting this lawsuit.

## FIFTH AFFIRMATIVE DEFENSE

Allen's claims are barred, in whole or in part, to the extent that they stem from events which occurred more than 300 days before the filing of Allen's Charge of discrimination with the EEOC and/or state or local agency as they are untimely under the law and not properly asserted in the Amended Complaint.

## SIXTH AFFIRMATIVE DEFENSE

Allen's claims are barred, in whole or in part, to the extent that they fail to comply with applicable statute of limitations.

## SEVENTH AFFIRMATIVE DEFENSE

ReliaQuest asserts that Allen was, at all material times, an at-will employee of ReliaQuest and, therefore, Allen was subject to discharge at any time, with or without cause, so long as said action was not for an unlawful reason.

## EIGHTH AFFIRMATIVE DEFENSE

ReliaQuest, at all times, acted in good faith and with reasonable grounds for believing that any actions taken with regard to Allen complied with all applicable state and federal anti-discrimination and anti-retaliation statutes.

## NINTH AFFIRMATIVE DEFENSE

At all times relevant hereto, ReliaQuest had specific policies against unlawful discrimination in the work place, and such policies were well-known to ReliaQuest's employees, including Allen.  Allen failed to comply with those policies and did not report the alleged discriminatory action to ReliaQuest in accordance with those policies.

## TENTH AFFIRMATIVE DEFENSE

If any allegations of unlawful conduct were found to be true, ReliaQuest's employees acted on their own, in violation of ReliaQuest's strict policies prohibiting such conduct, and acted outside the scope of their employment.

## ELEVENTH AFFIRMATIVE DEFENSE

ReliaQuest made good-faith efforts to comply with the law and should not be liable for any discriminatory or retaliatory acts by its employees, whether managerial or not.

## TWELFTH AFFIRMATIVE DEFENSE

Allen's alleged damages, if any, are too speculative to permit recovery.

## THIRTEENTH AFFIRMATIVE DEFENSE

To the extent that Allen seeks an award of punitive damages, Allen's Amended Complaint fails to allege facts sufficient to support a claim upon which punitive damages may be granted.  Any actions taken by ReliaQuest regarding Allen were taken in good faith, in accordance with ReliaQuest's internal policies, and not taken intentionally, recklessly, or with gross negligence.  ReliaQuest's good-faith efforts to prevent discrimination and retaliation bars an award of such damages.

## FOURTEENTH AFFIRMATIVE DEFENSE

The Amended Complaint fails to state a claim upon which an award of attorneys' fees and costs may be granted.

## FIFTEENTH AFFIRMATIVE DEFENSE

The Amended Complaint, and every purported claim alleged therein, is barred because any recovery from ReliaQuest would result in Plaintiff's unjust enrichment.

## SIXTEENTH AFFIRMATIVE DEFENSE

ReliaQuest denies every allegation in the Amended Complaint that ReliaQuest has not specifically admitted and demands strict proof thereof with respect to all allegations.

## SEVENTEENTH AFFIRMATIVE DEFENSE

Allen's claims for fraud and misrepresentation fail as a matter of law because the purported statements made by ReliaQuest that are the basis of such claims were not statements of material fact, but rather a recitation of the clear and unambiguous terms of the Severance Agreement presented to him, which he executed knowingly and voluntarily.

## EIGHTEENTH AFFIRMATIVE DEFENSE

Allen's claims for fraud and misrepresentation fail as a matter of law because the purported statements made by ReliaQuest in the Amended Complaint, which are disputed, but if they were true, were not relied upon and could not be statements that were reasonably or unreasonably relied upon by Allen given the adversarial nature of their relationship, the facts and circumstances surrounding the basis for his termination of employment, and the clear and unambiguous terms of the Severance Agreement presented to him, which he knowingly and voluntarily executed after being given sufficient time with such agreement.

## NINETEENTH AFFIRMATIVE DEFENSE

Allen's claims for fraud and misrepresentation fail as a matter of law because the purported statements made by ReliaQuest that are the basis of such claims were actually true and not intended to, nor reasonably or unreasonably known to be false. Because the statements by ReliaQuest's agents were a correct recitation of applicable law and the clear and unambiguous terms of the Severance Agreement presented to him, which he executed knowingly and voluntarily, such claims all fail.

## TWENTY AFFIRMATIVE DEFENSE

Allen's claims for rescission based on mutual mistake are improper because there was no mistake of material fact, there is no mistake on ReliaQuest's part, any such alleged mistake was caused by Allen's lack of diligence and lack of prudence in connection with his negotiation, review and execution of the Severance Agreement, and Allen has completely failed and refused to take any action(s) to rescind such Severance Agreement or otherwise deny the agreement as being binding upon him, other than asserting the claims in this lawsuit, including but not limited to, tendering or seeking to return to ReliaQuest the compensation he received from its execution.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

Allen's claims for rescission based on unilateral mistake are improper because there is no mistake, any such alleged mistake was unreasonable and a convenient litigation position that was really caused by Allen's lack of diligence and lack of

prudence in connection with his negotiation, review and execution of the Severance Agreement, and ReliaQuest has changed its position in reliance on the agreement, by issuing Allen the compensation he received from its execution.

## TWENTY-SECOND AFFIRMATIVE DEFENSE

Allen's claims, including hi equitable claims seeking rescission, the existence of which are expressly denied, are barred by his own unclean hands and wrongful conduct including, but not limited to, asserting spurious claims that were released by the Severance Agreement and by improperly retaining, and continuing to retain, ReliaQuest's funds as asserted in ReliaQuest's counterclaims despite seeking rescission.

## TWENTY-THIRD AFFIRMATIVE DEFENSE

To the extent any valid damages were incurred as a result of the claims in the Amended complaint, which ReliaQuest vehemently disputes, Allen has failed to mitigate any such damages and any such damages should be setoff for the amounts Allen owes to ReliaQuest as alleged in its counterclaim.

## TWENTY-FOURTH AFFIRMATIVE DEFENSE

To the extent Allen seeks non-monetary relief, any such relief is precluded because he has an adequate remedy at law.

## TWENTY-FIFTH AFFIRMATIVE DEFENSE

To the extent Allen relies upon negligence principles to assert his amended claims, Allen is greater than fifty percent (50%) at fault for the damages being claimed and, as a result, is precluded from any recovery of damages under Chapter 768 Florida Statutes.

### TWENTY-SIXTH AFFIRMATIVE DEFENSE

To the extent Allen relies upon negligence principles to assert his amended claims, Allen recovery of any damages, assuming he is less than fifty percent (50%) at fault, should be reduced by his percentage of fault pursuant to Chapter 768 Florida Statutes.

### RESERVATION OF DEFENSES

ReliaQuest has not knowingly or intentionally waived any applicable affirmative defenses and reserves the right to assert and rely on such other applicable defenses, including, but not limited to, inequitable conduct, as may become available or apparent as facts become known through discovery.  ReliaQuest reserves the right to amend or supplement its defenses and Counterclaims when and if appropriate after an opportunity for investigation and discovery.

## AMENDED COUNTERCLAIMS

Allen (the "Counter-Defendant") has filed the Complaint, and then an Amended Complaint, seeking relief on various employment and discrimination based claims, in brazen disregard of a severance agreement and release he knowingly and voluntarily signed, which release was unambiguous as a matter of law, as found by this Court's recent August 1, 2024, Order.  Because the release is unambiguous as a matter of law, per the Court's August 1 Order, Allen's newly added counts of unilateral mistake, mutual mistake, and fraud in the inducement also fail as a matter of law:  there can be no mistake by either party, nor fraud in the inducement, when the Severance Agreement is unambiguous as a matter of law.

After knowingly and voluntarily executing the unambiguous Severance Agreement, Allen collected, and retains, a generous severance payment from ReliaQuest.  He then turned around and filed claims that he released, knowing he had released them, and in his Amended Complaint, added entirely frivolous claims of unilateral mistake, mutual mistake, and fraud in the inducement, which fail as a matter of law, and as a factual matter, because Allen knowingly and voluntarily signed an unambiguous severance agreement that released all claims against ReliaQuest relating to his employment or termination.

Not only has Allen harmed ReliaQuest by causing it to incur legal fees and costs in responding to released claims, but he has harmed ReliaQuest's because he

made knowingly false, salacious, and outrageous allegations against ReliaQuest, including alleging that it is a racist and discriminatory employer who, *inter alia*, discriminates against employees and then fraudulently induces them to sign releases.

Counter-Defendant was not the victim of any discrimination or hostile work environment, and even if he was, which he was not, such claims were released in consideration for good and valuable severance pay to which he was not otherwise entitled.  He did not report any discrimination and was not terminated for reporting any discrimination while an employee of ReliaQuest.   Instead, ReliaQuest terminated Counter-Defendant because he failed to perform his job duties with the requisite skill and care, and—despite being on notice that he needed to improve and being given ample support and opportunity to do so—he continued to perform far below expectations.  ReliaQuest had no choice but to terminate Counter-Defendant to protect its business from further damage and disruption from Counter-Defendant's substantial performance deficiencies.

Despite Counter-Defendant's subpar performance and short tenure of five months, ReliaQuest offered him a severance payment in consideration for a standard release of claims in a Severance Agreement and General Release, which Counter-Defendant signed on April 4, 2022 (the "Severance Agreement").  ReliaQuest did not in any way pressure Counter-Defendant to sign this proposed agreement.  He agreed in it that he had the opportunity to consult with an attorney, which he also

admits in this Amended Complaint.  Ultimately, after the passage of two weeks and negotiation of the terms, Counter-Defendant signed the agreement, and ReliaQuest paid him the equivalent of four-weeks' salary.[2]  Counter-Defendant accepted the funds paid by ReliaQuest under the Severance Agreement and retains them to this date with no attempt to return or tender such funds to ReliaQuest.

Despite collecting this payment, Counter-Defendant ignored the release provision in the Severance Agreement, found by this Court to preclude the majority of Allen's claims, and filed a multi-count suit against ReliaQuest in this Court. Counter-Defendant's suit, in and of itself, is a material breach and repudiation of the Severance Agreement.  He must return the severance payment given that he has plead that the Severance Agreement is invalid, induced by fraud, and/or subject to rescission.    Additionally,  Counter-Defendant  and  his  counsel  have  caused ReliaQuest to incur substantial legal fees and costs in responding to the Complaint and Amended Complaint.  Counter-Defendant and his counsel were aware of the Severance Agreement prior to filing and have been aware of controlling Eleventh Circuit and Florida law that upholds the validity of the Severance Agreement since at least April 14, 2023, when ReliaQuest's counsel informed him of it. ReliaQuest's counsel repeatedly reminded Counter-Defendant's counsel of this fact, including in

---

[2] This Counterclaim omits references to the amount paid to Counter-Defendant by ReliaQuest pursuant to the Severance Agreement to protect sensitive salary and payment information. Accordingly, the Severance Agreement, attached as Exhibit A, has been redacted in relevant parts.

an April 21, 2023 letter. Counter-Defendant and his counsel have ignored ReliaQuest's warnings that Counter-Defendant's filing violates the Severance Agreement, explanations that it is false and without factual and legal basis, and requests that they dismiss the action before ReliaQuest is damaged any further.  In addition to legal fees and costs, Counter-Defendant's released and frivolous claims have caused and will continue to cause significant damage to ReliaQuest's reputation, goodwill, and ability to hire and retain employees, all of which are of utmost important to ReliaQuest's mission.  This amended counterclaim action seeks to recover these damages arising from Counter-Defendant's pursuit of the Action and his continued actions in proceeding with claims in violation of the Severance Agreement.

For these reasons, Counter-Plaintiff, ReliaQuest ("Counter-Plaintiff"), by and through the undersigned counsel, incorporates its answer and affirmative defense to the Amended Complaint as set forth above, and brings these amended counterclaims (the "Counterclaims") against Counter-Defendant (Counter-Defendant, together with Counter-Plaintiff, the "Parties") as follows:

## THE PARTIES

1.     Counter-Plaintiff is a limited liability company organized and existing under the laws of Florida, with its principal place of business at 1001 Water Street, Suite 1900, Tampa, FL 33602.

2.      Based on Counter-Defendant's allegations in the Complaint and Amended Complaint, Counter-Plaintiff is informed and believes that Counter-Defendant, an individual, resides in the Middle District of Florida.

## JURISDICTION AND VENUE

3.      This Court has supplemental jurisdiction over these Counterclaims pursuant to 28 U.S.C. § 1367(a) as ReliaQuest's counterclaims are so related to the primary claims in Counter-Defendant's Amended Complaint that they form part of the same case or controversy under Article III of the United States Constitution.

4.      Counter-Defendant has chosen this venue to bring its claim against ReliaQuest.  Venue is proper in this judicial district for these Counterclaims under 28 U.S.C. § 1391 as Counter-Defendant, in the Complaint and Amended Complaint, names this district as his place of residency and a substantial part of the events giving rise to these Counterclaims occurred in this district.

5.      This Court has personal jurisdiction over Counter-Defendant as Counter-Defendant chose to avail himself of this forum by filing the Complaint and Amended Complaint here and, upon information and belief, resides within this jurisdiction.

## FACTUAL BACKGROUND

## A.  Counter-Defendant's Employment at ReliaQuest

6.    Counter-Defendant applied to work at ReliaQuest in or around August 2021.

7.    Counter-Defendant provided ReliaQuest with a copy of Counter-Defendant's resume, a copy of which is attached hereto as Exhibit A and incorporated by reference as if fully restated herein,  and underwent interviews with ReliaQuest.

8.    Counter-Defendant holds a bachelor's degree from Clemson University.

9.    Counter-Defendant holds a master's degree from the University of Rochester.

10.    Counter-Defendant had approximately six years of workplace experience.

11.    ReliaQuest employed Counter-Defendant as a Detection Architect from November 1, 2021, to March 21, 2022.

12.    Counter-Defendant signed an employment agreement on October 21, 2022 (the "Employment Agreement").

13.    Counter-Defendant was, at all times, an at-will employee of ReliaQuest.

**B. Termination of Counter-Defendant's Employment**

14.     Five months into his employment, ReliaQuest terminated Counter-Defendant's at-will employment.

15.     ReliaQuest terminated Counter-Defendant because of the significant and unremedied, material deficiencies in his job performance.

16.     Counter-Defendant repeatedly failed to meet ReliaQuest's expectations for his role, including, but not limited to:

a) Counter-Defendant did not communicate with clients at a level of professionalism acceptable to ReliaQuest.

b) Counter-Defendant's supervisor spoke to Counter-Defendant about his unprofessional email communications and outlined expectations.

c) Even after this conversation, Counter-Defendant's email communications still failed to meet ReliaQuest's expectations.

d) During a client meeting, Counter-Defendant failed to present his portion of the presentation, despite having received coaching on this portion before the meeting.

e) During that same client meeting, the client commented on Counter-Defendant's silence.

f) Counter-Defendant refused to perform job duties.  He refused to make minor and reasonable changes requested by a client to a client's content deployment process.

g) Counter-Defendant's supervisor spoke to him about his inadequate work product and outlined expectations.

17.   The level of Counter-Defendant's work product and email communications were significantly below ReliaQuest's reasonable and justified expectations for an employee, which demanded that ReliaQuest terminate Counter-Defendant's employment, as it would have done with any other employee whose lack of skills and inadequate performance were threatening its business and client relationships.

## C. The Negotiation of the Severance Agreement and General Release

18.   In connection with Counter-Defendant's termination, the Parties negotiated the execution of a severance and release agreement.

19.   ReliaQuest shared a proposed draft of the Severance Agreement with Counter-Defendant on March 21, 2022.

20.   As part of the negotiations, Counter-Defendant reviewed the proposed Severance Agreement.

21.   As part of the negotiations, Counter-Defendant asked ReliaQuest to make certain changes to the language and terms of the agreement.

22.   ReliaQuest complied with Counter-Defendant's request.

23.     On April 4, 2022, two weeks after ReliaQuest delivered the original draft of the Severance Agreement, Counter-Defendant signed the Severance Agreement.

24.     A true and accurate copy of the Severance Agreement is already in the record.   In accordance with Rule 10 of the Federal Rules of Civil Procedure, ReliaQuest incorporates by reference the entire Severance Agreement as if pleaded herein in its entirety.

25.     At no point did ReliaQuest pressure Counter-Defendant to sign the Severance Agreement.   ReliaQuest specifically encouraged Counter-Defendant to review it, including by seeking and obtaining help from an attorney.

26.     Counter-Defendant agreed that he had the opportunity to consult with an attorney.

27.     Section 7 of the Severance Agreement includes an acknowledgment that Counter-Defendant "has relied on or had the opportunity to rely upon advice of counsel of Employee's choosing or has been given an opportunity to review it with counsel and [has] chosen not to do so."  Exhibit A to the Counterclaim.

**D. The Severance Agreement and General Release**

28.     The Severance Agreement provided to Counter-Defendant the payment of money and other benefits to which he otherwise was not entitled, as consideration for entering into the Severance Agreement.

29.    Specifically, Section 2 provided that:

SEVERANCE. In exchange for Employee signing this Severance Agreement, ReliaQuest will pay a severance payment in the gross amount of [ *redacted* ], less any applicable withholdings, deductions, and taxes, which will be broken up and paid out over two (2) payroll periods in accordance with ReliaQuest's standard payroll process (the "Severance Payment"). Employee acknowledges that Employee is not already entitled to this Severance Payment. Employee further acknowledges that the Severance Payment will not be made to Employee until ReliaQuest has received this fully executed Agreement from Employee and all company property described in Paragraph 3 below has been received by ReliaQuest from Employee.

30.    In consideration for ReliaQuest's payment equivalent to four-weeks' salary, Counter-Defendant agreed to a broad release in Section 6, which reads as follow:

RELEASE. In exchange for the consideration referred to in this Agreement, Employee hereby releases and forever discharges ReliaQuest from any and all claims, actions, demands, and causes of action in law or in equity which Employee may have had, or may now have against ReliaQuest, including but not limited to any and all claims which are based on or in any way related to his or her employment with ReliaQuest or the termination of that employment. This waiver and release specifically excludes matter that may not be released by law, including Employee's right to pursue certain claims and relief with the Equal Employment Opportunity Commission, the National Labor Relations Board, and the Security & Exchange Commission.

31.     By signing the Severance Agreement, Counter-Defendant thus agreed, in consideration for a payment equivalent to four-weeks' salary (the "Severance Payment") to release and forever discharge ReliaQuest from actions, demands, and causes of action in law or in equity of any kind or nature, including any and all claims related to his employment with ReliaQuest or its termination (the "Release").

32.     Counter-Defendant knew he was releasing ReliaQuest from all claims for damages.

33.     Counter-Defendant knew he was releasing ReliaQuest from all claims related to his employment with ReliaQuest or termination from ReliaQuest.

34.     Counter-Defendant was aware, prior to filing the Amended Complaint, that the EEOC's "Right to Sue" letter does not nullify a valid release.

35.     Counter-Defendant was aware, prior to filing the Amended Complaint, that "Right to Sue" letters are issued at the conclusion of every EEOC investigation regardless of the merits.

36.     Counter-Defendant was aware, prior to filing the Amended Complaint, that "Right to Sue" letters are issued regardless of the existence of a valid release, waiver, or the merits of any potential lawsuit.

37.     Counter-Defendant was aware, prior to filing the Amended Complaint, and that the "Right to Sue" letter issued by the EEOC to Counter-Defendant did not, in and of itself, override the Severance Agreement's Release.

**E. The Severance Payment**

38.     ReliaQuest paid to Counter-Defendant's designated bank account the Severance Payment in accordance with Section 2 of the Severance Agreement.

39.     Counter-Defendant received and accepted the Severance Payment in funds.

40.     Counter-Defendant has never revoked his acceptance of the terms of the Severance Agreement and has retained the Severance Payment and other benefits that he received from ReliaQuest under the Severance Agreement.  Further, Counter-Defendant has not sought to return or offered to return or tender the payment received.

**F. Counter-Defendant's Complaint**

41.     Counter-Defendant then filed a complaint, bare bones and without merit, with the Equal Employment Opportunity Commission (the "EEOC").

42.     The EEOC took a mere one day to close out the matter and issue a standard Right to Sue letter, which it issues regardless of the merits of the claim and without consideration of any release or severance agreement to which the complainant may be subject and which may bar the complainant from suing a former employer.

43.     Nearly three months later, on April 12, 2023, more than a year after the end of his employment with ReliaQuest, Counter-Defendant filed this action against ReliaQuest in this Court (the "Action").

44.     However, Counter-Defendant had already fully released and discharged ReliaQuest of all the claims and counts in the Complaint as set forth in the Severance Agreement and as found by this Courts' ruling on August 1, 2024.

45.     Counter-Defendant was fully aware and actually knew that he had released the claims in the Complaint by signing the Severance Agreement.

46.     Counsel for ReliaQuest reminded Counter-Defendant and his counsel about the existence of the Release as follows:

a) On April 14, 2023, during a telephone conference with Counter-Defendant's counsel, ReliaQuest's counsel explained that Counter-Defendant had released the claims in the Complaint as part of the Severance Agreement and requested that Counter-Defendant's counsel withdraw the Complaint immediately.

b) Counter-Defendant's attorney admitted to having seen the Severance Agreement.

c) Counter-Defendant's attorney did not dispute that the Severance Agreement was otherwise valid and enforceable and this Action was within the scope of the Release.

d) During a subsequent telephone conference on April 18, 2023, Counter-Defendant's counsel informed ReliaQuest's counsel that his theory that the Release was invalid was based only on Counter-Defendant not having had an attorney review the Severance Agreement.

e) ReliaQuest's counsel explained on this call that the lack of a review by an attorney is not a valid basis for nullifying a severance agreement, and that the law generally upholds releases in severance agreements so long as the employee had an opportunity to review it with a counsel.

f) Counter-Defendant's attorney did not dispute that this reflects existing law, nor did he deny that Counter-Defendant only signed the Severance Agreement two weeks after initial receipt, during which time he could have obtained counsel to review it.

47.     Counter-Defendant has no valid basis for evading the terms of the Release and filing and continuing with the Action.

48.     Counter-Defendant's filing of the Action materially breached the Severance Agreement.

## G. Counter-Defendant's False Claims and Failure to Report

49.     In the Complaint and Amended Complaint, Counter-Defendant alleges that ReliaQuest has committed certain adverse employment actions against Counter-Defendant during his employment at ReliaQuest, which are no longer relevant given

this Court's August 1, 2024, ruling.  Yet, Counter-Defendant, made and continued to assert these allegations knowing them to be false, without legal merit, and covered by the Release in the Severance Agreement.

50.    ReliaQuest terminated Counter-Defendant's employment because of Counter-Defendant's significant and unremedied underperformance and inability to perform basic job duties with the requisite skill and knowledge, leading to loss of customer confidence.

51.    ReliaQuest has implemented a reporting mechanism and support structure as part of its harassment policy, which all of ReliaQuest's employees have access to through the employee handbook (the "Handbook").

52.    Counter-Defendant did not avail himself of ReliaQuest's many available means of reporting any instances of harassing conduct or concerning incidents, and did not follow ReliaQuest's company policy and Handbook regarding reporting any such alleged conduct to management, as set out in the Handbook.

53.    As Counter-Defendant set out in his complaint with the EEOC, Counter-Defendant only voiced his complaint about the purportedly "racially charged" meme in the form of a comment in a group chat during a team meeting. Counter-Defendant alleged in his EEOC charge that his comment consisted merely of the question "Is this what this company is about?".

**H. Damages Caused to ReliaQuest by Counter-Defendant's Breach**

54.     Counter-Defendant's material breach has caused harm to ReliaQuest's reputation, goodwill, and ability to hire and retain employees, all of which are of utmost importance to ReliaQuest's mission.

55.     ReliaQuest takes its diversity and inclusion very seriously.  ReliaQuest, as a growing Tampa company, has set up internal structures and policies—from in-house counsel, a dedicated Human Resources team, to a strict harassment policy and associated training—to ensure that it upholds its commitment to being an equal employment provider.

56.     ReliaQuest's commitment to diversity and inclusion is important to its customer and investor relationships, its ability to recruit and retain the best talent, and its overall success.  Its people are key to its mission.  Counter-Defendant has, without basis and falsely attacked this core principle and the overall culture of ReliaQuest.

57.     Counter-Defendant's filing and continuation of this Action were done in bad faith.

58.     Counter-Defendant's filing and continuation of this Action has caused and will continue to cause damage to ReliaQuest in the form of attorneys' fees, costs, loss of reputation and goodwill (including its ability to hire and retain employees, damage to customers and investors, and public relations and perception), and loss of the Severance Payment and interest on said payment.

## COUNT I
## Breach of Section 6 of the Severance Agreement

59.     ReliaQuest incorporates and realleges Paragraphs 1 to 58 of its Counterclaims as if fully set forth herein.

60.     The Severance Agreement is a valid, binding, and enforceable contract.

61.     ReliaQuest performed all of its obligations under the Severance Agreement, including payment to Counter-Defendant equivalent to four-weeks' salary in severance benefits in accordance with the terms of the Severance Agreement.

62.     Counter-Defendant has materially breached Section 6 of the Severance Agreement by pursuing this Action against ReliaQuest despite having validly released and discharged those claims in the Severance Agreement.

63.     By signing and agreeing to be bound by the Severance Agreement, Counter-Defendant released and discharged ReliaQuest from "any and all claims, actions, demands, and causes of action in law or in equity which Employee may have had, or may now have against ReliaQuest."

64.     As further stipulated by Section 6 of the Severance Agreement, this Release captures "claims which are based on or in any way related to his [] employment with ReliaQuest or the termination of that employment."

65.     This is a standard release in employment severance agreements.

66.     Counter-Defendant's claims asserted against ReliaQuest in this Action are based on alleged adverse actions by ReliaQuest, in its role as former employer of the Counter-Defendant, during Counter-Defendant's employment with ReliaQuest.

67.     Thus, the underlying basis for Counter-Defendant's claims, as asserted in the Complaint, is within the scope of the Release that Counter-Defendant agreed to by signing the Severance Agreement and accepting the agreed-upon Severance Payment.   This Court has confirmed such fact via its August 1, 2024, ruling. Accordingly, by asserting and continuing to proceed with his claims against ReliaQuest in this Action, Counter-Defendant has materially breached and continues to breach the Severance Agreement.

68.     The issuance of a Right to Sue letter after filing an EEOC action does not nullify a valid contractual release.   The EEOC issues such a letter upon concluding its investigation.   The EEOC issues such a letter whether or not the claim has any merit.   Nor does the EEOC consider whether the complainant released the claim.

69.     As a result of Counter-Defendant's material breach of the Severance Agreement, ReliaQuest has been damaged in the amount of the Severance Payment paid to Counter-Defendant, plus loss of interest, for which it did not receive the promised benefits under the Severance Agreement.

70.     Furthermore, Counter-Defendant's breach of the Severance Agreement has caused ReliaQuest significant additional damages.  Not only is ReliaQuest's commitment to diversity and inclusion one of ethics and morality, but this commitment is critical to ReliaQuest's ability to hire and retain employees, attract and retain customers and investors.  Counter-Defendant has falsely attacked this commitment in a publicly available filing, which investors and others are certain to find and identify in diligence, causing ReliaQuest additional and ongoing economic harm.  As a result, ReliaQuest has suffered significant damages, and will continue to do so, including but not limited to monetary damages, damages to its reputation and goodwill, and attorneys' fees and costs incurred in defending against this matter, in an amount to be established at trial.

71.     ReliaQuest is entitled to the repayment of the consideration paid to Counter-Defendant under the Severance Agreement, and is entitled to the recovery of all damages, reasonable attorney's fees, and costs incurred relating to this Action.

## COUNT II
## Breach of the Implied Covenant of Good Faith and Fair Dealing

72.     ReliaQuest incorporates and realleges Paragraphs 1 to 71 of its Counterclaims as if fully set forth herein.

73.     ReliaQuest and Counter-Defendant executed the Severance Agreement in Tampa, Florida, the place of Counter-Defendant's residence and the ReliaQuest offices at issue.

74.    Pursuant to the Severance Agreement, Counter-Defendant agreed to release and discharge ReliaQuest from all claims, actions, demands, and causes of action in law or in equity which Counter-Defendant may have had, or may now have against ReliaQuest in consideration for the Severance Payment.

75.    Florida law governs both the Employment Agreement and Severance Agreement.

76.    "In Florida, every contract contains an implied covenant of good faith and fair dealing, which requires the parties to 'follow standards of good faith and fair dealing designed to protect the parties' reasonable contractual expectations.'" *Focus Mgmt. Grp. USA v. King*, 171 F. Supp. 3d 1291, 1299-300 (M.D. Fla. 2016).

77.    A breach of the implied covenant of good faith and fair dealing "attaches to the performance of a specific contractual obligation." *Id*. at 1300.  Here, such a specific contractual obligation exists: Counter-Defendant released all claims against ReliaQuest within the scope of Section 6 of the Severance Agreement in consideration for the Severance Payment.  The purpose of the Release was to avoid future litigation.  Counter-Defendant owed ReliaQuest a duty to comply with these obligations in good faith to protect ReliaQuest's reasonable expectations of an amicable termination, as explicitly recognized in the Severance Agreement's introduction.

78.     After the Parties entered into the Severance Agreement, ReliaQuest performed all of its obligations under the Severance Agreement, including payment to Counter-Defendant of the Severance Payment.

79.     Counter-Defendant, in breach of the express language of Section 6 of the Severance Agreement, commenced this Action.

80.     The breach occurred in Florida.

81.     Counter-Defendant filed the Complaint and Amended Complaint in knowing disregard of the fact that he had released the Action in the Severance Agreement.

82.     Counter-Defendant was reminded by counsel for ReliaQuest of the terms of the Severance Agreements on several occasions, including:

a) Counsel for ReliaQuest mentioned the existence of the Severance Agreement in a phone call on April 14, 2023.

b) In response, Counter-Defendant's counsel himself admitted to being aware and having seen the Severance Agreement.

c) During the call on April 14, 2023, Counter-Defendant's counsel furthermore acknowledged that the Release would cover this Action.

d) ReliaQuest's counsel reiterated that the Complaint was barred due to the Release in a call on April 18, 2023.

e) During the call on April 18, 2023, Counter-Defendant's counsel informed ReliaQuest's counsel of his theory that Counter-Defendant had not knowingly and intentionally signed the Severance Agreement as Counter-Defendant allegedly did not have an attorney review the Severance Agreement.

f) Counter-Defendant's counsel stated that this was the only basis for his theory that the Release was not enforceable.

g) ReliaQuest's counsel in response explained on this call that the lack of a review of a release by an attorney does not invalidate it. ReliaQuest's counsel also pointed out that the Florida law generally upholds a release so long as the employee had an opportunity to review with a counsel.

h) Counter-Defendant's counsel did not dispute that this was the law, nor that Counter-Defendant had had ample opportunity to have an attorney review the Severance Agreement before he executed it.

83. Counter-Defendant ignored ReliaQuest's repeated reminders that Counter-Defendant brought this Action in violation of the Release.

84. Counter-Defendant knew that the claims alleged in the Complaint are baseless and was reminded of the same by ReliaQuest's counsel.

85.     Yet Counter-Defendant and its counsel have refused to dismiss the Complaint and/or Amended Complaint.

86.     To date, Counter-Defendant continues to hold in his possession the Severance Payment that ReliaQuest paid to him as consideration for his promises in the Severance Agreement.

87.     Counter-Defendant does not mention the Parties' Severance Agreement in the Complaint, nor did he include it as an exhibit, further evidencing that he was proceeding in bad faith by bringing the Action against ReliaQuest in breach of the Severance Agreement and concealing fundamental facts of the dispute from this Court.

88.     Counter-Defendant is bringing this Action in bad faith in an attempt to extract further payments from ReliaQuest.

89.     Counter-Defendant, by bringing this Action in disregard of having released such a claim in return for the generous Severance Payment, unfairly interfered with ReliaQuest's reasonable contractual expectations under the Severance Agreement and violated the covenant of good faith and fair dealing implied by Florida law in the Severance Agreement.

90.     Counter-Defendant's breach of its implied duty of good faith and fair dealing by filing and maintaining this Action has damaged ReliaQuest in an amount to be determined at trial.

**COUNT III**
**Unjust Enrichment**

91.    ReliaQuest incorporates and realleges Paragraphs 1 to 91 of its Counterclaims as if fully set forth herein.

92.    As an alternative claim to ReliaQuest's breach of contract claim, should the Court find that the Severance Agreement is unenforceable, Counter-Defendant will be unjustly enriched if he is allowed to escape his obligations under the Severance Agreement while retaining the Severance Payment and other benefits received from ReliaQuest in its performance under the Severance Agreement.

93.    ReliaQuest conferred a benefit on Counter-Defendant via payment of the Severance Payment.

94.    Counter-Defendant voluntarily accepted and retained such funds.

95.    Circumstances are such that it would be inequitable for Counter-Defendant to retain the benefit of the Severance Payment, if the Severance Agreement were determined to be unenforceable, without paying back the value thereof to ReliaQuest.

**PRAYER FOR RELIEF**

**WHEREFORE**, ReliaQuest respectfully requests that the Court:

1. Order that Plaintiff / Counter-Defendant take nothing by this Action;

2. Dismiss Plaintiff's Amended Complaint against ReliaQuest and any claims therein in their entirety with prejudice;

3.  Order that judgment on the Answer and Amended Counterclaims be entered in ReliaQuest's favor;

4.  Order restitution of the full amount of the Severance Payment made by ReliaQuest to Plaintiff / Counter-Defendant pursuant to the Severance Agreement or its unjust enrichment claim; and

5.  Grant ReliaQuest an award of damages in an amount to be determined;

6.  Grant ReliaQuest an award of its attorneys' fees and costs incurred in this Action;

7.  Award ReliaQuest such other and further relief as this Court may deem appropriate.

Dated: August 16, 2024.

Respectfully submitted,

/s/ Dean A. Kent
Dean A. Kent
Florida Bar No. 307040
Email: dak@trenam.com/ ac@trenam.com
Richard Hanchett
Florida Bar No. 709212
rhanchett@trenam.com/ ac@trenam.com
**TRENAM LAW**
101 East Kennedy Blvd.
Suite 2700
Tampa, Florida 33602-5150
Tel: (813) 223-7474
Fax: (813) 229-6553

Steven J. Pacini (*pro hac vice*)
**Latham & Watkins LLP**

200 Clarendon Street, 27th Floor
Boston, Massachusetts 02116
Tel: (617) 948-6000
Fax: (617) 948-6001
Email: steven.pacini@lw.com
*Attorneys for ReliaQuest, LLC*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that the forgoing Reliaquest, LLC'S Answer and Affirmative Defenses to Amended Complaint (Doc. 32) and Amended Counterclaims has been furnished to all counsel of record via CM/ECF on August 16, 2024

/s/    *Dean A. Kent*
Attorney