UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

AARON ALLEN,

    Plaintiff,

v.                                      Case No. 8:23-cv-0806-KKM-AEP

RELIAQUEST, LLC,

    Defendant.
_____

## ORDER

Aaron Allen sues ReliaQuest for events that occurred while he was employed by ReliaQuest. He brings various employment discrimination and contract claims. Am. Compl. (Doc. 32). ReliaQuest moves for summary judgment on each of Allen's claims, MSJ (Doc. 59), and Allen responds, Resp. (Doc. 61). For the reasons below, I grant the motion.

## I. BACKGROUND[1]

Aaron Allen "is a Native American and African-American male." Am.

---

[1] Because Allen's amended complaint is sworn, the allegations are evidence for purposes of this motion. *See Sears v. Roberts*, 922 F.3d 1199, 1206 (11th Cir. 2019) (explaining that the district court erred when it did not consider the plaintiff's verified complaint as evidence when deciding the defendant's motion for summary judgment). ReliaQuest does not dispute the facts as represented in the background.

Compl. ¶ 10. Allen began working for ReliaQuest in November 2021 "as a Detection Architect as part of their Detection Operations Team." *Id.* ¶ 16. Allen was terminated on March 21, 2022. *Id.* ¶ 19. The same day, ReliaQuest presented Allen with a severance agreement. *Id.* ¶ 27; Severance Agreement (Doc. 13-1) (Sev. Agr.).

The agreement contains a release provision that "[i]n exchange for the consideration" in the agreement, Allen "hereby releases and forever discharges ReliaQuest from any and all claims, actions, demands, and causes of action . . . which [Allen] may have had, or may now have against ReliaQuest." Sev. Agr. ¶ 6. The release expressly allows for "certain claims and relief with the Equal Employment Opportunity Commission, the National Labor Relations Board, and the Security & Exchange Commission." *Id.* The word "covenant" appeared elsewhere in the agreement and ReliaQuest acquiesced with Allen's request to remove it, as Allen believed it went "against his religious beliefs." Am Compl. ¶ 28; *see generally* Sev. Agr. (omitting the word "covenant").

Before signing the agreement, Allen met with "Senior Vice President of Development and Engagement, Scott Noonan," and two other managers. Am. Compl. ¶ 30. Allen claims that Noonan explained to Allen that "by signing the

severance agreement, [Allen] would waive all claims against [ReliaQuest] except those protected by law such as racial discrimination claims which fell under EEOC [c]laims." *Id.* Specifically, Noonan told Allen that the waiver provision "does not apply to any federal claims[,] such as with the EEOC or other federal labor rights." *Id.* ¶ 31 (emphasis omitted). And Noonan told Allen to take seven days to review and sign the agreement. *Id.*

Despite multiple attempts to contact legal counsel, Allen did not speak with a retained attorney before signing the agreement on April 4, 2022. *Id.* ¶¶ 33–34. As justification for signing the agreement, Allen cites Noonan's representations. *Id.* ¶ 34. In exchange for signing the agreement, Allen received a "severance payment" and an additional month of healthcare benefits, and the agreement contained a provision that Allen acknowledged he was not already entitled to the payment. Sev. Agr. ¶¶ 1–2.

Following the signing of the agreement, Allen filed a claim with the EEOC, alleging discriminatory behavior by ReliaQuest. Am. Compl. ¶ 35. The EEOC then gave Allen a right to sue letter, (Doc. 32-1), and Allen sued ReliaQuest, asserting the following employment discrimination claims in his amended complaint: race discrimination in violation of Title VII (Counts I, III); race discrimination in

3

violation of the Florida Civil Rights Act (FCRA) (Counts II, V); race discrimination in violation of 42 U.S.C. § 1981 (IV); retaliation in violation of Title VII (Count VI); and religious discrimination in violation of Title VII (Count VII). *Id.* ¶¶ 37–81. Allen's amended complaint brings a negligent misrepresentation claim (Count IX) and the following contract claims, all based on Noonan's statement that Allen could sue after signing the agreement: fraud in the inducement (Count VIII); recission of severance agreement (mutual mistake) (Count X); and recission of severance agreement (unilateral mistake) (Count XI). *Id.* ¶¶ 82–127.

In July 2024, ReliaQuest moved to dismiss Allen's amended complaint based on the agreement's release clause. (Doc. 35). After converting it to a motion for summary judgment, (Doc. 44), the Court granted it in part and concluded that "the severance agreement contains a clear and unambiguous waiver of the claims Allen now asserts," Summ. J. Order (Doc. 47) (SJ Order) at 1. The Court declined to address whether Allen entered into the release knowingly and voluntarily. *Id.* at 1, 12. That issue is now briefed and ripe for resolution.

## II. LEGAL STANDARD

Summary judgment is appropriate if no genuine dispute of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P.

56(a). The moving party can show that no genuine dispute of material fact exists by showing "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *In re Optical Techs., Inc.*, 246 F.3d 1332, 1334 (11th Cir. 2001) (explaining that "summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law' " (quoting FED. R. CIV. P. 56(c))).

The party moving for summary judgment has the initial burden of showing the absence of a genuine issue of material fact. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). When deciding whether the movant has met this burden, "the court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the nonmoving party." *Id.* Once the movant's initial burden is met, the burden shifts to the nonmovant to "come forward with 'specific facts showing that there is a genuine issue for trial.' " *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the

5

[nonmovant]." *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1321 (11th Cir. 1999) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)).

## III.  ANALYSIS

ReliaQuest argues that they are entitled to summary judgment on Allen's claims for two main reasons. First, it contends that Allen is barred from bringing his employment discrimination claims because Allen entered into the agreement knowingly and voluntarily. Second, it argues that Allen's contract claims fail because his claims hinge on extrinsic evidence, which the parol evidence rule prohibits in the light of the unambiguous release. And even if the parol evidence rule does not bar all the contract claims, Allen cannot show that he justifiably relied on certain extrinsic evidence because the release is clear. I address each argument in turn.

### A. Allen Knowingly and Voluntarily Signed the Severance Agreement

"[A]n employee can waive his 'cause of action under Title VII as part of a voluntary settlement agreement' if 'the employee's consent to the settlement was voluntary and knowing.' " *Bledsoe v. Palm Beach Cnty. Soil & Water Conservation Dist.*, 133 F.3d 816, 819 (11th Cir. 1998) (quoting *Alexander v. Gardner–Denver*

*Co.*, 415 U.S. 36, 52 n.15 (1974)).[2] Such a waiver must be "closely scrutinized." *Puentes v. United Parcel Serv., Inc.*, 86 F.3d 196, 198 (11th Cir. 1996).

Courts look to the totality of the circumstances to determine whether a release was knowing and voluntary. *Id.* To do so, the following factors must be considered:

> [1] the plaintiff's education and business experience; [2] the amount of time the plaintiff considered the agreement before signing it; [3] the clarity of the agreement; [4] the plaintiff's opportunity to consult with an attorney; [5] the employer's encouragement or discouragement of consultation with an attorney; and [6] the consideration given in exchange for the waiver when compared with the benefits to which the employee was already entitled.

*Id.* (quoting *Beadle v. City of Tampa*, 42 F.3d 633, 635 (11th Cir. 1995)). "Evidence that the parties negotiated the conditions and consideration of a release supports a conclusion that the release, when executed later, was knowing and voluntary." *Myricks v. Fed. Reserve Bank of Atlanta*, 480 F.3d 1036, 1042 (11th Cir. 2007). And "claims of subjective misunderstanding, standing alone [do not] defeat an otherwise valid release." *Id.* (alteration in the original) (quoting *Pierce v. Atchison Topeka & Santa Fe Ry. Co.*, 110 F.3d 431, 442 (7th Cir. 1997)).

---

[2] Because "[t]he FCRA is patterned after Title VII," "federal case law on Title VII applies to FCRA claims." *Palm Beach Cnty. Sch. Bd. v. Wright*, 217 So. 3d 163, 165 (Fla. 4th DCA 2017) (en banc) (quoting *Guess v. City of Miramar*, 889 So. 2d 840, 849 n.2 (Fla. 4th DCA 2004)). Releases of claims under 42 U.S.C. § 1981 are also analyzed identically to releases under Title VII. *See Puentes v. United Parcel Serv., Inc.*, 86 F.3d 196, 198 (11th Cir. 1996).

The totality of the circumstances shows that Allen entered into the agreement knowingly and voluntarily. First, Allen had "approximately five years of management experience" at the time he signed the release, so he certainly would have familiarity with business-related contracts. Am. Compl. ¶ 25(c). Second, two weeks[3] to review the agreement was sufficient, especially in light of the fact that Allen requested during that time for ReliaQuest to remove certain wording, and ReliaQuest acquiesced. Am Compl. ¶¶ 28, 32–24; *see* Sev. Agr.; *see also Puentes*, 86 F.3d at 199 (citing *Mullen v. N.J. Steel Corp.*, 733 F. Supp. 1534, 1544–45 (D.N.J. 1990) (fourteen days to consider release supported finding that employee entered in to release knowingly and voluntarily)); *Myricks*, 480 F.3d at 1042 (explaining that evidence of negotiations about release conditions supports a finding of a knowing and voluntary waiver). Third, the release is clear and unambiguous. *See generally* SJ Order. Fourth, Allen had a sufficient opportunity to consult with an attorney (two weeks), and he in fact contacted several attorneys. Am. Compl. ¶ 33. Fifth, Allen received consideration in exchange for the release. In exchange for signing the agreement, Allen received a "severance payment" and an additional month of

---

[3] It is immaterial whether Noonan told Allen to take seven days to review and sign the agreement, Am. Compl. *id.* ¶ 31, because Allen took two weeks to review it, *id.* ¶¶ 33–34.

healthcare benefits. By signing the agreement, Allen acknowledged that he was not already entitled to the severance payment and healthcare benefits. Sev. Agr. ¶¶ 1–2; *Bacon v. Stiefel Lab'ys., Inc.*, No. 09-21871-CV-KLNG, 2011 WL 4944122, at *6 (S.D. Fla. Oct. 17, 2011) (finding sufficient consideration where employee received payment for signing a release and the release contained a provision acknowledging that the employee was not otherwise entitled to the payment).

The parties submit no facts suggesting that ReliaQuest either discouraged or encouraged Allen to consult with an attorney. As such, this factor neither supports nor negates that Allen signed the release knowingly and voluntarily. *See Dawson v. Miami-Dade County*, No. 07-20126 CIV, 2008 WL 1924266, at *18 (S.D. Fla. Mar. 11, 2008).

Allen does not dispute that the release is clear and that he received consideration in exchange for signing it, but he disputes the other factors. As to the amount of time that Allen had to consider the agreement, he vaguely argues that "there are no facts which support a determination of the time that [Allen] spent considering the agreement before signing it" and that "[t]his Court has held that 21 days not 14 days is sufficient time." Resp. at 4 (citing *Jones v. AT&T Umbrella Benefit Plan No. 1*, No. 3:15-CV-821-J-34JRK, 2018 WL 748870 (M.D. Fla. Jan.

9

10, 2018), *report and recommendation adopted*, No. 3:15-CV-821-J-34JRK, 2018 WL 746938 (M.D. Fla. Feb. 7, 2018)). To his first point, the inquiry centers around how much time the plaintiff had to consider the agreement, not how the plaintiff in fact used all of the time afforded. *See Puentes*, 86 F.3d at 198–99. And to Allen's second point, there is no "bright-line test for determining what is a sufficient amount of time," but looking at the totality of the circumstances, the factors cut in favor of concluding that the release was knowing and voluntary. *Id.* at 198.

Regarding education, Allen correctly notes that he never alleged in his verified complaint he had received certain degrees. Resp. at 2. ReliaQuest cites to only its unsworn answer as evidence of Allen's degrees. *Carr v. Tatangelo*, 338 F.3d 1259, 1273 n.26 (11th Cir. 2003) ("Unsworn statements . . . cannot be considered by a district court in ruling on a summary judgment motion."). But this is not a material distinction for purposes of the factor because the focus is whether Allen "is not educated enough to understand the [release]." *Myricks*, 480 F.3d at 1041. Allen produces no evidence to suggest that he could not understand the release, especially in the light of his own verified allegations of having five years of management experience and being "qualified to perform his job" at ReliaQuest. Am. Compl. ¶¶ 17, 25.

10

Allen lastly argues that a statement by Scott Noonan, ReliaQuest's Senior Vice President of Development and Engagement, should be construed as a discouragement from seeking counsel. Resp. at 4. Allen alleges that on the day ReliaQuest presented him with the Severance Agreement, Noonan informed Allen "that he could sue after he signed and executed the Severance Agreement." *Id.* (quoting Am. Compl. ¶ 34).

The record cuts against Allen's argument. First, the Severance Agreement contains a provision that Allen "has relied on, or had the opportunity to rely upon, advice of counsel of [Allen]'s choosing or has been given an opportunity to review it with counsel and have chosen not to do so." Sev. Agr. ¶ 7. Second, there is no evidence that ReliaQuest did or said anything to "impede [Allen]'s ability to consult with an attorney." *Puentes*, 86 F.3d at 199. Third, though Noonan's statement may have caused confusion on Allen's part, "claims of subjective misunderstanding, standing alone [do not] defeat an otherwise valid release," especially one that is clear and unambiguous as to its release of all future claims. *Myricks*, 480 F.3d at 1042 (alteration in the original) (quoting *Pierce*, 110 F.3d at 442). Lastly, Allen's sworn allegations contradict his argument now, as he alleges that he contacted several attorneys *after* Noonan's statement, which suggests that Noonan's comment did not

11

discourage Allen from seeking counsel. Am. Compl. ¶¶ 31–33.

Accordingly, no reasonable jury could conclude, based on the totality of the circumstances, that Allen did not sign the release agreement knowingly and voluntarily, and thus summary judgment in ReliaQuest's favor on Counts I–VII is warranted.

### B. Allen's Contract-Related Claims Fail as a Matter of Law

"The parol evidence rule bars claims arising out of prior extrinsic agreements, oral or written, which vary, alter, or modify the terms of a clear, unambiguous, and fully integrated document." *Ali R. Ghahramani, M.D., P.A. v. Pablo A. Guzman, M.D., P.A.*, 768 So. 2d 535, 537 (Fla. 4th DCA 2000). "[T]he law generally presumes that the parties, by making a writing on the subject, intended the writing to be the sole expositor of their agreement," and therefore "the party seeking to introduce parol evidence must establish that the document is ambiguous." *King v. Bray*, 867 So.2d 1224, 1226 (Fla. 5th DCA 2004).

This rule is not applicable, though, "when fraud enters into a transaction to the extent of inducing a written contract," *Tinker v. De Maria Porsche Audi, Inc.*, 459 So. 2d 487, 491 (Fla. 3d DCA 1984), or to show mutual mistake, *Providence Square Ass'n, Inc. v. Biancardi*, 507 So. 2d 1366, 1371 (Fla. 1987).

Because the parol evidence rule bars using extrinsic evidence to interpret the release provision, Allen's claim of recission of the severance agreement based on a unilateral mistake fails as a matter of law. Allen's contract claims hinge solely on Noonan's extracontractual statement. *See* Am. Compl. ¶¶ 85, 94, 103, 117. In order to introduce Noonan's statement as evidence of contractual meaning, Allen, as "the party seeking to introduce parol evidence[,] must establish that the document is ambiguous." *King*, 867 So.2d at 1226. Because the release is clear and unambiguous, the parol evidence rule bars using extrinsic evidence to interpret it. *See generally* SJ Order. It follows, then, that because Noonan's statement is Allen's only evidence of the agreement's meaning, he cannot establish the unilateral mistake claim.

The parol evidence rule does not bar consideration of extrinsic evidence for the fraud in the inducement claim, negligent misrepresentation claim, *Tinker*, 459 So. 2d at 491, or recission based on mutual mistake, *Providence Square Ass'n, Inc.*, 507 So. 2d at 1371. But those claims fail for other reasons.

"A mistake is mutual when the parties agree to one thing and then, due to either a scrivener's error or inadvertence, express something different in the written instrument." *Providence Square Ass'n, Inc.*, 507 So. 2d at 1372. The party seeking rescission of a contract must "show by clear and convincing evidence that a mistake

13

of fact occurred in the transaction." *Rosique v. Windley Cove, Ltd.*, 542 So. 2d 1014, 1015–16 (Fla. 3d DCA 1989).

Allen's mutual mistake claim fails for two reasons. First, and most crucially, Noonan's statement does not expressly contradict the release's exception for "claims and relief with the Equal Employment Opportunity Commission." Sev. Agr. ¶ 6. Thus, what is expressed in the agreement is not necessarily different from what the parties "agree[d]" to. *Providence Square Ass'n, Inc.*, 507 So. 2d at 1372. And second, Allen's allegations do not show an agreement between him and Noonan about the meaning of the release provision, but instead that Noonan informed Allen about its meaning. *See id.* Therefore, Allen has not shown "by clear and convincing evidence that a mistake of fact occurred in the transaction." *Rosique*, 542 So. 2d at 1015.

Both fraud in the inducement and negligent misrepresentation require the plaintiff to show justifiable reliance. *Rose v. ADT Sec. Servs., Inc.*, 989 So. 2d 1244, 1247 (Fla. 1st DCA 2008) (per curiam); *Howard v. Murray*, 184 So. 3d 1155, 1167 n.23 (Fla. 1st DCA 2015). "Without justifiable reliance, there can be no actionable fraud." *Picture It Sold Photography, LLC v. Bunkelman*, 287 So. 3d 699, 704 (Fla. 4th DCA 2020) (quoting *Hillcrest Pac. Corp. v. Yamamura*, 727 So. 2d 1053, 1057 (Fla. 4th DCA 1999)).

The "justifiable reliance" standard provides "some objective corroboration to plaintiff's claim that he did rely," and cannot be shown when, for example, "the representation is obviously false." *Billington v. Ginn-La Pine Island, Ltd., LLLP*, 192 So. 3d 77, 81 n.4 (Fla. 5th DCA 2016) (quoting W. PAGE KEETON, ET AL., PROSSER AND KEETON ON TORTS 750 (5th ed. 1984)). In other words, justifiable reliance cannot be established "when proper disclosure of the truth is subsequently revealed in a written agreement between the parties." *Taylor Woodrow Homes Fla., Inc. v. 4/46-A Corp.*, 850 So. 2d 536, 543 (Fla. 5th DCA 2003) (per curiam).

Allen's fraud claims fail because he cannot establish that he justifiably relied on Noonan's statement in the light of the unambiguous release provision. By signing, Allen agreed that he "releases and forever discharges ReliaQuest from any and all claims, actions, demands, and causes of action . . . including but not limited to any and all claims which are based on or in any way related to his [] employment with ReliaQuest or the termination of that employment." Sev. Agr. ¶ 6. The only relevant carve-out was for pursuing "claims and relief with the Equal Employment Opportunity Commission." *Id.* Noonan's statement—that the release provision "does not apply to any federal claims such as with the EEOC or other federal labor rights"—does not directly contradict that exception. Am. Compl. ¶ 31. But even if

15

the statement did or Allen construed it to mean he could sue for whatever he wanted, Noonan's representation was "obviously false" when compared to the release provision. *Billington*, 192 So. 3d at 81 n.4. Thus, Allen cannot have justifiably relied on Noonan's statement. *Cf. Middleton v. Int'l Bus. Machs. Corp.*, 787 F. App'x 619, 622–23 (11th Cir. 2019) (per curiam) (holding under Georgia law that signee could not establish that they justifiably relied on oral promises of uncapped commissions because subsequent written disclaimers against uncapped commissions "squarely contradicted" the promises).

Accordingly, ReliaQuest is entitled to summary judgment on Allen's contract-related claims.

### C. Adjudicating ReliaQuest's Motion for Summary Judgment is Not Premature

Allen argues that summary judgment is premature because discovery was incomplete when ReliaQuest moved for summary judgment. Resp. at 5–6; Pl.'s Decl. (Doc. 61-1) ¶¶ 4–7. But so long as "the material facts are undisputed, as they are here, summary judgment is appropriate early in the proceedings." *Larkin v. Envoy Orlando Holdings LLC*, 116 F. Supp. 3d 1316, 1317–18 (M.D. Fla. 2015); *see also Reflectone, Inc. v. Farrand Optical Co.*, 862 F.2d 841, 843–44 (11th Cir. 1989) (per

curiam).

The relevant facts turn on Allen's sworn complaint and the severance agreement. *See Larkin*, 116 F. Supp. 3d at 1317–18. And Allen points to no specific facts yet to be developed—such as a deposition—that would impact the resolution of the motion. *See* Pl.'s Decl. ¶¶ 4–7. Therefore, accepting as true all the allegations of his verified complaint, the record is sufficiently developed for adjudication.

## IV. CONCLUSION

Because no genuine dispute of material fact exists and the moving party is entitled to judgment as a matter of law, FED. R. CIV. P. 56(a), ReliaQuest is entitled to summary judgment on all counts in the amended complaint.

Accordingly, the defendant's Motion for Summary Judgment, (Doc. 59), is **GRANTED.** Because ReliaQuest's counterclaims remain pending and Allen proceeds pro se, the parties are directed, no later than **May 8, 2025,** to file a notice informing the Court whether another mediation would prove more efficient than proceeding to trial.

**ORDERED** in Tampa, Florida, on May 1, 2025.

*Kathryn Kimball Mizelle*
Kathryn Kimball Mizelle
United States District Judge